**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **1:21-CR-618-ABJ** |
| | : | |
| **v.** | : | |
| | : | |
| **RILEY JUNE WILLIAMS** | : | |

<u>**MOTION TO DISMISS COUNT TWO OF THE INDICTMENT**</u>
<u>**FOR FAILURE TO STATE AN OFFENSE AND**</u>
<u>**MEMORANDUM OF LAW IN SUPPORT THEREOF**</u>

Defendant Riley June Williams moves to dismiss Count Two of the

Indictment and, in support of the motion, sets forth the following facts and

argument.

**I.     INTRODUCTION**

Count Two of the Indictment charges Ms. Williams with a violation of 18

U.S.C. § 1512(c)(2), as follows:

> On or about January 6, 2021, within the District of Columbia and
> elsewhere, Riley June Williams, attempted to, and did, corruptly
> obstruct, influence, and impede an official proceeding, that is, a
> proceeding before Congress, specifically, Congress's certification of
> the Electoral College vote as set out in the Twelfth Amendment of the
> Constitution of the United States and 3 U.S.C. §§ 15-18

Section 1512(c) falls under Chapter 73 of Title 18, which deals with "Obstruction

of Justice." *See generally*, 18 U.S.C. §§ 1501-1521.  As the Ninth Circuit has

carefully considered and recognized, based on the plain language of the statute, an

offense under §1512(c) does not prohibit the obstruction of every governmental function; it only prohibits the obstruction of proceedings such as a hearing that takes place before a tribunal.  *See United States v. Ermoian*, 752 F.3d 1165, 1179 (9th Cir. 2013).  Stated differently, Section 1512(c), by its plain language, does not criminalize the obstruction of legislative action by Congress.  Any alleged obstruction of the certification of the Electoral College vote is simply outside the scope of §1512(c).

Alternatively, on its face §1512 is constitutionally infirm because of its inherent vagueness and arbitrary enforcement in the panoply of January 6th cases.

## II.    DISCUSSION

### A.    Standard of Review

An indictment must be a "plain, concise, and definite written statement of the essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c)(1).  An indictment "must provide the defendant sufficient detail to allow him to prepare a defense, to defend against a subsequent prosecution of the same offense, and to ensure that he be prosecuted upon facts presented to the grand jury."  *United States v. Apodaca*, 275 F. Supp. 3d 123, 153 (D.D.C. 2017) (citing *Russell v. United States*, 369 U.S. 749 (1962), and *Stirone v. United States*, 361 U.S. 212 (1960)).  A defendant "may raise by pretrial motion any defense, objection, or request that the Court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(3)(B).

Rule 12 provides that a defendant may also move to dismiss the indictment for "failure to state an offense" and "lack of specificity."  Fed. R. Crim. P. 12(b)(3)(B)(iii), (v).  In considering a Rule 12 motion to dismiss, "the Court is bound to accept the facts stated in the indictment as true." *United States v. Syring*, 522 F. Supp. 2d 125, 128 (D.D.C. 2007); *United States v. Sampson*, 371 U.S. 75, 78 (1962).  Accordingly, "the Court cannot consider facts beyond the four corners of the indictment." *United States v. Ring*, 628 F. Supp. 2d 195, 204 (D.D.C. 2009)(internal quotations omitted).

A criminal statute is unconstitutionally vague if it "fails to give ordinary people fair notice of the conduct it punishes, or [is] so standardless that it invites arbitrary enforcement." *United States v. Bronstein,* 849 F.3d 1101, 1106 (D.C. Cir. 2017) (quoting *Johnson v. United States*, 576 U.S. 591, 595 (2015)).  "The touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *United States v. Lanier*, 520 U.S. 259 (1997).  The void-for-vagueness doctrine protects against arbitrary or discriminatory law enforcement.  *Sessions v. Dimaya*, 138 S. Ct. 1204, 1212 (2018) (citing *Kolender v. Lawson,* 461 U.S. 352, 358 (1983)).

**B.     Count Two Fails to State an Offense**

As noted above, Count Two of the Indictment charges that Ms. Williams obstructed an "official proceeding," in violation of 18 U.S.C. § 1512(c)(2) and it identifies that "proceeding" as "Congress's certification of the Electoral College vote."  However, as set forth below, the Electoral College certification before Congress does not constitute an "official proceeding" for purposes of 18 U.S.C. § 1512(c)(2).

