IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | 1:21-CR-618-ABJ |
| | : | |
| v. | : | |
| | : | |
| RILEY JUNE WILLIAMS | : | |

**MOTION TO DISMISS COUNTS FIVE AND SIX OF THE INDICTMENT
FOR FAILURE TO STATE AN OFFENSE AND
MEMORANDUM OF LAW IN SUPPORT THEREOF**

Defendant Riley June Williams moves to dismiss Counts Five and Six of the Indictment and, in support of the motion, sets forth the following facts and argument.

**I.      BACKGROUND**

Count Five of the Indictment charges Ms. Williams with a violation of 18 U.S.C. § 1752(a)(1) as follows:

> On or about January 6, 2021, within the District of Columbia and elsewhere, Riley June Williams, did knowingly enter and remain in a restricted building and grounds, that is, any posted, cordoned-off, and otherwise restricted area within the United States Capitol and its grounds, where the Vice President and Vice-President-elect were temporarily visiting, without lawful authority to do so.
>
> (**Entering and Remaining in a Restricted Building or Grounds**, in violation of Title 18, United States Code, Section 1752(a)(1))

Count Six of the Indictment charges Ms. Williams with a violation of 18 U.S.C. § 1752(a)(2) as follows:

1

On or about January 6, 2021, within the District of Columbia and elsewhere, Riley June Williams, did knowingly and with intent to impede and disrupt the orderly conduct in and within such proximity to, a restricted building and grounds, that is, any posted, cordoned-off, and otherwise restricted area within the United States Capitol and its grounds, where the Vice President and Vice-President-elect were temporarily visiting, when and so that such conduct did in fact impede and disrupt the orderly conduct of Government business and official functions.

(**Disorderly and Disruptive Conduct in a Restricted Building or Grounds**, in violation of Title 18, United States Code, Section 1752(a)(2))

(Doc. 27, Indictment, p. 3).

## II.     STANDARDS OF REVIEW

### A.     Motion to Dismiss

An indictment must be a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). An indictment "must provide the defendant sufficient detail to allow him to prepare a defense, to defend against a subsequent prosecution of the same offense, and to ensure that he be prosecuted upon facts presented to the grand jury." *United States v. Apodaca*, 275 F. Supp. 3d 123, 153 (D.D.C. 2017) (citing *Russell v. United States*, 369 U.S. 749 (1962), and *Stirone v. United States*, 361 U.S. 212 (1960)). A defendant "may raise by pretrial motion any defense, objection, or request that the Court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(3)(B). Rule 12 provides that a defendant may also move to dismiss the indictment for "failure to state an offense" and "lack of specificity." Fed. R. Crim. P.

2

12(b)(3)(B)(iii), (v).  In considering a Rule 12 motion to dismiss, "the Court is bound to accept the facts stated in the indictment as true." *United States v. Syring*, 522 F. Supp. 2d 125, 128 (D.D.C. 2007); *United States v. Sampson*, 371 U.S. 75, 78 (1962).  Accordingly, "the Court cannot consider facts beyond the four corners of the indictment." *United States v. Ring*, 628 F. Supp. 2d 195, 204 (D.D.C. 2009)(internal quotations omitted).

      B.      **Statutory Interpretation**

To determine the legislative intent of a law, courts "always, [ ] begin with the text of the statute." *Am. Fed'n of Gov't Emps., AFL-CIO, Local 3669 v. Shinseki*, 709 F.3d 29, 33 (D.C. Cir. 2013). "It is elementary that the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain . . . the sole function of the courts is to enforce it according to its terms." *United States v. Hite*, 769 F.3d 1154, 1160 (D.C. Cir. 2014) (quoting *Caminetti v. United States*, 242 U.S. 470, 485 (1917) (internal quotes omitted)).  "The search for the meaning of the statute must also include an examination of the statute's context and history." *Hite*, 769 F.3d at 1160 (citing *Bailey v. United States*, 516 U.S. 137, 144-45 (1995)). Importantly, "due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." *United States v. Lanier*, 520 U.S. 259, 266 (1997).

