UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Case No. 21-CR-618 (ABJ) |
| v. : | |
| : | |
| RILEY JUNE WILLIAMS, : | |
| : | |
| Defendant. : | |

### GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO AMEND CONDITIONS OF RELEASE

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby respectfully submits this opposition to the defendant's Motion to Amend Conditions of Release. There has been no change in condition warranting a downward modification of the current terms of the defendant's release conditions. Rather, the defendant's continued inability to fully and consistently comply with the terms of her release, including prior misrepresentations to probation / pretrial services, undercuts any notion that the defendant's release conditions should be loosened. The government has consulted with her former and current supervising probation / pretrial services officers, and they both oppose the proposed modifications. Therefore, coupled with the defendant's demonstrated flight risk, the defendant's motion should be denied in its entirety.

### BACKGROUND

*Defendant's Charged Conduct*

On January 6, 2021, thousands of people, the defendant among them, took part in a deadly and destructive attack on the U.S. Capitol in an effort to disrupt the certification of the results of the 2020 presidential election. They forced their way into the U.S. Capitol Building, which was

1

closed to the public, delaying the certification, requiring elected officials and their staff to flee or shelter in place, and injuring over one hundred law enforcement officers.

Stemming from her participation in the events on January 6, the defendant was arrested in Harrisburg, Pennsylvania on January 18, 2021, pursuant to a four-count complaint charging her with entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1); disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2); disorderly conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D)); and parading, demonstrating, or picketing in a Capitol Building, in violation of 40 U.S.C. §5104(e)(2)(G)). ECF No. 1. The arrest warrant was issued on January 17, 2021. Neither the complaint nor the arrest warrant was filed under seal. A few days later, she was charged in an amended complaint with two additional counts, both of which are felonies: aiding and abetting theft of government property, in violation of 18 U.S.C. §§ 641, 2, and obstructing an official proceeding in violation of 18 U.S.C. § 1512(c)(2). ECF No. 3 - 4. On October 6, 2021, the Grand Jury returned an indictment charging the defendant with the following offenses: civil disorder, in violation of 18 U.S.C. § 231(a)(3); aiding and abetting obstruction of an official proceeding, in violation of 18 U.S.C. § 1512(c)(2), 2; assaulting, resisting, or impeding certain officers in violation of 18 U.S.C. § 111(a)(1); aiding and abetting theft of government property, in violation of 18 U.S.C. §§ 641, 2; entering or remaining on restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1); disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2); disorderly conduct in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(D); and parading, demonstrating, or picketing in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(G). ECF No. 27.

As largely set forth in the Statement of Facts supporting the complaints, on January 6, 2021, Williams traveled with her father and his two friends by car from her home in Harrisburg, Pennsylvania, to Washington, D.C.  On the same day, after attending a rally for then-President Trump, Williams entered the U.S. Capitol Building at approximately 2:15 p.m.  While inside the building, among other locations, Williams went in the crypt, the offices of the Speaker of the U.S. House of Representatives Nancy Pelosi, and the Rotunda.  She exited the U.S. Capitol Building at approximately 3:25 p.m.

While she was inside the U.S. Capitol Building, at various times, Williams directed other rioters where to go and what to do, using verbal commands and physical gestures.  For example, while she stood at the bottom of a staircase that led to Speaker Pelosi's offices, Williams repeatedly stated "upstairs, upstairs," while she pointed toward the staircase and other rioters followed her directions.

In addition, when Williams was in Speaker Pelosi's offices, she assisted one or more other rioters who stole a Hewlett Packard-brand laptop that was sitting on a table.  Williams instructed another rioter, "Dude, put on gloves," and someone with a black gloved hand then removed the laptop.

Williams also entered the Rotunda, where she engaged in repeated purposeful physical clashes and verbal altercations with federal law enforcement officers and instructed others to do the same.  She was among the front line of rioters who were pushing against federal law enforcement officers who were attempting to clear and protect the Capitol.  On several occasions, Williams physically pushed her back against federal law enforcement officers who were trying to clear the rioters out of the Rotunda.  She instructed other rioters to "keep pushing," and "push,

push, push." Williams's assaultive actions were captured on a number of body worn camera recordings from within the Rotunda.

