UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 1:21-cr-618-ABJ |
| RILEY JUNE WILLIAMS | |

**MOTION *IN LIMINE* REGARDING AUTHENTICATION
OF CERTAIN VIDEO AND PHOTO EVIDENCE**

At trial during its case-in-chief, the government expects to offer several video clips and photographs depicting the defendant on January 6, 2021, that were obtained by the FBI from publicly available sources such as YouTube and Twitter, as well as video clips from publicly available archives, such as Internet Archive, and also video clips taken by cameras and cellphones carried by journalists and rioters. As set forth below, the FBI case agent's testimony will satisfy the low bar required for this Court, as the gatekeeper of admissible evidence, to make an initial ruling of authenticity to admit the evidence, to then allow the jury, as the fact finder, to make a final determination whether the admitted evidence is authentic and how much weight to give it.

BACKGROUND

Much of the riot at, and attack on, the United States Capitol Building was recorded on video: on surveillance footage captured by mounted U.S. Capitol Police ("USCP") cameras; by body-worn cameras affixed to Metropolitan Police Department ("MPD") officers; and by cameras and cellphones carried by journalists and rioters. The government's case-in-chief at trial will rely in part on USCP and MPD camera footage to prove the defendant's specific conduct and the larger context in which it took place. Should the defense not stipulate to the authenticity of these two types of footage, the government will call appropriate USCP and MPD witnesses at trial. But the government also intends to introduce footage from videos taken by other rioters or by journalists,

which FBI agents obtained via either open sources or searches of other defendants' devices. For this type of video evidence, the government seeks a pretrial ruling on authenticity.

## ARGUMENT

Under Federal Rule of Evidence 901(a), "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Rule 901(b) provides a non-exhaustive list of examples of evidence that satisfies this requirement, including comparisons to authenticated specimen, and examining the "appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." FRE 901(b)(3), (4).

Establishing an item's authenticity is not "a particularly high hurdle." *United States v. Ortiz*, 966 F.2d 707, 716 (1st Cir. 1992); *see also United States v. Vidacak*, 553 F.3d 344, 349 (4th Cir. 2009) ("The burden to authenticate under Rule 901 is not high"); *Link v. Mercedes-Benz of N. Am., Inc.*, 788 F.2d 918, 927 (3d Cir. 1986) ("The burden of proof for authentication is slight."); *United States v. Hassanshahi*, 195 F. Supp. 3d 35, 48 (D.D.C. 2016) ("The threshold for the Court's determination of authenticity is not high, … and the proponent's burden of proof for authentication is slight[.]") (citation and quotation marks omitted).

Rule 901 "requires only a prima facie showing of genuineness" for the evidence to be admissible. *United States v. Harvey*, 117 F.3d 1044, 1049 (7th Cir. 1997). Stated differently, "[t]he standard the district court must apply in evaluating a document's authenticity is whether there is enough support in the record to warrant a reasonable person in determining that the evidence is what it purports to be." *United States v. Blanchard*, 867 F.3d 1, 6 (1st Cir. 2017). After clearing that low hurdle, the evidence should *first* be admitted, to *subsequently* allow the fact finder to make

the ultimate decisions regarding authenticity and probative value. *See Vidacak*, 553 F.3d at 349 ("The district court's role is to serve as gatekeeper in assessing whether the proponent has offered a satisfactory foundation from which the jury could reasonably find that the evidence is authentic."); *United States v. Belfast*, 611 F.3d 783, 819 (11th Cir. 2010) ("Once that *prima facie* case is established, the evidence is admitted and the ultimate question of authenticity is decided by the jury.").

To make out a *prima facie* showing of authenticity, "circumstantial evidence of authenticity can be sufficient." *United States v. Bruner*, 657 F.2d 1278, 1284 (D.C. Cir. 1981).[1] Establishing authenticity of photographic evidence does not require testimony from a witness who was physically present and observing the scene at the time it was captured by the camera. *United States v. Rembert*, 863 F.2d 1023, 1027 (D.C. Cir. 1988). And, importantly, the party seeking to admit evidence need not "rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be." *United States v. Holmquist*, 36 F.3d 154, 168 (1st Cir. 1994). Nor is government required to establish that the proffered evidence has not been altered or staged. *United States v. Broomfield*, 591 F. App'x 847, 852 (11th Cir. 2014) (finding sufficient evidence of authenticity even though "there was no testimony establishing that the recording equipment was reliable or that the video was not altered or staged").[2]

---

[1] In deciding preliminary questions about the admissibility of these photos and videos, "[t]he court is not bound by evidence rules, except those on privilege," (FRE 104(a)), and may rely upon hearsay or otherwise inadmissible evidence in establishing the authenticity. *See, e.g., United States v. White*, 116 F.3d 903, 914 (D.C. Cir. 1997).

