# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **No. 1:21-cr-618-ABJ** |
| **RILEY JUNE WILLIAMS** | |

### GOVERNMENT'S REPLY TO DEFENDANT'S RESPONSE TO GOVERNMENT'S NOTICE OF INTENT TO INTRODUCE EVIDENCE OF OTHER CRIMES, WRONGS, OR ACTS AS INSTRINSIC EVIDENCE OR UNDER FED. R. EVID. 404(b)[1]

The United States of America submitted a notice of intent to introduce evidence of "other crimes, wrongs, or acts" committed by defendant Riley June Williams at trial as intrinsic evidence or under Fed. R. Evid. 404(b). ECF. No. 77. The Defendant responded in opposition. ECF No. 81. The United States hereby replies. Because the evidence is relevant to establishing the Defendant's corrupt intent to commit the violation of 18 U.S.C. § 1512(c)(2) (Obstruction of an Official Proceeding) charged in Count Two and is not unfairly prejudicial, the Court should deem it all admissible. The primary precedent relied upon by the Defendant—*United States v. Fitzsimons*, 1:21-cr-158-RC, ECF No. 74, supports the government's position.

## I.    The United States Seeks to Admit the Evidence for Non-Propensity Purposes

As detailed in its Notice, ECF No. 77, the United States seeks to admit four categories of evidence concerning the Defendant's actions and statements in the month prior to January 6, 2021:

   a.   Video and testimonial evidence that on December 5, 2020, the defendant attended and recorded portions of a "Stop the Steal" rally in Harrisburg, PA, which featured a speech by Nick Fuentes.

---

[1] The Defendant is correct that the title of the United States' Notice, ECF No. 77, contained a scrivener's error and that the United States intended to reference Rule 404(b) of the Federal Rules of Evidence, not the Federal Rules of Criminal Procedure. *See* ECF No. 81, n.1.

b.  Video and testimonial evidence that on December 12, 2020, the defendant attended and recorded portions of the so-called "Million MAGA" rally in Washington, D.C., including speeches by Nick Fuentes and Alex Jones. The rally was organized to protest the process and outcome of the 2020 presidential election. The protest rally date was specifically chosen because it was the same date on which each of the fifty states certified their Electoral College votes.

c.  Images, videos, and messages from the Defendant's iCloud account, Discord accounts, and social media posting documenting her interest in and knowledge of the "America First" podcasts and Nick Fuentes, as well as her adoption and use of imagery associated with the Groyper Army,[2] Accelerationism, Pepe the Frog, prior violent protests, alt-right views and leaders, and claims about election fraud related to the 2020 Presidential election.[3]

d.  Testimony concerning the Defendant's statements about her ideology and extreme views leading up to January 6, 2021, including those outlined above.

*See* ECF No. 77 at 1-2. The Defendant contends that in citing "five of the nine exceptions in 404(b)(2) . . . the Government . . . is simply throwing everything at the wall and hoping something

---

[2] On January 6, 2021, the defendant wore a green shirt inside the Capitol that stated, "I'm with groyper."

[3] The Defendant contends that "several" of the items in this category, such as the ideology of Accelerationism, would require expert testimony to admit. *See* ECF No. 81 at n. 2. The United States disagrees. The government is not seeking to admit opinion evidence. Only a fact witness is necessary to define "accelerationism," which is a term for the social theory/ideology that Western governments are corrupt and unsalvageable, and therefore the best thing a person can do is accelerate their collapse by sowing social chaos and generating political conflict. Similarly, just as an expert would not be required to testify that Harvard University's logo is a white capital "H" on a crimson shield or that Harvard graduates are known as "Cantabs," it is a matter of fact, not expert opinion, that followers of Nick Fuentes use Pepe the Frog as their symbol and call themselves "Groypers." The United States intends to call witnesses with adequate foundational knowledge to testify to these facts.

sticks." ECF No. 81 at 8. This is false; the United States seeks to introduce each of these four categories of evidence for the specific, non-propensity purposes of showing the Defendant's motive, intent, and lack of mistake. When the Defendant entered the U.S. Capitol Building on January 6, 2021, she did not do so to generically support former President Trump or protest the results of the 2020 election. Instead, as the disputed categories of evidence circumstantially show, she did so to "Stop the Steal" by disrupting and preventing Congress from certifying the election.

