UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

v.                                                                   No. 1:21-cr-618-ABJ

RILEY JUNE WILLIAMS

**GOVERNMENT'S BRIEF OPPOSING A SPECIAL UNANIMITY INSTRUCTION OR SPECIAL VERDICT FORM FOR COUNT 1 AND/OR 3**

The parties agree that at the conclusion of trial, the Court should give a general instruction to the jury about unanimity. *See* ECF No. 92-2 at 66 (jointly requesting that the Court give instruction 2.405 from Criminal Jury Instructions for the District of Columbia (Fifth Edition, 2021 Release) (the "Redbook")). During the pre-trial conferences held on October 31 and November 3, 2022, however, the defense argued that the jury also should be specially instructed that Counts 1 and 3 each contain alternative elements, on which the jury must be unanimous to convict, and that a special verdict form be drafted on which the jury would be required to indicate which alternative(s) they chose.

The United States opposes this request and provides the below memorandum of law in support of its position. Neither Count 1 nor Count 3 contains alternative elements. Instead, both counts contain alternative <u>means</u> by which the government may prove a certain single element. As such, the jury need not be unanimous on the means by which the government proves those elements, and both the jury instructions and verdict form should reflect that.

**I.       Elements Versus Means**

In *United States v. Powell*, 266 F.3d 1181 (10th Cir. 2000), the Tenth Circuit evaluated a special unanimity argument similar to the one the defendant raises here and explained that there is "a dist]inction between the elements of an offense and means by which the Government may

satisfy an element." *Id.* at 1196. "Elements . . . must be found unanimously by the jury. . . . On the other hand, the jury need not agree unanimously on the means by which an element is proven." *Id.*; *see also, e.g.*, *United States v. Adams*, 200 F. Supp. 3d 141, 146 (D.D.C. 2016) ("the Supreme Court and other circuits have generally held that juries must be unanimous about the elements of offenses, but not the means by which defendant's actions satisfy those elements.")

The leading case on distinguishing whether a statute contains alternative elements, on which a jury must unanimously agree, or alternative means of satisfying a single element, on which jurors must only agree that the element was satisfied but not on *how* it was, is *Schad v. Arizona*, 501 U.S. 624, 635 (1991). In *Schad*, the Supreme Court considered whether a special unanimity instruction was necessary to distinguish first-degree premeditated murder from felony murder. *Id.* The Court decided it wasn't. The D.C. Circuit summarized the *Schad* holding as follows:

> Justice Souter's plurality opinion asserted that "'there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict,'" *Schad*, 111 S. Ct.. at 2497 (quoting *McKoy v. North Carolina*, 494 U.S. 433, 449 (1990) (Blackmun, J., concurring)), and Justice Scalia's concurrence agreed that "it has long been the general rule that when a single crime can be committed in various ways, jurors need not agree upon the mode of commission," *id.* at 2506 (Scalia, J., concurring in part and concurring in the judgment). The Court concluded that because each juror agreed that the defendant had committed the offense of first-degree murder - the sole proposition about which the jury would have had to be unanimous - a requirement of jury unanimity, even if applicable, would have been satisfied. *See Schad*, 111 S. Ct. at 2496; *see also id.* at 2505-07 (Scalia, J., concurring in part and concurring in the judgment.

*United States v. Harris*, 959 F.2d 246, 255 (D.C. Cir. 1992). As the *Schad* Court noted, "[d]ifferent jurors may be persuaded by different pieces of evidence, even when they agree upon the bottom line. Plainly there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict." 501 U.S. at 631 (internal citation omitted).

In *United States v. UCO Oil*, 546 F.2d 833 (9th Cir. 1976), the Ninth Circuit articulated an analytical framework for determining whether a statute creates separate offenses or simply

describes alternative means to commit the same crime. Courts should consider "several relevant factors," including: (1) "language of the statute itself," (2) "the legislative history and statutory context," (3) the type of conduct proscribed, and (4) the "appropriateness of multiple punishment for the conduct charged in the indictment." *Id.* at 836-838; *see also United States v. Arreola*, 467 F.3d 1153, 1157 (9th Cir. 2006) (applying that framework to hold that 18 U.S.C. § 924(c) creates only one offense that can be committed via multiple means).

