**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **1:21-CR-618-ABJ** |
| | : | |
| **v.** | : | |
| | : | |
| **RILEY JUNE WILLIAMS** | : | |

### DEFENDANT'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR JUDGMENT OF ACQUITTAL AND RESPONSE TO COURT'S MINUTE ORDER ENTERED NOVEMBER 22, 2022

Defendant Riley June Williams, by and through her attorneys, submits the within supplemental brief in further support of her oral motion for judgment of acquittal made by counsel on November 15, 2022 at the close of the government's case. This submission also responds to this Honorable Court's minute order entered on November 22, 2022, addressing whether 18 U.S.C. § 231 can serve as the "other" felony for purposes of 18 U.S.C. § 111(a).

## I.   LEGAL STANDARD

Federal Rule of Criminal Procedure 29(a) provides:

> After the government closes its evidence, or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction. The court may on its own consider whether the evidence is insufficient to sustain a conviction.

Fed. R. Crim. P. 29(a). In turn, subsection (b) of Fed. R. Crim. P. 29 provides that, when the trial court reserves decision on a Rule 29(a) motion made at the close of the government's evidence, the court "must decide the motion on the basis of the evidence at the time the ruling was reserved." Fed. R. Crim. P. 29(b).

At the conclusion of the government's case-in-chief, the defense presented an oral motion for judgment of acquittal pursuant to Rule 29(a) with respect to counts 1 through 6 of the

indictment.  Following the return of the jury's verdict, this Honorable Court granted a mistrial

with respect to counts 2 and 4, and the government has subsequently dismissed those counts

against Ms. Williams, pursuant to Fed. R. Crim. P. 48(a).  Accordingly, this supplemental brief

shall only address Ms. Williams' arguments with respect to Counts 1, 3, 5 and 6.  Ms. Williams

incorporates all of the arguments made during the oral motion herein.

## II.    COUNT 1 – CIVIL DISORDER

In order to secure a conviction for civil disorder under 18 U.S.C. § 231(a)(3), one of the

elements the government must prove beyond a reasonable doubt is that the civil disorder

"obstructed, delayed or adversely affected commerce, the movement of any article or commodity

in commerce."  18 U.S.C. § 231(a)(3).  At trial, the government presented evidence that the

Safeway grocery store chain in Washington D.C. closed early on January 6, 2021, and as a result

did not receive shipments and had reduced profits/sales on that date.  Ms. Williams contends that

this evidence concerning the civil disorder's alleged effect on commerce is far too attenuated to

place the activity within the reach of Congress' commerce authority, and thus insufficient to

sustain a conviction.  Accordingly, this Honorable Court should enter a judgment of acquittal as

to this basis for Ms. Williams' conviction on Count 1.[1]

The Commerce Clause of the United States Constitution prohibits the criminalization of

noneconomic intrastate activity unless "the regulated activity 'substantially affects' interstate

commerce."  *United States v. Lopez,* 514 U.S. 549, 559 (1995); *see also United States v.*

*Robertson*, 514 U.S. 669, 671 (1995) ("The 'affecting commerce' test was developed in our

---

[1] Ms. Williams recognizes that the jury indicated on the verdict form that it unanimously found beyond a reasonable doubt that, on Count 1, the civil disorder obstructed, delayed or adversely affected the "conduct or performance of any federally protected function," 18 U.S.C. 231(a)(3), and that this alternative finding is sufficient to sustain an overall conviction on Count 1, irrespective of this Court's ruling on Ms. Williams' motion.

jurisprudence to define the extent of Congress' power over purely *intra*state commercial activities that nonetheless have substantial *inter*state effects")(emphasis in original).  The regulated activity must "substantially affect" interstate commerce because "[t]he regulation and punishment of intrastate violence that is not directed at the instrumentalities, channels, or goods involved in interstate commerce has always been the province of the States."  *United States v. Morrison*, 529 U.S. 598, 618 (2000).  In both *Lopez* and *Morrison,* the Supreme Court invalidated criminal statutes, namely the Gun-Free School Zones Act and the Violence Against Women Act, finding that the laws regulated noneconomic activity that exceeded Congress's commerce authority.  *See Lopez*, 514 U.S. at 567 (the Gun-Free School Zones Act had "nothing to do with 'commerce' or any sort of economic enterprise, however broadly one might define those terms."); *see also Morrison*, 529 U.S. at 617 (the Court "reject[ed] the argument that Congress may regulate noneconomic, violent criminal conduct based solely on that conduct's aggregate effect on interstate commerce.")