**1.     Section 1512 Must be Strictly Construed**

18 U.S.C. § 1512 prohibits "corruptly. . . obstruct[ing], influenc[ing], or imped[ing] any *official proceeding*, or attempt[ing] to do so." *Id.* (emphasis added).  Section 1515(a)(1) of Chapter 73 of Title 18 defines an official proceeding as:

> (A)     a proceeding before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a judge of the United States Tax Court, a special trial judge of the Tax Court, a judge of the United States Court of Federal Claims, or a Federal grand jury;

> (B)     a proceeding before the Congress;

> (C)     a proceeding before a Federal Government agency which is authorized by law; or

> (D)     a proceeding involving the business of insurance whose activities affect interstate commerce before any insurance regulatory official or agency or any agen tor examiner appointed by such official or agency to examine the affairs of any person engaged in the business of insurance whose activities affect interstate commerce[.]

18 U.S.C. § 1515(a)(1).  Count 2 of the Indictment against Ms. Williams concerns "a proceeding before the Congress" as set forth in §1515(a)(1)(B).

To determine the legislative intent of a law, courts "always, [ ] begin with the text of the statute." *Am. Fed'n of Gov't Emps., AFL-CIO, Local 3669 v. Shinseki*, 709 F.3d 29, 33 (D.C. Cir. 2013). "It is elementary that the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain . . . the sole function of the courts is to enforce it according to its terms." *United States v. Hite*, 769 F.3d 1154, 1160 (D.C. Cir. 2014) (quoting *Caminetti v. United States*, 242 U.S. 470, 485 (1917) (internal quotes omitted)).  "The search for the meaning of the statute must also include an examination of the statute's context and history." *Hite*, 769 F.3d at 1160 (citing *Bailey v. United States*, 516 U.S. 137, 144-45 (1995)). Importantly, "due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." *United States v. Lanier*, 520 U.S. 259, 266 (1997).

With respect to 18 U.S.C. § 1512, the Supreme Court has instructed lower courts to "exercise[] restraint in assessing the reach of [the] . . . statute both out of deference to the prerogatives of Congress . . . and out of concern that a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed." *United States*

*v. Arthur Anderson, LLP,* 544 U.S. 696, 703 (2005) (internal citations and quotations omitted) (strictly construing §1512(b)(2)'s broadly worded language in finding that jury instructions failed to instruct that knowledge of wrongdoing and proof of a nexus between the alleged obstruction and an official proceeding were required elements of the offense).

### 2.   An "Official Proceeding" under §1512(c) Concerns the Administration of Justice

A review of the text, history, and judicial interpretations of §1512, especially in light of the Supreme Court's long-standing guidance to strictly construe penal statutes, demonstrates that §1512(c), which punishes obstruction of "official proceedings," does *not* apply to the Electoral College certification.[1]

*Ermoian* was one of the first appellate decisions to consider the meaning of "official proceeding" as that term is used in §1512(c) and defined in §1515. *See Ermoian*, 752 F.3d at 1168 ("Our circuit has never before addressed the meaning of the term 'official proceeding' as used in the obstruction of justice statute at 18 U.S.C. § 1512"). The *Ermoian* court, tasked with deciding whether a criminal

---

[1] Congress counts the electoral votes pursuant to the Twelfth Amendment to the United States Constitution and the Electoral Count Act of 1887, later codified in 3 U.S.C. § 15. Congress counts the electoral votes after the states have already heard any disputes and certified the vote. *See Bush v. Gore*, 531 U.S. 98, 154 (2000) (Breyer, J., dissenting). Members of Congress may make an objection, in writing, and without argument. 3 U.S.C. § 15. According to the statute, there is no testimony, no witnesses, no argument, and no evidence introduced at the electoral count. The event is merely ceremonial. *See* Stephen A. Siegel, *The Conscientious Congressman's Guide to the Electoral Count Act of 1887*, 56 FLLR 541, 585 (2004).

investigation by the FBI was considered an "official proceeding" for purposes of

§1512(c), noted that "the definition of the phrase 'official proceeding' depends

heavily on the meaning of the word 'proceeding.'" *Id*. at 1169.