### III.    ARGUMENT

As noted above, Counts Five and Six of the Indictment charge Ms. Williams with certain conduct related to statutorily "restricted building or grounds." 18 U.S.C. § 1752(c) provides the following definition:

> (1)   the term "restricted building or grounds" means any posted, cordoned off, or otherwise restricted area –
>
> (A)   of the White House or its grounds, or the Vice President's official residence or grounds;
>
> **(B)   of a building or grounds where the President or other person protected by the Secret Service is or will temporarily be visiting; or**
>
> (C)   of a building or grounds so restricted in conjunction with an event designated as a special event of national significance.

18 U.S.C. § 1782(c)(1)(A)-(C) (emphasis added).

The United State Capitol and its grounds are not specifically included in the definition set forth above. Rather, the government alleges that the Capitol was a "restricted building and grounds" on January 6th because it was a "building or grounds where the President or other person protected by the Secret Service is or will temporarily be visiting." 18 U.S.C. § 1752(c)(1)(B). The "other person," as set forth in the Indictment, was then-Vice President Michael Pence.[1] Accordingly, Ms. Williams did not violate §1752 unless then-Vice President Pence was 1)

---

[1] Counts Five and Six also invoke a visit by the "Vice President-elect." The Justice Department, however, has admitted that then Vice President-elect Kamala Harris was not at the Capitol on January 6th. *See DOJ error highlights Jan. 6 mystery: Where was Kamala Harris during the attack?,* Politico (2021), https://www.politico.com/news/2021/11/04/doj-kamala-harris-jan-6-519505 (last visited Nov. 29, 2021).

"visiting" or "temporarily visiting" the specific area that Ms. Williams traversed; and 2) the Secret Service designated that area as a restricted zone. The government cannot establish either element for the reasons that follow.

    **A.**    **Vice President Pence was not "Temporarily Visiting" the Capitol**

Then-Vice President Pence was not "temporarily visiting" the Capitol on January 6, 2021. The Capitol is a federal government building in the District of Columbia. Vice President Pence lived and worked in D.C. at his official residence, and actually worked at the Capitol Building and grounds – it was his place of employment. Vice President Pence had a permanent office "within the United States Capitol and its grounds," in his capacity as President of the Senate. On January 6th, Vice President Pence was working -- he was presiding in the Senate chamber to count the electoral votes. *See* U.S.C. § 15 ("Congress shall be in session on the sixth day of January succeeding every meeting of the electors. The Senate and House of Representatives shall meet in the hall of the House of Representatives at the hour of 1 o'clock in the afternoon on that day, and *the President of the Senate shall be their presiding officer.*") (emphasis added).

Past cases support this plain, common-sense reading of the statute, as they involve conduct in or near areas where the President and Vice President were clearly "temporarily visiting." *See United States v. Bursey*, 416 F.3d 301 (4th Cir. 2005) (defendant entered and remained in a restricted area at an airport in South Carolina where the President was visiting for a political rally); *United State v.*

*Junot*, 902 F.2d 1580 (9th Cir. 1990) (defendant pushed his way through a restricted area where then-Vice President George Bush was speaking at a rally at a park in Los Angeles that was secured by Secret Service agents); *Blair v. City of Evansville, Ind.*, 361 F. Supp. 2d. 846 (S.D. Ind. 2005) (defendant charged with 18 U.S.C. § 1752 at protest during then-Vice President Richard Cheney's visit to the Centre in Evansville, Indiana). These cases all involve the President and Vice President traveling *outside* of the District of Columbia and "visiting" that area for a "temporary" purpose, consistent with the plain meaning of §1752(c)(1)(B). Vice President Pence was not traveling to a speaking event or political rally on January 6th – rather he was performing a duty of his office in a building where he had a permanent office. Based on the plain language of 18 U.S.C. § 1752, he was not "temporarily visiting" the Capitol building and §1752 does not apply as charged.

      **B.**    **The Secret Service did not "Restrict" the Capitol or its Grounds on January 6th**

The legislative history of 18 U.S.C. § 1752 and the statutory authorization of 18 U.S.C. § 3056[2] make it clear that <u>only</u> the United States Secret Service ("Secret Service") can restrict areas for temporary visits by the President or Vice President. A particular place does not become restricted just because the Vice President enters it; rather, the Secret Service, the agency in charge of protecting the Vice

---

[2] This statute authorizes the Secret Service to protect high-ranking officials, including the Vice President.