While inside the U.S. Capitol Building, Williams used her cell phone to take photographs and to take video and audio recordings of her activities. On January 6, 2021, Williams made multiple posts on several of her social media accounts describing the events of January 6. For example, she posted a video she took of the theft of the laptop from Speaker Pelosi's offices, where she added overlay text, "they got the laptop." In other social media posts, some with photographs and videos she took and others with only text, Williams stated, "I stole shit from Nancy Polesi [sic]," "I took her gravel [sic] hammrw [sic] tbing [sic]," and "I took Nancy Polesis [sic] hard drives." Williams communicated in person, over text message, and online with others on and after January 6, claiming that she stole Nancy Pelosi's gavel, laptop, and hard drives and that she gave the electronic devices, or attempted to give them, to unspecified Russian individuals. To date, neither the laptop nor the gavel has been recovered.

### *Williams's Flight, Subsequent Arrest, and Conditions of Release*

On or about January 11, 2021, Williams got rid of her cell phone, and she obtained a new cell phone and cell phone number. At various times after January 6, Williams deleted several of her social media and online communications accounts. On or about January 11, 2021, she instructed another user of Discord, one of the online communications platforms she used, to delete all of their communications.

On or about January 16, 2021, Wendy Williams, the defendant's mother, told law enforcement officers that Williams packed a bag and left her home and told her mother she would be gone for a couple of weeks. The defendant's mother claimed to have last seen Williams on or
4

about January 15, 2021. According to Williams's mother, Williams claimed that she was leaving due to fear of her ex-boyfriend. Williams did not provide her mother any information about her intended destination. When asked if anyone else had been to the residence looking for her daughter, Williams's mother explained that members of the media were at their apartment the prior evening. She recalled one of them to have a British accent and they showed her pictures of Williams at the Capitol, which she identified to the reporter as Williams. ITV, a British media outlet, posted video footage and reporting regarding Williams's January 6 activities on January 16 and 17, 2021. See https://www.itv.com/news/2021-01-16/itv-news-identifies-pro-trump-protester-who-stormed-us-capitol; https://www.facebook.com/itvnews/posts/riley-williams-one-of-a-small-number-of-women-to-have-illegally-entered-the-capi/10158470847162672/.

On January 18, 2021, Williams contacted the FBI via a telephone number known to belong to Williams's mother. She told the FBI that her father instructed her to make contact with the FBI in order to resolve what she was seeing in the news about Nancy Pelosi's laptop. Williams denied stealing the laptop and claimed it was "made-up" by her ex-boyfriend. She expressed reluctance to meet with law enforcement and stated she was "hours away in another state." At one point in the conversation, she stated she was in Maryland but would not provide further detail. After being advised that the arrest warrant had been issued for her and that it would be in her best interests to turn herself in, Williams eventually agreed to return to the Harrisburg area. However, Williams conditioned her voluntary return on being able to also meet with a specific local detective, who had been helping her with a Protection from Abuse order against her ex-boyfriend. Later that day, Williams surrendered to the authorities and was arrested in Harrisburg, Pennsylvania.

*Williams's Conditions of Release*

On January 19, 2021, given its concerns that Williams posed a serious flight risk, the government initially sought pretrial detention for Williams at her initial appearance in the Middle District of Pennsylvania. The government ultimately agreed to certain conditions of release with local defense counsel in Harrisburg, presuming that such conditions would mitigate her danger to the community, risk of flight, and risk of further obstruction. As such, at her initial appearance in the Middle District of Pennsylvania, on January 21, 2021, the District Court released Williams on her own recognizance and imposed a variety of conditions of release. Among other conditions, Williams was ordered to remain on home detention, was placed on electronic location monitoring, and was ordered to be supervised by her mother Wendy Williams, who would serve as her third-party custodian. ECF No. 7 (U.S. District Court for the Middle District of Pennsylvania's Order Setting Conditions of Release). Wendy Williams was present at the initial appearance/bond hearing, and the Court explained in detail to her what her obligations would be as a third-party custodian. Wendy Williams acknowledged to the Court that she understood these obligations and agreed to be bound by them, including notification to the Court of any violations to the conditions of release.