[2] As a side note, the Eleventh Circuit also held that the factors articulated in *United States v. Biggins*, 551 F.2d 64, 66 (5th Cir. 1977), are inapplicable in criminal cases where the government finds a video on YouTube, holding that if the *Biggins* factors applied, "the prosecution could seldom, if ever, authenticate a video that it did not create." *Broomfield*, 591 F. App'x at 852.

Indeed, questions concerning possible alterations go to the weight the fact finder should give the evidence, not to its authenticity. *United States v. Safavian*, 435 F. Supp. 2d 36, 41 (D.D.C. 2006) (arguments that earlier emails included in an email chain may have been altered before being forwarded are "more appropriately directed to the weight the jury should give the evidence, not to its authenticity"). The government must only 'demonstrate that, as a matter of reasonable probability, possibilities of misidentification and adulteration have been eliminated.'" *United States v. Celis*, 608 F.3d 818, 842 (D.C. Cir. 2010) (quoting *United States v. Stewart*, 104 F.3d 1377, 1383 (D.C. Cir. 1997)); *see also, e.g.*, *United States v. Bowens*, 938 F.3d 790, 794-95 (6th Cir. 2019) (explaining that while "[a]nyone *could have* used the defendants' Facebook accounts, just as the pictures *could have* depicted the men smoking tobacco cigars, and 'getting high' *could have* been a reference to skydiving," there was sufficient circumstantial evidence "for the jury to infer that the accounts belonged to the defendants, and that the defendants were the authors of the posts [which were] about using marijuana" (emphasis added)).

In deciding preliminary questions about the admissibility of these videos, "[t]he court is not bound by evidence rules, except those on privilege." Fed. R. Evid. 104(a). In other words, the government may rely upon otherwise inadmissible evidence in establishing the authenticity of the video evidence described in this motion. *See, e.g.*, *United States v. White*, 116 F.3d 903, 914 (D.C. Cir. 1997). Of course, even with a pretrial ruling that evidence is authentic, and thus admissible, the government must introduce sufficient evidence at trial from which a reasonable fact-finder could reach the same conclusion regarding authenticity. *See, e.g.*, *United States v. Gammal*, 831 F. App'x 539, 542 n.6 (2d Cir. 2020) (unpublished) ("Insofar as the District Court relied on non-public information to make its preliminary determination, it did not err because it did not do so in lieu of the presentation of sufficient authenticating public evidence later at trial."); *United States*

4

*v. Puttick*, 288 Fed. App'x 242, 246 (6th Cir. 2008) (unpublished) ("It is permissible for the judge to make a preliminary determination as to authentication, admit the evidence conditionally under Rule 104(b), and then allow the jurors to be the final arbiters of whether it was actually authenticated."); *United States v. Branch*, 970 F.2d 1368, 1371 (4th Cir. 1992) ("Thus, even though the district court may have ruled during an in camera proceeding that the proponent had presented sufficient evidence to support a finding that a tape recording was authentic, evidence that would support this same ruling must be presented again, to the jury, before the tape recording may be admitted.").