The first category, the Defendant's attendance at the December 5, 2020, "Stop the Steal" rally in Harrisburg, PA, where she chose to video record Nick Fuentes' speech, shows several things. It demonstrates her exposure to, knowledge of, and support for rhetoric that the 2020 presidential election was "stolen" by the Democrats generally and President Joe Biden specifically. It shows her support for the idea that this theft must not only be opposed but stopped, meaning people, like her, must take action to stop power from being transferred from former President Trump to President Biden. It evidences her awareness of the legal and political significance of January 6, 2021, the date on which the Electoral College vote count would be certified and a focus of the "Stop the Steal" rally. And finally, it underscores her admiration and support for Nick Fuentes, the host of the "America First" podcasts, whose followers call themselves "Groypers." All of these aspects of the Defendant's attendance and recording of the rally make it more probable that when the Defendant entered the U.S. Capitol building on January 6, 2021, and repeatedly urged the mob to fight police and penetrate further into the building, and then faced off with police herself, the Defendant acted with the corrupt intent to obstruct, influence, or impede Congress's certification of the Electoral College vote. *See* ECF No. 27 at 2.

Evidence of the Defendant's attendance at, and recording of, the December 12, 2020, "Million MAGA" rally in Washington, D.C. serves the same purposes and should be admitted for the same reasons. Additionally, the Defendant's attendance at this rally should be admissible to

show lack of mistake. Like on January 6, 2021, the Defendant traveled to Washington, D.C. for a rally. And like on January 6, 2021, she listened to inflammatory speeches claiming that the 2020 presidential election had been rigged and stolen and calling on Trump supporters to take action. But on this date, the Defendant did not invade the U.S. Capitol building, urge others to attack police, steal government property, or encourage others to do so. The contrast between the Defendant's conduct in Washington, D.C. at similar political events on December 12, 2020, and January 6, 2021, is circumstantial evidence that she knew the U.S. Capitol building was a restricted area and knew the limits of legitimate political protest. Her conduct on December 12, 2020, highlights the purposefulness of her conduct on January 6, 2021; she did not make a mistake when she broke multiple laws on January 6, 2021; she did so knowingly and intentionally.

The final two categories of evidence show the Defendant's commitment to extreme anti-government ideologies. These categories of evidence show that the Defendant's actions on January 6, 2021, were not the result of her being caught up in the moment or the crowd, as many January 6 defendants have claimed. Instead, they show that her actions on January 6 were consistent with, and the natural outgrowth of, beliefs she had embraced and frequently communicated to others in the prior months. Her admiration of Nick Fuentes, self-identification as a "Groyper," belief in Accelerationism, and support for violence all circumstantially show the mixed motives behind her actions on January 6: she not only specifically sought to block Congress from certifying the Electoral College vote, but also to undermine and obstruct the government more generally.

In short, in order to prove Count Two, the Obstruction of an Official Proceeding charge, the United States must prove that the Defendant's actions on January 6, 2021, stemmed from a corrupt intent. Each of the four categories of evidence the United States seeks to introduce provide circumstantial evidence of that intent. The Defendant undoubtedly interprets this evidence

differently. But the proper course is for the Court to admit the evidence and let the jury determine what weight to give it, not for the Court to preclude it.

## II.     Judge Contreras' Ruling in *Fitzsimons* Supports Admitting the Evidence under Rule 404(b)

The Defendant relies principally on United States District Judge Rudolph Contreras' initial Rule 404(b) ruling in *United States v. Fitzsimons*, 1:21-cr-158-RC, ECF No. 74, to support her argument that none of the four categories of evidence identified by the United States in its notice are intrinsic. ECF 81 at 3-5 (citing *Fitzsimons*, 2022 WL 1658846 (D.D.C. May 24, 2022)). While it is true that Judge Contreras held that none of the contested evidence was intrinsic, and thus outside of Rule 404(b), he ultimately <u>admitted</u> most of the evidence after analyzing each piece under Rules 404(b) and 403. The Defendant conspicuously omits this aspect of Judge Contreras' ruling. As such, the Defendant fails to capture the evidentiary rulings in *Fitzsimons*—which went to trial with the undersigned Assistant United States Attorney serving as the government's counsel—or properly apply those rulings to this case.

At issue in *Fitzsimons*, which also charged a violation of 18 U.S.C. § 1512(c)(2), were (1) two phone calls Fitzsimons made to a Congressional office in December 2019 concerning former President Trump's first impeachment trial; (2) a phone call Fitzsimons made to a Congressional office in March 2020 concerning China; (3) four phone calls Fitzsimons made to a Congressional office on December 25, 2020, concerning the 2020 presidential election; and (4) a December 2020 Facebook post by another person, apparently on Fitzsimons' behalf, recruiting people to travel to Washington, D.C. for the rally on January 6, 2021, to protest the allegedly stolen election and Electoral College vote count. Judge Contreras found that the first two sets of phone calls were of low probative value and carried significant risk of unfair prejudice, so he excluded them. *See Fitzsimons*, 1:21-cr-158-RC, ECF No. 74 at 7-11.