Here, both Count 1 and Count 3 allow for and charge the defendant with a single crime that can be committed multiple ways. Like the first-degree murder charge at issue in *Schad*, the jurors here need only be unanimous that the defendant committed the crime; they "need not agree upon the mode of commission." 501 U.S. at 649.

## II. Count 1: Civil Disorder, 18 U.S.C. § 231(a)(3), contains a single jurisdictional element

Title 18, Section 231(a)(3), states that

> Whoever commits or attempts to commit any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce **or** the conduct or performance of any federally protected function

has violated the statute and committed a crime. *Id.* (emphasis added). In the final two clauses, Congress asserts jurisdiction over the criminal conduct described in 18 U.S.C. § 231(a)(3) if it either impacts interstate commerce or a federally protected function. The defendant asserts that the jury should be instructed that they must unanimously which (if either) of those two impacts the government proved at trial. Accordingly, the defendant requests that the Court provide the jury with a special verdict form that, as a subset of their verdict on Count 1, requires them to indicate whether they (unanimously) found the defendant's conduct impacted interstate commerce or a federally protected function.

A special unanimity instruction and verdict form for Count 1 is unnecessary and legally unfounded. The plain text and language of the statute itself indicates that the final two clauses create a single jurisdictional element, which the government may prove by either of two alternative means. In other words, the jury need not be unanimous on *how* the federal government has jurisdiction, only that it *does*.

While the United States is unaware of any case directly on point, appellate courts have routinely found special unanimity instructions unnecessary in cases involving crimes other than 18 U.S.C. § 231(a)(3) in which the government presented multiple theories to satisfy a jurisdictional element. For example, in *United States v. Luong*, 965 F.3d 973, 986 (9th Cir. 2020), the government offered two theories to satisfy the interstate commerce element in a Hobbs Act robbery case. The defendant "requested an instruction requiring the jury to unanimously agree on the factual basis underpinning the interstate-commerce element." *Id.* The district court refused, "concluding that the government's two theories went to the same offense element, and accordingly, the jury did not need to 'agree to the specific means by which interstate commerce was affected.'" *Id.* The appellate court upheld the trial court's decision, holding that "The government's interstate-commerce theories were alternative means the jury could have found satisfied a single element of Hobbs Act robbery, and 'jurors are not constitutionally required to unanimously agree on alternative theories of criminal liability.'" *Id.* (citing *United States v. Kim*, 196 F.3d 1079, 1083 (9th Cir. 1999)).

The *Luong* case is not an outlier. The Ninth Circuit Court of Appeals similarly rejected defense requests for unanimity instructions in *United States v. Renteria*, 557 F.3d 1003 (9th Cir. 2009), which charged the defendant with maliciously damaging a synagogue used in interstate <u>or</u> foreign commerce, in violation of 18 U.S.C. § 844(i), *id.* (holding that the jurors need not be unanimous on whether the conduct affected interstate commerce or foreign commerce, only that it

impacted one of them), and *United States v. Steele*, 543 F. App'x 703 (9th Cir. 2013), which charged the defendant for his role in a murder-for-hire, in violation of 18 U.S.C. § 1958 and other statutes, *id.* ("the jury was not required to agree unanimously on which" of the "three separate incidences of interstate travel" presented by the government satisfied the jurisdictional element).

The Eleventh Circuit Court of Appeals reached the same conclusion as the *Steele* court in *United States v. Verbitskaya*, 406 F.3d 1324, 1334 (11th Cir. 2005). There, the court considered whether the jury needed to reach "a unanimous verdict on [which of] the government's four alternative theories" established that "interstate commerce was affected by the extortion in this case." The court held that no such unanimous verdict was necessary. *Id.*

Like those cases, here the United States will present multiple (at least four) theories to satisfy a jurisdictional element. The government expects the evidence will show that the defendant's conduct at the U.S. Capitol on January 6, 2021, interfered with the ability of Safeway grocery stores within the District of Columbia to receive and stock shipments from suppliers outside the District of Columbia, as well as to sell goods acquired from outside the District of Columbia to customers within the District of Columbia. Additionally, the government expects to prove that the defendant's conduct interfered with the Secret Service's protection of the Vice President and his immediate family and the daily operation of Congress. These are all alternative means to satisfy a single jurisdictional element, and thus no special unanimity instruction or verdict form is necessary. *See Adams*, 200 F. Supp. 3d at 146.