Similarly here, 18 U.S.C. § 231(a)(3) criminalizes "any act" that obstructs, impedes, or interferes with an officer performing lawful duties "incident to and during the commission of a civil disorder which *in any way or degree* obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce. . ."  (emphasis added).  The statute is not directed at regulating commercial activity – rather, the gravamen of §231(a)(3) criminalizes obstruction, interference, and impeding officers, with no direct connection to commerce or economic activity.  Moreover, §231(a)(1) is not part of any larger body of economic regulation; instead it involves "a brief, single-subject statute[,]" which "by its terms has nothing to do with commerce or any sort of economic enterprise, however broadly one might define those terms." *See Gonzalez v. Raich*, 545 U.S. 1, 23-34 (2005) (upholding the Controlled Substances Act and

distinguishing *Lopez*, 514 U.S. at 561) (internal quotation marks omitted); *accord Morrison*, 529 U.S. at 613 ("Gender-motivated crimes of violence are not, in any sense of the phrase, economic activity').

Ms. Williams maintains that the government did not present sufficient evidence of an impact on commerce sufficient to sustain a conviction under 18 U.S.C. § 231(a)(3). Any impact on commerce demonstrated by the government's evidence was *de minimus*, making Ms. Williams' conviction contrary to Commerce Clause jurisprudence developed in the United States Supreme Court. Accordingly, the Court should enter a judgment of acquittal on Count 1 with respect to the "adversely affecting commerce" basis of conviction.

## III.     COUNT THREE – RESISTING OR IMPEDING CERTAIN OFFICERS

Ms. Williams moves the Court for a judgment of acquittal on Count 3, Resisting or Impeding Certain Officers, in violation of 18 U.S.C. § 111(a), because Ms. Williams' conviction under §111(a)(1) cannot be based on a finding that Ms. Williams committed Count 3 with the intent to commit Count 1, because the two offenses have identical *actus rei.* Count 1, Civil Disorder, cannot serve as "another felony" for purposes of 18 U.S.C. § 111(a).

With respect to Count 3, Section 111(a)(1) provides a maximum term of 8 years imprisonment if the defendant is found to have forcibly assaulted, resisted, opposed, impeded, intimidated, or interfered with a government official "with the intent to commit another felony." 18 U.S.C. § 111(a)(1). As to Count 3, the jury was instructed that it must find the following five elements beyond a reasonable doubt:

> 1)     that the defendant resisted, opposed, impeded, intimidated, or interfered with a federal officer or officers or any person or persons assisting a federal officer;

> 2)     that when she did so, the defendant acted forcibly;

3)     that when she did so, the defendant acted intentionally;

4)     that the person she resisted, opposed, impeded, intimidated, or interfered with was an officer or an employee of the United States who was then engaged in the performance of his or her official duties, or any person assisting such an officer or employee in the performance of that officer's duties;

5)     that at the time, the defendant acted with the intent to commit another offense, that is, either Count One or Count Two.

*See* Final Jury Instructions, ECF 122, p. 32.  With respect to the fifth element, on the verdict form the jury indicated that it unanimously found that Ms. Williams acted with the intent to commit Count 1, Civil Disorder.  *See* Verdict Form, ECF 128, p. 3.

At trial, the government presented the same evidence – Ms. Williams' interactions with MPD officers in the Rotunda on January 6, 2021 –to establish that Ms. Williams' resisted, opposed, impeded, or interfered with officers (Count 1) and that she resisted, opposed, impeded, intimidated, or interfered with officers (Count 3).  Thus, Ms. Williams' conviction on Count 3 rests on an illogical finding that she resisted, opposed, impeded, intimidated, or interfered with officers with the intent to resist, oppose and impede officers.  Earlier this year, this Honorable Court observed herself the circular overlap of 18 U.S.C. § 111(a)(1) and § 231(a)(3) at a sentencing hearing in *United States v. Hamner*, 21-cr-689-ABJ, Transcript of Sentencing Hearing, (September 23, 2022) attached hereto as Exhibit B.  Ms. Williams agrees with this Court's comments in the *Hamner* -- the term "another offense" means a "second, different crime," not just "any offense with any different elements . . ." Exh. B at pp. 20-21.