Reviewing the plain language of §1515, the *Ermoian* court explained that

"[s]everal aspects of the definition for 'official proceeding' suggest that the legal –

rather than lay – understanding of the term 'proceeding' is implicated in the

statute." *Id*. at 1170.  The court noted that "the descriptor 'official' indicates a

sense of formality normally associated with legal proceedings," and not "a mere

'action or series of actions.'"  *Id*. (citing "*Proceeding*," Oxford English Dictionary,

*available at* http://www.oed.com).  Moreover, the court pointed to the fact that

"the word 'proceeding' is surrounded with other words that contemplate a legal

usage of the term, including 'judge or court,' 'Federal grand jury,' 'Congress,' and

'Federal Government agency.'" *Id*.

The Ninth Circuit further observed that

Examining the term 'proceeding' within the grammatical structure of
the definition at issue, it becomes clear that the term connotes some
type of formal hearing.  [Section 1515(a)(1)(C)] refers to proceedings
"before a Federal Government agency" – a choice of phrase that
would be odd if it were referring to criminal investigations.  The use
of the preposition "before" suggests an appearance in front of the
agency *sitting as a tribunal.*

*Id.* at 1170-71 (internal citation omitted)(emphasis added); *see also United States*

*v. Ramos*, 537 F.3d 439, 462-63 (5th Cir. 2008)("use [of] the preposition 'before'

in connection with the term 'Federal Government agency' . . . implies that an 'official proceeding involves some formal convocation of the agency in which parties are directed to appear.").  The court also considered that §1512 uses the terms "attendance, "testimony," "production" and "summon[]" when describing an official proceeding, and found the use of these terms "strongly implie[d] that some formal hearing before a tribunal is contemplated."  *Id.* at 1172.

The logic and reasoning used by the *Ermoian* court in considering whether an FBI investigation fell under the scope of §1512(c) applies with equal force to interpreting the term "proceedings before the Congress."  Taking §1512 and the definitions contained in §1515 as a whole, it is plain that the statute is directed at conduct that interferes with the administration of justice.[2]  Even the title of the statute, "Tampering with a witness, victim, or an informant," suggests an adversarial proceeding related to the administration of justice.[3]  There is little

---

[2] *See McAndrew v. Lockheed Martin Corp.,* 206 F.3d 1031, 1039 (11th Cir. 2000)("Section 1512 . . . applies to attempts to *prevent or influence testimony* not only in federal courts but also *before Congress*, federal agencies, and insurance regulators.")(emphasis added); *United States v. Dunn*, 434 F. Supp. 2d 1203, 1207 (MD. Ga. 2006)("  . . . § 1515(a)(1) . . . describe[s] events that are best thought of as hearings (or something akin to hearings): for example, federal court cases, grand jury testimony, *Congressional testimony*, and insurance regulatory hearings.")(emphasis added); *United States v. Georgia*, 2014 WL 2084891 (N.D. Georgia 2014) ("official proceeding" for purposes of §1512(c) did not include a FBI investigation); *United States v. Sutherland*, 921 F.3d 421 (4th Cir. 2019) (the term "proceeding" implies 'some formal convocation . . . in which parties are directed to appear") (quoting *United States v. Young*, 916 F.3d 368, 384 (4th Cir. 2019)).
[3] *See I.N.S. v. Nat'l Ctr. for Immigrants' Rts., Inc.*, 502 U.S. 183, 189 (1991)("[T]he title of a statute or section can aid in resolving an ambiguity in the legislation's text.").

doubt that §1512 only criminalizes obstructive conduct related to a hearing before a tribunal affecting the administrative of justice and the ceremonial certification of the Electoral College votes does not qualify as an "official proceeding" under the statute.[4]

### 3.     The Legislative History Demonstrates that §1512(c) Concerns the Administration of Justice

Section 1512(c)(2) was enacted as part of the Sarbanes-Oxley Act of 2002, which was titled "Corporate Fraud Accountability," and had the express purpose of targeting "corporate malfeasance."  Pub. L. No. 107-204, 116 Stat. 745.  Nothing in the legislative history of the Sarbanes-Oxley Act supports the notion that Congress enacted §1512(c)(2) to criminalize the disruption of a ceremony before Congress by persons engaged in a political rally, no matter how large the crowd or how disorderly the activities of some in the crowd may have become.  Rather, the Sarbanes-Oxley Act "was prompted by the exposure of Enron's massive accounting fraud and revelations that the company's outside auditor, Arthur Andersen LLP, had systematically destroyed potentially incriminating documents."