6

President, must create the temporary restricted zone to facilitate its duty to protect. Indeed, the Government has specifically argued that it is the "Secret Service" that "exercise[s] its discretion to determine the scope of the restricted area necessary to protect" a designated person. *United States v. Jabr*, Cr. No. 18-105 (PLF), ECF #26 at page 9. The Government does not allege that any of the barriers that Ms. Williams allegedly crossed were specifically erected for the Vice-President's visit *at the direction of the Secret Service*. On January 6, 2021, the restrictions placed on the Capitol were created by the Capitol Police, not the Secret Service.[3] As such, a necessary factual predicate to a 18 U.S.C. § 1752 offense is lacking, and Counts Five and Six must be dismissed for failure to state a claim.

---

[3] Additional legislative history and language also confirm that the "posted, cordoned off, or otherwise restrict area[s]" must be created by the Secret Service to trigger the statute. As originally passed in 1970, the statute, 84 Stat. 1891, authorized the Treasury Department, which included the Secret Service at that time, to prescribe regulations for restricting grounds where the President and other protected leaders would visit. *See* 18 U.S.C. § 1752(d)(2); 84 Stat. 1891. Accordingly, the Treasury Department implemented numerous regulations, including requirements that the Secret Service designate certain "temporary residences" and "temporary offices" of their protectees and provide "notice to prospective visitors." 31 C.F.R. § 408.2(c). In 2006, Congress, likely because the Secret Service was reassigned to the Department of Homeland Security, repealed subsection (d) of §1752, which authorized the Treasury Department to promulgate regulations. *See* Pub. L. 109-177, Title VI, Sec. 602, 120 Stat. 252 (March 9, 2006). Nonetheless, the clear legislative intent behind §1752 from the date of its enactment was to provide the Secret Service with authorization to create temporary protected zones to facilitate its role in protecting the President and other protectees.

## III. CONCLUSION

Based upon the foregoing, it is evident that the government has attempted to utilize 18 U.S.C. § 1752 to prosecute conduct that is beyond its plain meaning and beyond the intent of Congress when it was enacted. Counts Five and Six as charged in the Indictment fail to state an offense and must be dismissed.[4]

Date: December 13, 2021                    Respectfully submitted:

*/s/ Lori J. Ulrich*
LORI J. ULRICH, ESQUIRE
Assistant Federal Public Defender
*/s/ Amanda R. Gaynor*
AMANDA R. GAYNOR, ESQUIRE
Staff Attorney
100 Chestnut Street, Suite 306
Harrisburg, PA 17101
Tel. No. (717) 782-2237
Fax No. (717) 782-3881
lori_ulrich@fd.org
amanda_gaynor@fd.org

*/s/ A.J. Kramer*
A.J. KRAMER, ESQUIRE
Federal Public Defender
625 Indiana Avenue, NW
Washington, D.C. 20004
Tel. No. (202) 208-7500
a._j._kramer@fd.org

*Attorneys for Riley June Williams*

---

[4] The same or similar arguments have been presented in other cases concerning the events of January 6th. As of this writing, the undersigned are aware of motions pending in the following matters, all before the district judges in the District of Columbia, *United States v. Caldwell,* 1:21-cr-28-APM; *United States v. Andries,* 1:21-cr-93; and *United States v. Mostofsky,* 1:21-cr-138-JEB.

## CERTIFICATE OF SERVICE

I, Lori J. Ulrich, Esquire, of the Federal Public Defender's Office, do hereby certify that I served a copy of the foregoing **Motion to Dismiss Counts Five and Six of the Indictment for Failure to State an Offense and Memorandum of Law in Support Thereof** via Electronic Case Filing, and/or by placing a copy in the United States mail, first class in Harrisburg, Pennsylvania, and/or by hand delivery, addressed to the following:

Mona Sedky, Esquire
Assistant United States Attorney
*mona.sedky2@usdoj.gov*

Danielle Sara Rosborough, Esquire
Assistant United States Attorney
*danielle.rosborough@usdoj.gov*

RILEY JUNE WILLIAMS

Date:  December 13, 2021       */s/ Lori J. Ulrich*
LORI J. ULRICH, ESQUIRE
Assistant Federal Public Defender
Attorney ID #55626
100 Chestnut Street, Suite 306
Harrisburg, PA 17101
Tel. No. (717) 782-2237
Fax No. (717) 782-3881
lori_ulrich@fd.org
*Attorney for Riley June Williams*