On January 27, 2021, during the defendant's initial appearance in the District of Columbia, at the government's request, this Court imposed additional conditions of release, namely, restrictions on Williams's ability to access the internet and web-enabled electronic devices. The written order setting her conditions of release provided that Williams could only have access to an iPad or smart phone via her third-party custodian and only for purposes of having video calls with her attorney. With the exception of attorney and mental health calls, Williams's calls are to be

6

monitored by her third-party custodian.  When watching TV on a Smart TV, Williams's third-party custodian is supposed to monitor Williams's use.  Additionally, she was to use a flip phone (or non-smart phone) for all other communications.  ECF No. 29.

### *Williams's Activities While on Pretrial Release*

As part of her release conditions, Williams must submit to supervision to Pretrial Services, which would require her to abide by Pretrial Services's rules and regulations.  The Probation Office / Pretrial Services in Harrisburg, Pennsylvania[1] provides courtesy supervision of Williams for Pretrial Services in Washington, D.C.  On August 15, 2021, Williams was observed by the FBI outside of her residence with Individual-1, who is believed to be Williams's then-boyfriend and otherwise not related to her.[2]  On August 16, 2021, Williams falsely told her then-supervising probation / pretrial services officer that she had a cousin from North Carolina visiting until the following week.  On August 17, 2021, Williams's mother, who, as noted, is also her third-party custodian, falsely informed Williams's then-supervising probation / pretrial services officer that Williams was not working much the following few weeks due to a cousin visiting from North Carolina.  On September 9, 2021, Williams's then-supervising probation / pretrial services officer observed a tablet case and a charging cord inside of Williams's car.  During a September 10, 2021 interview of Individual-1, he stated that he visited Williams in Harrisburg approximately three weeks prior to the interview.  During this interview, Individual-1 stated that he told Williams about the circumstances of his prior arrest, prosecution, incarceration and discharge from the United States Marine Corps.  Notably, Individual-1 was alleged to have an unauthorized absence

---

1 Pretrial Services in Harrisburg is done by the Probation Office.
2 The government believes that at some point Individual-1 became Williams's fiancée.

from the Marines Corps, stole his roommates' truck and attempted to purchase a firearm with the intent of committing a mass shooting at a synagogue.  Individual-1 was sentenced to 19 months in custody and was given a bad-conduct discharge from the U.S. Marines Corps.

On December 4, 2021, Williams admitted to her-then supervising probation / pretrial services officer that she was dishonest about her visitor in August.  She admitted that her visitor was Individual-1, not a cousin from North Carolina.  Williams also admitted that she directed her third-party custodian, specifically her mother, to be dishonest with her then supervising probation / pretrial services officer.  This information was relayed to defense counsel on December 6, 2021, when the defendant was seeking permission to travel over the holidays.

As discussed above, Williams's release conditions prevent her from using electronic devices in order to communicate with others via video.  However, on September 10, 2021, the FBI interviewed Individual-1.  Individual-1 had been in contact with Williams since in or about the Fall of 2020.  During this interview, Individual-1 stated that he communicated with Williams via text messages and Zoom, which he later corrected, on September 15, 2021, as Facetime not Zoom.  Indiviudal-1 revealed that Williams used her mother's iPad to conduct the video chats.

During a recent conversation with both Williams's prior and current supervising probation / pretrial services officers, the government was informed of Williams inability to maintain consistency compliance with her pretrial release supervision.  For example, Williams is required to submit her weekly schedule to her pretrial services officer at a specific time.  However, Williams has, on multiple occasions, been late in submitting her schedule.  Additionally, on multiple occasions, she has been late returning home after attending preapproved outings.  For example, on May 26, 2022, Williams was approximately 38 minutes late returning to her home

from a preapproved outing. She failed to call pretrial services to alert them of the fact that she was going to be late. Rather, pretrial services had to initiate contact with her, after she was over thirty minutes late.

### **ARGUMENT**

The Bail Reform Act allows for a judicial officer "at any time amend the order to impose additional or different conditions of release." 18 U.S.C. § 3142(c)(3). The bail reform act further allows for a detention hearing to be:

> reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

18 U.S.C. § 3142(f). Courts have held that the new information requirement of 18 U.S.C. § 3142(f) applies to a hearing to amend conditions of release under 18 U.S.C. § 3142(c)(3). *See. United States v. Kube,* 2020 WL 1984178 (E.D. Cal. Apr. 27, 2020); *United States v. Gay,* 2020 WL 5983880 (C.D. Illinois, Oct. 7, 2020). Further, a defendant's compliance with terms of pretrial release does not qualify as "new information that has a material bearing on his conditions to reopen the detention hearing." *Kube,* 2020 WL 1984178 at 5. (noting that, "[i]t is presumed that the defendant will abide by the conditions imposed and his demonstrated ability to do so is what allows him to remain on pretrial release" and not in custody.)