### **FRE 901(b)(3) – Comparison with A Known Specimen**

"Authentication by comparison is routine." *Valve Corp. v. Ironburg Inventions Ltd.*, 8 F.4th 1364, 1371 (Fed. Cir. 2021). For example, photos and videos of a scene can be authenticated by comparison with previously admitted exhibits that show the same scene from other angles. *See United States v. Hoyt*, 946 F.2d 127 (D.C. Cir. 1991) ("[W]e will assume without deciding that the photograph was sufficiently authenticated by comparison with previously admitted Government Exhibit 11, which showed the door from another angle."); *Diaz v. County of Ventura*, 512 F. Supp. 3d 1030, 1035 (C.D. Cal. 2021) ("Here, the videos can be authenticated through other evidence on the record—namely, other video and photographic evidence of the incident that Green provides."); *State v. Haight-Gyuro*, 186 P.3d 33, 38 (Ariz. Ct. App. 2008) (finding video sufficiently authenticated by comparison with separately authenticated photographs); 5 Weinstein's Federal Evidence § 901.03 ("When authentication of an item of evidence is accomplished by comparison with a specimen, the specimen itself must be proved to be authentic […] Nor does it matter what type of evidence the specimen consists of; the requirements for authenticating all types of

specimens … are the same: prima facie proof that they are what their proponent claims them to be.").

In other January 6 trials in this district, the court found similar "open-source" evidence to be authentic by comparison under Rule 901(b)(3). *United States v. Rodean*, 1:21-cr-57-TNM, Dkt. 50 (D.D.C. Apr. 20, 2022); *United States v. Seefried, et al.*, 1:21-cr-287-TNM, Dkt. 56 (D.D.C. May 20, 2022). In both *Rodean* and *Seefried*, the court compared screenshots of video from a known source (USCP CCTV), which showed the Senate Wing Doors from the inside facing out, with screenshots of video footage taken by an unspecified rioter showing the Senate Wing Doors from the outside looking in. *See, e.g.*, *Rodean*, Dkt. 50 at 2. The court noted similar objects depicted in both sets of screenshots: doors of a building flanked by windows, a crowd of rioters near the windows, and a wooden beam sticking through a shattered window. *Id.* The court found these similarities sufficient and granted the government's pretrial motion to find the video taken by the unspecified rioter to be authentic. *Id.* at 6.

Here, the government anticipates offering video clips from USCP mounted cameras and MPD body worn cameras, as well as from sources other than the USCP. Some of these other sources include reporters who were present in the Capitol on January 6, 2021, the defendants' fellow rioters, or other members of the crowd. Many of the videos were obtained through open-source means and are publicly available, though agents obtained some from searches of other defendants' devices. For any such videos, the government will establish authenticity by asking the jury to compare them with other authenticated exhibits, in particular, to USCP and MPD camera footage. Fed. R. Evid. 901(3). This footage will confirm that such videos are what they purport to be: recordings of the same events, captured from slightly different perspectives, and in some cases depicting events and sounds that were not captured by the USCP or MPD cameras. In addition, the

distinctive features of the interior of the Capitol building and of the other individuals depicted in the footage will help authenticate the videos. *Id*. at 901(4)

The government expects that the case agent will testify that he has been investigating January 6 Capitol riot-related cases since January 6, 2021; that he has reviewed hours of video footage recorded by USCP CCTV cameras, MPD body worn cameras, journalists, and rioters; and that he is personally familiar with the locations depicted in those videos from being physically present at the Capitol on other days. He will assist the Court and the jury in identifying similarities between USCP and MPD videos and the other non-government and/or open-source videos offered by the government.

For example, the case agent and/or MPD officer(s) will testify about body worn camera footage of officers inside the Rotunda, which shows the defendant and a group of other rioters physically resisting law enforcement officers' efforts to remove the unauthorized crowd from the Rotunda shortly after 3 PM on January 6, 2021. A few screenshots from those body worn cameras are below. The defendant is the brown-haired person wearing the brown jacket, zebra print strap, green shirt, and black mask.







The case agent and/or MPD officer(s) will further testify that video obtained from the Internet Archive shows the same incident and time period from a slightly different perspective. A screenshot from the open-source video is below. The defendant is circled in yellow.



The case agent or MPD officer can identify common architectural features to establish that both videos depict the interior of the Rotunda, common clothing items to establish that both videos show the same people, particularly the defendant, and common gestures and movements to show that both videos show the same moment when rioters, including the defendant, physically resisted the officers' efforts to clear the Rotunda. For example, the defendant can be heard on both videos yelling at the officers and making statements such as "do your job" and "push."