In contrast, Judge Contreras held that the four phone calls from December 25, 2020, were "directly relevant to what the Government claims is Fitzsimons' motive and purpose [on January 6]: to obstruct the certification of the electoral college [*sic*] vote, by violence if necessary." *Id.* at 11. Judge Contreras supported this holding by quoting *United States v. Hite*, 916 F. Supp. 2d 110, 117 (D.D.C. 2013): "In order to be relevant, the Government's proposed Rule 404(b) evidence does not have to *prove* the Defendant's intent, it need only make it more probable that the Defendant possessed the requisite intent." *Id.* at 12 (emphasis in original). Just as Fitzsimons' December 25, 2020, phone calls demonstrated his "clear opposition to the certification of the electoral college vote" and thus made it more likely that he had the requisite intent to obstruct Congress on January 6, 2021, here the Defendant's attendance at and recording of prior "Stop the Steal" rallies, social media activity, text and chat communications, and extremist statements to others in the month leading up to January 6 all show that she had the same intent and should be admitted for the same reason.[4]

Like this Defendant, Fitzsimons argued that evidence of his political beliefs was unfairly prejudicial. Judge Contreras rejected those arguments wholesale. *See id.* at 12-13. Like Fitzsimons, here the Defendant's actions and statements in the months leading up to January 6 are not "'any more sensational or disturbing' than the charged offenses." *Id.* at 12 (citing *United States v. Wilkins*, 538 F. Supp. 3d 49, 78 (D.D.C. 2021). The Defendant argues that the evidence should be excluded under Rule 403 because "[t]here is a legitimate risk that jurors will judge Ms. Williams' merely for the unpopular and extreme ideologies she has embraced in the past, rather than for the

---

[4] Ultimately, Judge Contreras admitted the Facebook post against Fitzsimons as well. In his Rule 404(b) Opinion issued on May 24, 2022, Judge Contreras held that the post was "relevant to Fitzsimons' intent and motive," and not unfairly prejudicial, for the same reasons as the December 25, 2020, phone calls to the Congressional office. *See Fitzsimons*, 1:21-cr-158-RC, ECF No. 74 at 13-14. The government addressed Judge Contreras' authenticity and hearsay concerns by calling as a witness the person who made the post on Fitzsimons' behalf.

actual crimes with which she is charged." ECF No. 81 at 8. Incredibly, she cites to Judge Contreras'

opinion in *Fitzsimons* for this proposition. *See id.* Yet in *Fitzsimons*, Judge Contreras <u>rejected</u> this

exact argument, writing "Fitzsimons's concern that a D.C. jury will consider his views distasteful

and convict him on that basis is pure speculation and fails to account for *voir dire* and limiting

instructions." *Fitzsimons*, 1:21-cr-158-RC, ECF No. 74 at 13 (citing *United States v. Young*, No.

12-cr-0042, 2013 WL 12430550, at *6 (D.D.C. July 22, 2013)).

In short, while evidence of the Defendant's beliefs, ideologies, statements, and actions

concerning the 2020 presidential election may be prejudicial, the evidence is not *unfairly* so. *See*

*id.* at 12 (citing United States v. Cassell, 292 F.3d 788, 796 (D.C. Cir. 2002) ("Unfair prejudice as

used in Rule 403 is not to be equated with testimony simply adverse to the opposing party.

Virtually all evidence is prejudicial . . . . The prejudice must be unfair.")). There is nothing unfair

about using the Defendant's prior attendance at similarly themed rallies, her social media activities,

her written communications, and her oral statements to show that she acted intentionally and

corruptly on January 6, 2021, that she knew better and thus did not make a mistake, that she was

motivated to block Congress's certification of the Electoral College vote, and that her actions were

consistent with the ideology and leaders she had embraced.

Accordingly, the Court should deem each of the four categories of evidence admissible, whether as intrinsic evidence or under Rule 404(b).

Dated October 14, 2022.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481 052


*/s/ Michael M. Gordon*
MICHAEL M. GORDON
Assistant United States Attorney
Florida State Bar No. 1026025
400 N. Tampa St., Suite 3200
Tampa, Florida 33602
michael.gordon3@usdoj.gov
Telephone: 813-274-6370


*/s/ Samuel S. Dalke*
SAMUEL S. DALKE
Assistant United States Attorney
Pennsylvania State Bar No. 311083
228 Walnut Street, Suite 220
Harrisburg, PA 17101
samuel.s.dalke@usdoj.gov
Telephone: 717-221-4453