### III. Count 3: Assaulting, Resisting, or Impeding Certain Officers, 18 U.S.C. § 111(a)(1), contains a single aggravating element that elevates the crime from a misdemeanor to a felony

Count 3 charges the defendant with violating 18 U.S.C. § 111(a)(1), which makes it a crime to "forcibly assault[], resist[], oppose[], impede[], intimidate[], or interfere[] with any" officer or employee of the United States or anyone assisting such person "engaged in or on account of the

5

performance of official duties." *Id.* The statute elevates the crime from misdemeanor simple assault to a felony if the defendant's conduct "involve[d] physical contact with the victim of that assault or the intent to commit another felony." 18 U.S.C. § 111(a)(2).

Here, the United States will present evidence of both aggravating factors. The government expects the evidence to show that the defendant made physical contact with multiple Metropolitan Police Department officers as she attempted to, and did, forcibly interfere with their attempts to guard the U.S. Capitol, block rioters from progressing further within it, and eventually clear them from the space. Additionally, the government will prove that the defendant committed this forcible interference with the intent to further two other felonies: the civil disorder charged in Count 1 and the obstruction of an official proceeding charged in Count 2.

As with Count 1, the defendant requests a special unanimity instruction and verdict form for Count 3. The defendant wants the Court to instruct the jury that in order to convict the defendant of felony assault, they must be unanimous—and specifically indicate on the verdict form—whether they found the defendant's conduct involved physical contact or the intent to commit another felony. But just like Count 1, such a special instruction and verdict form is unnecessary and would be inappropriate for Count 3.

Like the alternative means to satisfy the jurisdictional element contained in 18 U.S.C. § 231(a)(3) (Count 1), 18 U.S.C. 111(a) (Count 3) contains alternative means to satisfy the aggravating factor element that raises the crime to a felony. *See* 18 U.S.C. § 111(a)(2). The Second Circuit's discussion of a different aspect of Section 111(a)—the list of prohibited actions ("assaults, resists, opposes, impedes, intimidates, or interferes")—applies equally here:

> Section 111(a) lists all of the acts that constitute the crime in one sentence, and imposes a single penalty for all of them, "a construction which indicates that Congress did not mean to create more than one offense." *United States v. Mal*, 942 F.2d 682, 688 (9th Cir. 1991). Further, "Congress's purpose in enacting § 111 was both to deter harm to certain federal officials and to deter interference with their

> law enforcement activities." *United States v. Walker*, 835 F.2d 983, 987 (2d Cir. 1987) (citing *United States v. Feola*, 420 U.S. 671, 678-83 (1975)). "In order to protect the law enforcement function itself, the statute must be read as prohibiting any acts or threats of bodily harm that might reasonably deter a federal official from the performance of his or her duties." *Walker*, 835 F.2d at 987. In drafting Section 111, Congress therefore "created the single crime of harming or threatening a federal official, and specified six ways by which the crime could be committed." *Street*, 66 F.3d at 975. We do not find that these means are so inherently distinct as to render them six separate crimes. Accordingly, the district court did not err in declining to instruct the jurors that they must agree unanimously as to which theory of the offense — assaulting, resisting, opposing, impeding, intimidating, or interfering — supports the verdict."

*United States v. McIntosh*, 753 F.3d 388, 393 (2d Cir. 2014). The same principal applies to the aggravating factor element. The language and structure of the statute reveals that Congress created one misdemeanor crime that could be committed six different ways, which becomes a felony if <u>either</u> of two additional aggravating factors is present. *See* 18 U.S.C. § 111(a)(1-2). The proscribed conduct and inappropriateness of allowing multiple prosecutions/punishments for the same conduct further support this reading. *See UCO Oil*, 546 F.2d at 836-38.