Ms. Williams submits that this Court should employ the "fork in the road" test or the "fresh impulse test" previously used by the D.C. Circuit to determine whether "criminal acts are separate or part of the same crime."  *See United States v. Richardson*, 167 F.3d 621, 627 (D.C. Cir. 1999), *cert denied,* 528 U.S. 895 (1999). Acts are deemed to be separate where "there was

an appreciable interval--albeit quite brief--between the two criminal episodes which showed that

the defendant had reached a 'fork in the road' or had acted in response to a 'fresh impulse.'"

*Richardson*, 167 F.3d at 627 (quoting *Spain v. United States*, 665 A.2d 658, 661 (D.C. 1995).

Here, as evidenced by the body cam and other footage from the Rotunda admitted in evidence,

Ms. Williams conduct against officers in the Rotunda was one continuous course of events. She

did not leave the Rotunda and come back in[2]; she stayed in the Rotunda for approximately 25

minutes, engaging with officers for the duration, and then left.  Just as there is no distinction

between the actus rei in the crimes set forth in §231(a)(3) (resist, oppose and impede) and

§111(a)(1) (resist, oppose, impede, intimidate, or interfere), there is no distinction in Ms.

Williams' conduct in the Rotunda on January 6 so that one act could be attributed to the

§231(a)(3) conviction and another could be attributed to the §111(a)(1) conviction.

     To be sure, the government did not include the name or identity of the officer or officers

with which Ms. Williams' was charged with resisting, opposing, impeding, intimidating, or

interfering with in Count 3 of the indictment, which would have permitted the jury and the Court

to identify a *particular* course of conduct attributable to the §111(a)(1) crime.  Instead, the

government proceeded on a theory that Ms. Williams' conduct of pushing and resisting the

officers in the Rotunda generally was the actus rei supporting a conviction for §111(a)(1).

However, this is exact same evidence that the government used to secure a conviction under

§231(a)(3).

---

[2] To the extent the government might note that Ms. Williams was in the Rotunda on more than one occasion, we clarify that Ms. Williams was inside the Rotunda for a brief 3-minute period from approximately 2:40 to 2:43 p.m. on January 6, however at that time she was just passing through, and did not interact with law enforcement during that 3-minute period.  The time period at issue is from approximately 2:56 p.m. to 3:20 p.m.

"Upon finding that a defendant has been convicted of two charges for a single offense, the usual remedy is to hold that the convictions have merged and order that one be vacated." *United States v. Clark*, 184 F.3d 858, 872 (D.C. Cir. 1999) (citing *Ball v. United States*, 470 U.S. 856, 864 (1985); *see United States v. Cunningham*, 145 F.3d 1385, 1399 (D.C. Cir. 1998); *see also Richardson*, 167 F.3d at 628. Here, the appropriate course is to vacate Ms. Williams' conviction on Count Three. This is particularly so given that civil disorder is not "another felony" within the meaning of 18 U.S.C. § 111(a) because it has the same actus rei and the government used a singular course of Ms. Williams' conduct as the evidence for both crimes.

## IV.   COUNTS FIVE AND SIX - ENTERING AND REAMINING IN A RESTRICTED BUILDING/GROUNDS; DISORDERLY CONDUCT IN A RESTRICTED BUILDING/GROUNDS

Ms. Williams moves the Court for a judgment of acquittal on Counts 5 and 6 because the sole U.S. Secret Service protectee at issue, then-Vice President Pence, was not "temporarily visiting" the Capitol on January 6. Rather, as Judge Nichols observed in hearing in another January 6 prosecution, the vice president has a permanent office in the Capitol Building, serves as President of the Senate, and that is the role in which Vice President presided at the Capitol on January 6. *See United States v. Fischer*, 21-cr-234-CJN, Transcript of Proceeding conducted on February 28, 2022, attached hereto as Exhibit A, at 3:15-25. Just as the judge observed that he would not "temporarily visit my chambers," the vice president does not "visit" his own office at the Capitol, particularly when he is in his role as President of the Senate, as on January 6. *See* Exh. A at p. 19.

Ms. Williams maintains the argument that she has made during pretrial motions in this case and during the oral Rule 29 motion -- the term "temporarily visiting" as set forth in 18 U.S.C. § 1752, does not cover Vice President Pence's presence in the Capitol on January 6,

2021, because he was working in his official capacity as President of the Senate. The evidence at trial demonstrated that Vice President Pence was presiding in the Senate Chamber to count electoral college vote certificates, and at certain points during the day, he was present in his own office inside the Capitol. No evidence presented by the government at trial demonstrated that the President of the Senate "visits" his own place of employment.