---

[4]  This interpretation is consistent with the case law that has clarified the meaning of the statutory language at issue here.  *See e.g. Arthur Anderson, LLP,*  544 U.S. at 708 (interpreting §1512(c) as requiring that the defendant have "knowledge that his actions are likely to affect [a]judicial proceeding" in order to have the "requisite intent to obstruct'); *United States v. Burge*, 711 F.3d 803, 809 (7th Cir. 2013)(considering the application of §1512 and noting that "[o]bstruction of justice occurs when a defendant acts to impede the types of proceedings that take place before judges or grand juries.") *cert. denied*, 571 U.S. 888 (2014); *United States v. Sampson*, 898 F.3d 287, 300 (2d Cir. 2018)(noting that §1512 "broadly criminalizes various forms of witness tampering").

*Yates v. United States*, 574 U.S. 528, 535-36 (2015).  The Senate Judiciary

Committee report described the Act's purpose as "provid[ing] for criminal

prosecution and enhanced penalties of persons who defraud investors in publicly

traded securities or alter or destroy evidence in certain Federal investigations," S.

REP. NO. 107-146, at 2 (2002)(emphasis added).

In *Yates*, the Supreme Court narrowly construed the term "tangible object"

as set forth in 18 U.S.C. § 1519, which penalized a person who

> knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or
> makes a false entry in any record, document, or tangible object with
> the intent to impede, obstruct, or influence the investigation or proper
> administration of any matter within the jurisdiction of any department
> or agency of the United States . . .

18 U.S.C. § 1519.  Keeping in mind that Congress designed the Sarbanes-Oxley

Act with a "trained [] attention on corporate and accounting deception and cover-

ups," the Court held that the Act did not contemplate penalizing the act of tossing

undersized fish overboard to avoid the consequences of an inspection by federal

authorities.  *Id*. at 532.  Rather, in the context of the statute's purpose, a "tangible

object" must be one used to record or preserve information. *Id.* Thus, while fish are

tangible objects in the lay sense of that phrase, they do not qualify as tangible

objects under §1519 given the broader context of the Sarbanes-Oxley Act.  In

rendering the *Yates* decision, the Supreme Court clearly telegraphed that legal

terms are to be narrowly construed given the legislative history and purpose of the Sarbanes-Oxley Act.

In short, when considering the Act's preamble and legislative history, it is clear that §1512(c) was aimed at preventing corporations from destroying records relevant to a federal hearing related to the administration of justice. The legislative background of §1512(c) makes plain that it was not intended to apply in all circumstances where *any* government function may have been impeded, and given this context, the certification of the Electoral College votes does not qualify as an "official proceeding" under the statute.

### 4. Other Tools of Statutory Interpretation Support Ms. Williams' Motion to Dismiss

Sections 1512 and 1515 are contained in Chapter 73 of Title 18 of the United States Code. Examining the surrounding statutory provisions in Chapter 73 further supports Ms. Williams' interpretation of the statute at issue.[5] Several of the subsections of Chapter 73 explicitly relate to the administration of justice. *See* 18 U.S.C. §§ 1503, 1504 (Influencing or injuring a juror); §1513 (Retaliating against a witness, victim or informant); § 1521 (Retaliating against a federal judge or law enforcement officer by false claim or slander of title). There is even a statute

---

[5] *See NASDAQ Stock Mkt., LLC v. Sec. & Exch. Comm'n*, 961 F.3d 421, 426 (D.C. Cir. 2020)(quoting *Util. Air Regulatory Grp. V. E.P.A.*, 573 U.S. 302, 321 (2014))("A statutory provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme[,] because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law.").

within Chapter 73 that prohibits "picketing or parading" near the residence of a

judge, juror, witness, or court officer "with the intent of interfering with,

obstructing, or impeding *the administration of justice*."  18 U.S.C. § 1507

(emphasis added).  All of these laws are related to the obstruction of the

administration of justice.  Section 1512(c) falls right within their midst.

### 5.   Congress Has Used Other Terms to Describe Interference with Electoral College Certification

Ms. Williams submits that the government incorrectly conflated an "official

proceeding" under §1512 with a "federally protected function" under 18 U.S.C. §

231(a)(3) or the "official business" of Congress under 40 U.S.C. § 5104(e)(2)(c).