Here, the defendant has failed to provide new evidence to warrant a hearing to amend the conditions of her release. Compliance with the terms of her release is what was expected when the release conditions were set on January 27, 2021. This expectation went into the calculus in determining whether pretrial detention was necessary to ensure her appearance and ensure she will

not endanger the safety of any other person or the community. Therefore, while Williams has a demonstrated history of being a flight risk, the Court agreed to have her release pending the trial subject to several conditions.

Williams's motion stated that she "abided by the conditions of her pretrial supervision without incident or infraction for sixteen (16) months." ECF No. 51-2 at 5. As stated above, even if Williams was in compliance during the tenancy of her pretrial release, that is not a basis for modification. However, as noted above, Williams has blatantly violated her internet and electronic device restrictions, lied to pretrial services, and failed to comply with even the most basic terms of her conditions of release: adhering to her schedule and reporting in a timely fashion.

First, she has admittedly lied to her probation / pretrial supervision officer about the identity of a visitor in August 2021. More importantly, Williams successfully had her third-party custodian, who was appointed to ensure her compliance, represent the same falsehood to her then-supervising probation / pretrial services officer. It was not until December 2021, when confronted that Williams admitted her prior lie and admitted to having her third-party custodian lie for her. While it is wholly unacceptable for her to not be forthcoming to her probation / pretrial supervision officer, it is egregious that Williams was able to successfully convince her third-party custodian to lie on her behalf.

Second, the terms of her release prevent her from using video calling platforms, aside for discussions with her counsel. Yet, in September 2021, Individual-1 reported to the FBI that he has maintained video communication with Williams. Not surprising, given the false statements provided to her probation / pretrial supervision officer in September 2021, her third-party custodian gave Williams the ability to use her iPad to conduct said video calls with Individual-1.

This is a blatant violation of the terms of her release. Finally, Williams's disregard for the parameters set by pretrial services, specifically regarding submission of weekly schedules and timely returning to the residence after approved outings, highlights the need for the terms of her release conditions to remain unmodified.

It bears noting that Williams was a strong candidate for pretrial detention in the first instance. Williams is charged with two felonies, including one that has a 20-year statutory maximum. The nature and circumstances of the charged conduct support stringent release conditions. On January 6, 2021, Williams was surrounded by violence and destruction at the U.S. Capitol Building and willingly joined the fray. The evidence against her is strong, including her own statements on social media and in text messages, video recordings from publicly available sources, body worn camera videos, and CCTV footage. As for Williams's history and characteristics, it bears noting that she initially fled, engaged in obstructive behavior by deleting accounts, replacing her cell phone, and directing other online associates to delete communications with her.

## CONCLUSION

WHEREFORE, the United States respectfully requests that the Court deny the defendant's Motion to Amend Conditions of Release.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:   /s/   *Maria Y. Fedor*
Maria Y. Fedor
Attorney, detailed to the

11

United States Attorney's Office for the
District of Columbia
D.C. Bar No. 985823
555 Fourth Street, N.W.
Washington, DC 20530
(202) 353-7366
Maria.Fedor@usdoj.gov

Joseph Huynh
D.C. Bar No. 495403
Assistant United States Attorney (Detailed)
405 East 8th Avenue, Suite 2400
Eugene, Oregon 97401-2708
Telephone: (541) 465-6771
Joseph.Huynh@usdoj.gov

## CERTIFICATE OF SERVICE

On this 10th day of June 2022, a copy of the foregoing was served upon all parties listed on the Electronic Case Filing (ECF) System.

By:    /s/    *Maria Y. Fedor*
Maria Y. Fedor
Attorney, detailed to the
United States Attorney's Office for the
District of Columbia
D.C. Bar No. 985823
555 Fourth Street, N.W.
Washington, DC 20530
(202) 353-7366
Maria.Fedor@usdoj.gov