Similarly, the case agent will testify that USCP CCTV surveillance footage of the interior of the Capitol shows the defendant with a group of other rioters, near the Memorial Doors and bust of Winston Churchill, attempting to breach the police line, and then heading up the stairs. In the USCP CCTV video, which does not contain audio, the defendant can be seen gesturing to other

rioters to encourage them to confront the police, and then, once the line is breached, pushing other rioters to walk through the opening. Although there is no audio, the defendant can be seen repeatedly mouthing "up the stairs" and "go." Two screenshots from the CCTV video appear below. The defendant is circled in yellow.





Through the case agent, the Government will also introduce a video obtained from the Internet Archive that shows the same incident from a slightly different perspective and includes audio. The Internet Archive video shows the defendant in the same area pushing rioters forward while yelling: "Up the stairs, up the stairs, go, go, up the stairs, go, keep going."  Two screenshots from that video appear below.





The case agent can identify common architectural and physical features (such as the distinctive bust of Winston Churchill directly behind the defendant) to establish that both videos depict the same location, common clothing items to establish that both videos show the same people, and

12

common gestures and movements to show that both videos show the same moment: when the defendant pushed and encouraged the rioters forward.

As a third example from a different location, the case agent will testify that USCP CCTV surveillance footage of the interior of the Capitol shows the defendant with a group of other rioters near the Rotunda Doors at around 3:22 PM. In the USCP CCTV video, which does not contain audio, the defendant can be seen exiting the Rotunda and approaching the exterior doors on the East side of the Capitol. The defendant briefly speaks with an unmasked woman who has blonde hair and is wearing a red, white, and blue TRUMP hat with a pom. On the CCTV surveillance, the woman can be seen filming her entrance into the Capitol with her phone and also filming the defendant. A screenshot from the CCTV video appears below. The defendant and blonde woman with the pom are circled in yellow.



Through the case agent, the Government will also introduce a video obtained from the Internet Archive, which shows the same interaction between the defendant and the unmasked woman with blonde hair and the red, white, and blue TRUMP hat with a pom.  As in the CCTV surveillance footage, the woman films her entrance into the Capitol through the Rotunda Doors, and approaches the defendant, who tells her that "If you push hard enough, they'll budge" in reference to the law enforcement offers. A screenshot from the Internet Archive video, featuring the defendant's face, appears below.



As in the other instances, the case agent will point out how the architectural features and lighting fixtures, as well as the circumstances and mob's behavior—including the movement of the defendant and those around her—match up in these two videos.  In particular, the videos both depict the same clothing items, same people, and same gestures and movements, including the

filming of the defendant on the cellphone of the blonde woman wearing the TRUMP hat with a pom.

The Government will use a similar approach to introduce and authenticate other non-government-produced photographs and videos, if not stipulated to by the parties. In each instance, as exemplified above, the case agent will be able to point out similarities sufficient to satisfy the low *prima facie* showing required for this Court to admit the offered photos and videos into evidence and allow the jury to make the final factual determinations about their authenticity. *See Vidacak*, 553 F.3d at 349; *Belfast*, 611 F.3d at 819. As with all admitted evidence, it will then be up to the jury, as the finder of fact, to determine how much weight to give this evidence.[3]

## CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court find the open source photo and video evidence offered by the government to be authentic and admissible.

> MATTHEW M. GRAVES
> UNITED STATES ATTORNEY
> D.C. Bar No. 481 052
>
> */s/ Michael M. Gordon*
> MICHAEL M. GORDON
> Assistant United States Attorney
> Florida State Bar No. 1026025
> 400 N. Tampa St., Suite 3200
> Tampa, Florida 33602
> michael.gordon3@usdoj.gov
> Telephone: 813-274-6370
>
> */s/ Samuel S. Dalke*
> SAMUEL S. DALKE
> Assistant United States Attorney

---

[3] Alternatively, the Court may find the agent's testimony establishes the authenticity of the proffered photos and videos due to their "appearance, contents, substance, internal patterns, or other distinctive characteristics … taken together with all the circumstances." FRE 901(b)(4). In addition, the government anticipates calling witnesses at trial who are familiar with the defendant's voice, and who can identify the speaker in many of the videos taken on January 6, 2021 as the defendant. FRE 901(b)(5).

15

          Pennsylvania State Bar No. 311083
          228 Walnut Street, Suite 220
          Harrisburg, PA 17101
          samuel.s.dalke@usdoj.gov
          Telephone: 717-221-4453