The United States acknowledges that the two aggravating factors in 18 U.S.C. 111(a)(2) might appear "inherently distinct." *See id.* One requires the government to prove an aggravating act while the other requires the government to prove an aggravating mental state. *See id*. But in *Schad*, the Supreme Court rejected the argument that a similarly structured statute required a special unanimity instruction. *Schad* concerned Arizona's murder statute, which defined first-degree murder as a unitary crime that encompassed premeditated murder and felony murder. There, like here, the statute at issue covers a specific type of violent crime that can be committed via different mental states and different criminal acts. But nevertheless, "a plurality of the Court concluded that because the statute criminalized two separate means of committing first degree murder, rather than codifying two distinct crimes of murder, the defendant was not entitled to a

7

jury instruction requiring unanimity on a single means of commission." *McIntosh*, 753 F.3d at 392 (describing *Schad*).

As the *Schad* Court put it, "We see no reason . . . why the rule that the jury need not agree as to mere means of satisfying the *actus reus* element of an offense should not apply equally to alternative means of satisfying the element of *mens rea*." *Schad*, 501 U.S. at 632. It follows that in considering whether 18 U.S.C. 111(a)(2) applies to elevate a violation of 18 U,S.C. 111(a)(1) to a felony, the jury need not agree whether the defendant's conduct contained an aggravating *actus reus* or an aggravating *mens rea*, only that one of the two was present.

In addition, the legislative history behind 18 U.S.C. § 111(a)(2) indicates that Congress meant the aggravating factor to function as a single element. Before it was amended in 2007, the relevant language in Section 111(a) provided that, "where the acts in violation of this section constitute only simple assault, be fined under this title or imprisoned not more than one year, or both, and in all other cases, be fined under this title or imprisoned not more than three years, or both." *United States v. Hathaway*, 318 F.3d 1001, 1006 (10th Cir. 2003) (quoting pre-amendment version of Section 111(a)).

This language led to a circuit split about the difference between "simple assault" and "all other cases." *See id.* at 1008 (discussing different approaches). The Tenth Circuit, among others, held that "'all other cases' assault under § 111(a) includes any assault that involves actual physical contact or the intent to commit murder or any felony other than those referred to in § 113(a)(2) but does not involve a deadly or dangerous weapon or bodily injury. In light of this definition, either actual physical contact or the intent to commit murder or any felony other than those referred to in § 113(a)(2) is a required and essential element of the felony offense of 'all other cases' assault under § 111(a)." *Id.* at 1008-09.

8

With the 2007 amendment, Congress replaced the phrase "all other cases" with "such acts involve physical contact with the victim of that assault or the intent to commit another felony." Congress thus resolved any ambiguity about what "all other cases" meant and replaced that single element with the single element now at issue. As such, the legislative history favors reading 18 U.S.C. § 111(a)(2) as providing alternative means to satisfy a single element: the aggravating factor elevating the offense from a misdemeanor to a felony.

### IV. Conclusion

For the foregoing reasons, the Court should provide the jury with the general unanimity instruction proposed by the parties, *see* ECF No. 92-2 at 66, but no special unanimity instruction for Count 1 and/or 3. No special verdict form is necessary or advisable either.

Dated November 6, 2022.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481 052

*/s/ Michael M. Gordon*
MICHAEL M. GORDON
Assistant United States Attorney
Florida State Bar No. 1026025
400 N. Tampa St., Suite 3200
Tampa, Florida 33602
michael.gordon3@usdoj.gov
Telephone: 813-274-6370

*/s/ Samuel S. Dalke*
SAMUEL S. DALKE
Assistant United States Attorney
Pennsylvania State Bar No. 311083
228 Walnut Street, Suite 220
Harrisburg, PA 17101
samuel.s.dalke@usdoj.gov
Telephone: 717-221-4453