In the *Fischer* hearing mentioned above, Judge Nichols' questioning of the government revealed how inconsistent it is to apply the plain meaning of the term "visiting" to the President of the Senate in this context. Judge Nichols queried whether a judge would "temporarily visit" his own chambers if he were coming in irregularly during the Covid-19 pandemic. *See* Ex. A, pp. 19-20. And when would the judge's visits start to become more than "temporary" visits? When he came in every week? *See* Ex. A, p. 20. To these questions, the government offered the following unpersuasive response: the government's "view is that you're always temporarily visiting your chambers because you're going there – each time you're going there, you're going there for a limited time for a limited purpose." *Id.*

> THE COURT: So, other than a permanent residence, I'm temporarily visiting every single other place in the world, no matter how frequent and no matter for how long. If I work 365 days a year in this courthouse, would I be temporarily visiting every time I came?
>
> THE GOVERNMENT: Yes. Yes. Your Honor. You would be.

Ex. A, p. 20.

The court went on to make an important distinction. A determination that the vice president does not "temporarily visit" his office under §1752 does not imply that he is any less protected by the Secret Service. "It's not that the vice president would be unprotected. It would be that this one particular criminal statute might not apply because of the unique nature of the

vice president in our constitutional structure, he may have actually not been temporarily visiting this one particular location.  It could be a very sui, sui generis situation." Ex. A, p. 18:12-18.

Judge Nichols' comments align with several reported § 1752 cases, which involve Secret Service protectees visiting places where they do not work and hold offices.  *E.g.*, *United States v. Bursey*, 416 F.3d 301 (4th Cir. 2005)(president visiting rally at airport); *United States v. Junot*, 902 F.2d 1580 (9th Cir. 1990)(president speaking at a rally in a park); *Blair v. City of Evansville, Ind.*, 361 F. Supp. 2d 846 (S.D. Ind. 2005)(defendant charged with 18 U.S.C. § 1752 during vice president's visit to the Centre in Evansville).  These cases all involve the president and vice president traveling outside of the District of Columbia and "visiting" that area for a "temporary" purpose, consistent with the plain meaning of §1752(c)(1)(B).

Vice President Pence was not traveling to a speaking event or a political rally on January 6.  He was performing a duty of his office in a building where he had a permanent office. Based on the plain language of § 1752, he was not "temporarily visiting" the Capitol Building. Accordingly, a judgment of acquittal should be entered as to Counts 5 and 6.

## V.   CONCLUSION

For the reasons presented on the record at the conclusion of the government's case-in-chief in conjunction with the arguments contained in the foregoing submission, Ms. Williams respectfully moves the court to enter a judgment of acquittal as to Counts 1(in part), 3, 5 and 6.

Date:   December 21, 2022                    Respectfully submitted:


                                             */s/ Lori J. Ulrich*
                                             LORI J. ULRICH, ESQUIRE
                                             Assistant Federal Public Defender
                                             */s/ Brandon R. Reish*
                                             BRANDON R. REISH, ESQUIRE
                                             Assistant Federal Public Defender

*/s/ Amanda R. Gaynor*
AMANDA R. GAYNOR, ESQUIRE
Staff Attorney

100 Chestnut Street, Suite 306
Harrisburg, PA 17101
Tel. No. (717) 782-2237
Fax No. (717) 782-3881
*lori_ulrich@fd.org*
*brandon_reish@fd.org*
*amanda_gaynor@fd.org*

*Attorneys for Riley June Williams*

## CERTIFICATE OF SERVICE

I, Lori J. Ulrich, Esquire, of the Federal Public Defender's Office, do hereby certify that I served a copy of the foregoing **Defendant's Supplemental Brief in Support of Motion for Judgment of Acquittal and Response to  This Honorable Court's Minute Order Entered November 22, 2022** via Electronic Case Filing, and/or by placing a copy in the United States mail, first class in Harrisburg, Pennsylvania, and/or by hand delivery, addressed to the following:

Samuel Dalke, Esquire
Assistant United States Attorney
s*amuel.s.dalke@usdoj.gov*

Michael Gordon, Esquire
Assistant United States Attorney
*michael.gordon3@usdoj.gov*

RILEY JUNE WILLIAMS

Date:  December 21, 2022

*/s/ Lori J. Ulrich*
LORI J. ULRICH, ESQUIRE
Assistant Federal Public Defender
100 Chestnut Street, Suite 306
Harrisburg, PA 17101
Tel. No. (717) 782-2237
Fax No. (717) 782-3881
lori_ulrich@fd.org
*Attorney for Riley June Williams*