In Count One of the Indictment, for example, the government charged Ms.

Williams with Civil Disorder under 18 U.S.C. § 231(a)(3), alleging that her actions

"affected the conduct and performance of a *federally protected function*."[6] (Doc.

27, p. 2)(emphasis added).  Similarly, in Counts Seven and Eight, the government

charged Ms. Williams with violation 40 U.S.C. § 5104(e), which prohibits entering

"any of the Capitol Building[s]" intending "to disrupt the orderly conduct of

---

[6] The term "federally protected function" is defined as:

> [A]ny function, operation or action carried out, under the laws of the United States, by any department, agency, or instrumentality of the United States or by an officer or employee thereof; and such term shall specifically include, but not be limited to, the collection and distribution of the United States mails.

18 U.S.C. § 232(3).

*official business*[.]" 40 U.S.C. § 5104(e)(2)(c) (emphasis added). Ms. Williams

submits that the ceremonial certification of the Electoral College by Congress may

be more appropriately considered the "official business" of Congress or a

"federally protected function" rather than an "official proceeding before the

Congress" as captured by 18 U.S.C. §§ 1512(c) and 1515. Charging Ms. Williams

with obstruction under 18 U.S.C. § 1512(c)(2) is, quite simply, overkill.

### C. Alternatively, Section 1512(c)(2) is Unconstitutionally Vague

Under the same principles of *United States v. Johnson*, 576 U.S. 591 (2015)

and its progeny, 18 U.S.C. § 1512(c)(2) violates due process because it is vague

and does not provide fair notice to Ms. Williams as to the conduct it punishes.

Section 1512(c)(2) provides that:

> Whoever *corruptly* –
>
> (1)  alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or
>
> (2)  *Otherwise* obstructs, influences, or impedes any official proceeding, or attempts to do so, . . . shall be fined . . . or imprisoned . . .

18 U.S.C. §§ 1512(c)(1) and (2).

First, §1512(c) uses words throughout both subsections that require

courts to speculate as to their meaning in the context of the defendant's

particular actions. To wit, courts must speculate as to the meaning of the

word "corruptly" and the phrase "official proceeding."  Perhaps more problematic is the residual clause of subsection (c)(2), one that is so ambiguous, requiring courts to line-draw when determining if a defendant has "otherwise" obstructed, impeded, or influenced an official proceeding before Congress.

In *Johnson*, the Supreme Court considered the constitutionality of residual clause of the Armed Career Criminal Act, which enhanced a defendant's sentence if the defendant had a conviction for a prior felony that "otherwise involved conduct that presented a serious potential risk of physical injury to another."  *Johnson,* 576 U.S. at 591.  In finding a due process violation, the Supreme Court explained that the residual clause required a "wide-ranging inquiry" in each case as to what could potentially cause injury in each set of circumstances.  *Johnson,* 576 U.S. at 597. Observing that the ambiguity of the residual clause resulted in disparate interpretations, the Supreme Court acknowledged that the "failure of persistent efforts to establish a standard can provide evidence of vagueness." *Id*. at 598.

Similarly here, the residual clause of §1512(c) is constitutionally vague, requiring courts to speculate and line-draw when distinguishing "official proceedings" from mere ancillary proceedings or investigations.

As discussed at length above, courts have generally interpreted "official proceeding" to mean something more formal than an investigation, but there has been no established standard, leaving the courts to deal with this ambiguity.

Further, the vagueness of the statute is not limited to the confusion that surrounds what constitutes an "official proceeding."  The D.C. Circuit has acknowledged that the word "corruptly" is vague on its face as used in a similar statute, 18 U.S.C. § 1505, that prohibits obstruction of a proceeding before departments, agencies, or congressional investigations.  The court held that "in the absence of some narrowing gloss, people must guess at its meaning and application."  *United States v. Poindexter*, 951 F.2d 369, 398 (D.C. Cir. 1991).  Previously, in *Ricks v. District of Columbia*, 414 F.2d 1097 (D.C. Cir. 1968), the court had held that a statute that criminalized "leading an immoral or profligate life" vague because it found "immoral" to be synonymous with "corrupt, depraved, indecent, dissolute, all of which would result in 'an almost boundless area for the individual assessment of another's behavior.'" *Poindexter*, 951 F.2d at 399 (quoting *Ricks*, 414 F.2d at 1097).  The court explained that various dictionary definitions of the word "corrupt" did not reduce the confusion as to its meaning for purposes of the statute.  *Id.* After an assessment of the legislative history and judicial

interpretation, the court concluded that neither of those inquiries provided defendants with the constitutionally required notice that the statute requires, and found the term vague as applied to the defendant making false statements. *Id*. at 406.

Following *Poindexter*, Congress amended §1515 to define "corruptly" for purposes of §1505 only to mean "acting with an improper purpose, personally or by influencing another, including making a false or misleading statement, or withholding, concealing, altering, or destroying a document or other information." §1515(b). However, this amendment did not resolve the vagueness that still exists in §1512 as Congress did not amend §1515 as it applies to §1512.

Even though the D.C. Circuit later held that the word "corruptly" was not vague as applied, it was because in that case the defendant influenced a witness, which fits squarely within the non-vague category that Poindexter established. *See United States v. Morrison*, 98 F.3d 619, 630 (D.C. Cir. 1996). In *Morrison*, the defendant tried to influence a witness's testimony and "exhorted her to violate her legal duty to testify truthfully in court." *Id.* The *Poindexter* Court explained that influencing another to "violate their legal duty" was not vague because "it would both take account of the context in which the term 'corruptly' appears and avoid the vagueness inherent in

16

words like 'immorally.'" *Poindexter*, 951 F.2d at 379.  However, *Morrison* was not faced with the question of what "corruptly" means in the context of §1512(c) and does not resolve the ambiguity that the word presents in conjunction with the rest of the statute.  Even taking "corruptly influences" together is still vague because "influence" alone is another vague word and means something different than "influencing another to violate their legal duty" as described in §1515.

Further, analyzing the government's approach to charging defendants with a violation of §1512(c)(2) arising out of events on January 6, 2021, illustrates how vague and arbitrary the enforcement of this statute can be. Initially, it seemed that the government was only charging those individuals who had entered the Senate chamber[7] with a §1512(c)(2) violation. However, a snapshot of some of defendants that have been charged with a violation of §1512(c)(2) brings the inconsistencies into stark relief.

(1)    *United States v. Isaac Sturgeon*, 21-cr-91, Mr. Sturgeon is alleged to have assisted in pushing a barricade outside the Capitol building but never entered the Senate chamber, never went inside the Capitol building, and never made any threats to law enforcement or on social media

---

[7] The ceremonial Electoral College certification took place in the Senate Chamber.

suggesting he wished to disrupt the vote.  Mr. Sturgeon is not alleged to be part of the Oath Keepers or the Proud Boys.

(2)    *United States v. Kenneth Grayson*, 21-cr-224, Mr. Grayson is alleged to have entered the Capitol building, but not alleged to have entered the Senate chamber.  Prior to January 6, 2021, he allegedly wrote in a private message, "I am there for the greatest celebration of all time after Pence leads the Senate flip!  OR IM THERE IF TRUMP TELLS US TO STORM THE FUKIN CAPITOL IME DO THAT THEN!"

(3)    *United States v. Benjamin Larocca*, 21-cr-317, Mr. Larocca allegedly entered the Capitol building while screaming "Our House!"  He was with an individual who was allegedly yelling, "You fucking oath breakers!"  Mr. Larocca is not alleged to have entered the Senate floor and is not a member of the Proud Boys or Oath Keepers.

(4)    *United States v. Sean Michael McHugh*, 21-cr-436, Mr. McHugh allegedly employed bear spray in direction of officers and yelled insults at officers.  He also allegedly used a megaphone and engaged the crowd with chant, such as "our house!" There is no evidence he entered the Capitol building or the Senate floor.

(5)    *United States v. Dale Jeremiah Shalvey*, 21-cr-334, Mr. Shalvey allegedly entered the Senate chamber and is captured on video

rummaging through Senator Cruz's notes.  However, he is not alleged to be a part of the Oath Keepers or the Proud Boys.

As illustrated by these cases, the facts and circumstances of each vary drastically from each other and make it clear that the government's charging decisions are inconsistent.  Some cases allege entry into the Capitol building while others do not.  More importantly, the government does not specify what "influence" these defendants had or how exactly they "impeded." With respect to Ms. Williams, she was originally charged via criminal complaint and indicted in September of 2021.  Ms. Williams is alleged to have entered the Capitol building, but not the Senate chamber, and made statements similar to many of the other political statements that have been uttered by several defendants.  The inconsistent charging decisions along with the inherently vague words of the statute, as well as the "residual clause" that is the basis for charging Ms. Williams all show that 18 U.S.C. § 1512(c)(2) is unconstitutionally vague and does not provide fair notice to Ms. Williams.

## III.   CONCLUSION

Based upon the foregoing, it appears that, in its haste to prosecute the January 6th Capitol protestors with every conceivable violation and to proverbially "throw the book" at them, the government has taken liberties with the application of 18 U.S.C. § 1512(c).  Indeed, no court has ever interpreted an "official proceeding," as that term is used in  §1512(c), so broadly as to encompass an event such as the certification of the Electoral College vote.  While the Electoral College certification is arguably a "federally protected function" and certainly part of the "official business" of Congress, it clearly was not an evidence-gathering, formal, judicial or quasi-judicial event contemplated as "official proceeding" under §1512(c).

The government has attempted to stretch 18 U.S.C. § 1512(c) well beyond its plain meaning and beyond the intent of Congress when it was enacted. Nevertheless, "hard cases cannot be permitted to make bad law." *See Morgan County v. Allen*, 103 U.S. 498 (1880).  Count Two as charged in the Indictment fails to state an offense and should be dismissed.[8]

---

[8] The same or similar arguments have been presented in other cases concerning the events of January 6th.  As of this writing, the undersigned are aware of motions pending in the following matters, all before the district judges in the District of Columbia, *United States v. Grider,* 1:21-cr-22-CKK; *United States v. Caldwell and Crowl*, 1:21-cr-28-APM; *United States v. Reffitt,* 1:21-cr-32-DLF; *United States v. Montgomery and Knowlton*, 1:21-cr-46-RDM;  *United States v. Sandlin,* 1:21-cr-88-DLF; *United States v. Andries*, 1:21-cr-93; *United States v. Cua*, 1:21-cr-107-RDM; *United States v. Miller*, 1:21-cr-119-TJN; *United States v. Mostofsky,* 1:21-cr-138-

Date:  November 19, 2021

Respectfully submitted:

*/s/ A.J. Kramer*
A.J. KRAMER, ESQUIRE
Federal Public Defender
625 Indiana Avenue, NW
Washington, D.C. 20004
Tel. No. (202) 208-7500
*a._j._kramer@fd.org*


*/s/ Lori J. Ulrich*
LORI J. ULRICH, ESQUIRE
Assistant Federal Public Defender
*/s/ Amanda R. Gaynor*
AMANDA R. GAYNOR, ESQUIRE
Staff Attorney
100 Chestnut Street, Suite 306
Harrisburg, PA 17101
Tel. No. (717) 782-2237
Fax No. (717) 782-3881
*lori_ulrich@fd.org*
*amanda_gaynor@fd.org*

*Attorneys for Riley June Williams*

---

JEB; *United States v. Nordean and Biggs*, 1:21-cr-175-TJK; *United States v. Costianes*, 1:21-cr-180-RJL; *United States v. Blair*, 1:21-cr-186-CRC; *United States v. Puma*, 1:21-cr-454-PLF.

# CERTIFICATE OF SERVICE

I, Lori J. Ulrich, Esquire, of the Federal Public Defender's Office, do hereby certify that I served a copy of the foregoing **Motion to Dismiss Count Two of the Indictment for Failure to State an Offense and Memorandum of Law in Support Thereof** via Electronic Case Filing, and/or by placing a copy in the United States mail, first class in Harrisburg, Pennsylvania, and/or by hand delivery, addressed to the following:

Mona Sedky, Esquire
Assistant United States Attorney
*mona.sedky2@usdoj.gov*

Danielle Sara Rosborough, Esquire
Assistant United States Attorney
*danielle.rosborough@usdoj.gov*

RILEY JUNE WILLIAMS

Date:  November 19, 2021

*/s/ Lori J. Ulrich*
LORI J. ULRICH, ESQUIRE
Assistant Federal Public Defender
Attorney ID #55626
100 Chestnut Street, Suite 306
Harrisburg, PA 17101
Tel. No. (717) 782-2237
Fax No. (717) 782-3881
lori_ulrich@fd.org
*Attorney for Riley June Williams*