```
1              UNITED STATES DISTRICT AND BANKRUPTCY COURTS
                    FOR THE DISTRICT OF COLUMBIA
2

3    UNITED STATES OF AMERICA        Criminal No.  21-CR-00234

4          v.                        Washington, D.C.

5    JOSEPH W. FISCHER,              February 28, 2022

6             Defendant.             1:00 p.m.

7    --------------------------/

8                  TRANSCRIPT OF ORAL ARGUMENT
              BEFORE THE HONORABLE CARL J. NICHOLS
9                 UNITED STATES DISTRICT JUDGE

10   APPEARANCES:

11   For the Government:     United States Attorney's Office
                             By: ALEXIS J. LOEB, ESQUIRE
12                           450 Golden Gate Avenue
                             Eleventh Floor
13                           San Francisco, California 94102

14
     For the Defendant:      Federal Public Defender
15                           By: LORI J. ULRICH, ESQUIRE
                             100 Chestnut Street
16                           Suite 306
                             Harrisburg, Pennsylvania 17101
17
                             Federal Public Defender
18                           By: EUGENE OHM, ESQUIRE
                             625 Indiana Avenue, NW
19                           Suite 550
                             Washington, D.C. 20004
20
     Court Reporter          Lisa K. Bankins RMR FCRR RDR
21                           United States District Court
                             District of Columbia
22                           333 Constitution Avenue, NW
                             Washington, D.C. 20001
23

24

25   Proceedings recorded by mechanical stenography,
     transcript produced by notereading.
```

**EXHIBIT A**

1

```
 1                P R O C E E D I N G S
 2          THE COURTROOM DEPUTY:  Good afternoon, Your Honor.
 3  This is Criminal Case Year 2021-234, United States of America
 4  versus Joseph W. Fischer.  Counsel, please come forward and
 5  introduce yourselves for the record, beginning with the
 6  government.
 7          THE COURT:  Let me just note that as it pertains to
 8  masks in the courtroom, my view is that whoever is at the
 9  podium should feel free to take his or her mask off.  I would
10  ask everyone else in the courtroom to stay masked.  Otherwise
11  but if you're at the podium, I found that it helps me hear, it
12  helps the court reporter hear, it helps opposing counsel hear
13  if you take off your mask.
14          MS. LOEB:  Good afternoon, Your Honor.  Alexis Loeb
15  for the United States.  With me is my colleague, James Pearce.
16          THE COURT:  Counsel.
17          MS. ULRICH:  Good afternoon, Your Honor.  Lori
18  Ulrich for Joe Fischer, along with my co-counsel, Eugene Ohm.
19          THE COURT:  Counsel.
20          So we're here principally on Mr. Fischer's motion to
21  dismiss Counts One, Three, Four and Five of the superseding
22  indictment.  I think we need to arraign Mr. Fischer first on
23  the superseding indictment.  Correct?  Why don't we do that
24  first and then we'll proceed to the motion?
25          THE COURTROOM DEPUTY:  Ms. Ulrich, please come
```

1    forward.  May the record reflect that defendant, Joseph W.

2    Fischer, and counsel have received a copy of the superseding

3    indictment.  Do you wish to waive the formal reading of the

4    seven-count superseding indictment and enter a plea?

5              MS. ULRICH:  Yes.

6              THE COURTROOM DEPUTY:  And how do you all wish to

7    plead?

8              MS. ULRICH:  Not guilty.

9              THE COURT:  Thank you, counsel.  You might as well

10   stay at the podium.  It's your motion.  I'd like to treat this

11   as a, what would be your typical oral argument.  Hear from

12   defense counsel on the motion, hear from the government and

13   then I'll give the defense time for a brief rebuttal at the

14   end.

15             So I'm happy to hear from you on all the issues.

16   I'll have questions -- I think -- let me just say a few

17   things.  The two issues that are most interesting or I think

18   difficult for me are, one, whether it can be said that Vice

19   President Pence was temporarily visiting the Capitol or

20   whatever location we are describing here because I think

21   that's -- we need to define what the location is that he's

22   temporarily visiting, but whether he could be said to be

23   temporarily visiting in light of his status as president of

24   the Senate and the fact that his role at the time at least in

25   part was as president in the Senate.  So that's one issue.

1      And the second issue is as to 1512(C)(2) isn't

2  really whether -- I mean I'll hear you on this question, but

3  is not really whether the proceedings in Congress were an

4  official proceeding.  Obviously, all of my colleagues to

5  address that issue have found that they were.  But is really

6  trying to figure out what work (C)(1) and (C)(2) are doing

7  together, how they can be read correctly together.  And in

8  your view, what if anything (C)(2) covers that is not covered

9  by (C)(1) on your reading.  So again I'm happy to hear from

10  you on all issues, but those are the two things in particular

11  that I will want to focus on at some point.

12      MS. ULRICH:  Okay.  I was kind of focusing on them

13  myself, more so the official proceeding even though I know

14  there are now ten opinions rejecting my argument.  So I will

15  start -- I'll start with our position on Counts I think it's

16  Four and Five and whether or not the vice president could be

17  temporarily visiting the Capitol.  So if the Court's okay,

18  I'll start with that.

19      I think it's -- the reading of the statute is plain.

20  It's our understanding the vice president has an office at the

21  White House.  He has an office at the Capitol.  He was

22  presiding over the Senate and the count that day in the House.

23  And therefore, our position is he could not be temporarily

24  visiting his office --

25      THE COURT:  He doesn't -- I don't think it's really

1    disputed or at least the facts could show that he did not

2    regularly visit that office or work out of that office and in

3    any event, that office is on as I understand it the Senate

4    side and at least for part of the certification, he was

5    supposed to be on the House side.  Correct?

6         MS. ULRICH:  Yes.  The certification was in the

7    House.  But the Capitol is -- I wouldn't break down like this

8    courthouse into separate offices or separate floors.  I mean

9    it is one building.  And when you come to the federal

10   building, you're coming to your office.  And I don't believe

11   when I go to my office even though there's a lot of different

12   agencies there, I'm not temporarily visiting and even if I go

13   in on a Saturday, am I temporarily visiting my office?  I

14   think temporarily visiting is clear.  It's plain.  And it is

15   our position that the vice president does not temporarily

16   visit the Capitol and we're looking at it as one building, the

17   Capitol, where he had an office and he presides over the

18   Senate.

19        THE COURT:  What about Vice President Pence's family

20   members who are with him?

21        MS. ULRICH:  Well, that would be a harder argument.

22   That's not in the indictment and I know in some of my other

23   cases, the government threw that in there.  But it's not --

24        THE COURT:  The government notes that in the briefs

25   here.  But if hypothetically speaking, I thought that the vice

1    president could not temporarily visit the Capitol on

2    January 6th in the context that we're talking about and if I

3    thought that his family members could, is there enough in the

4    record before me to deny your motion as to that count or those

5    counts?

6            MS. ULRICH:  No.  Because I certainly -- it's

7    certainly not a fact that the government -- it's nothing that

8    the government established factually or have alleged.  I'm

9    fairly certain that's not in the indictment.  And it's

10   certainly not anything they've established factually.  But our

11   position is really based on the --

12           THE COURT:  Well, they wouldn't have to establish it

13   factually now.  That would be for trial just as Vice President

14   Pence's presence would be an issue that they would have to

15   prove, assuming it wasn't stipulated to.  But for purposes of

16   a motion to dismiss the indictment, do they have to have in

17   the indictment each name of each person who was temporarily

18   visiting in the sense used by the statute?

19           MS. ULRICH:  It's our position that the answer to

20   that question is yes I mean because we're here defending

21   whether the vice president could temporarily be visiting.  He

22   had an office there.  I mean I don't disagree it is a harder

23   argument for us if they allege that his family was there.

24   That would be a harder argument under the statute --

25           THE COURT:  Would you make that argument?

1          MS. ULRICH:  That's a good question.  Would I make

2     it?  I don't know that I would make that argument.

3          THE COURT:  I know you have other arguments about

4     what the statute covers.  I'm just talking about the specific

5     question of the vice president's temporary visit and if we're

6     talking about someone who isn't the president of the Senate,

7     who doesn't have a statutory and constitutional role in the

8     proceedings that are going on, for example, his wife or a

9     child, it seems to me that those arguments about the vice

10    president would not apply and you'd basically agree with that?

11         MS. ULRICH:  Yes.  I do.

12         THE COURT:  Yeah.  All right.  Do you want to

13    address the other arguments about that statute and whether,

14    for example, the Secret Service is the entity that has to

15    create the perimeter and the like?

16         MS. ULRICH:  No.  We're actually -- I'm glad you

17    brought that up.  We're not -- we are withdrawing that.  We're

18    not pursuing that argument that the Secret Service has to be

19    the one doing the cordoning off.

20         THE COURT:  So is the only argument about those two

21    counts then about Vice President Pence's status that day?

22         MS. ULRICH:  Yes.

23         THE COURT:  Got it.  Okay.  And then so if we are

24    talking about somebody other than Vice President Pence, that

25    motion would be very likely withdrawn or not filed?

1               MS. ULRICH: Yes. Yes.

2               THE COURT: Okay.

3               MS. ULRICH: Okay.

4               THE COURT: All right. So I'm going to go on to the

5 other arguments then.

6               MS. ULRICH: So on the official proceeding and I

7 didn't bring the (C)(1) statute. I can't phone a friend.

8               THE COURT: I know it pretty well at this point.

9               MS. ULRICH: So I mean obviously, we're here under

10 (C)(2) --

11               THE COURT: It looks like you may have a friend.

12               MS. ULRICH: What's that? Oh, that would be

13 awesome.

14               THE COURT: So I understand the arguments here quite

15 well. I have before me in another matter, the United States

16 versus Miller, similar arguments presented slightly

17 differently. So I understand the arguments pretty well.

18           What I'm trying to understand is in your -- the way

19 you interpret the statute, what if anything would 1512(C)(2)

20 cover that isn't covered by (C)(1)?

21               MS. ULRICH: I do believe like the January 6

22 Commission right now would be covered by (C)(2). That you

23 said that -- wait. Did you say that would be covered by

24 (C)(1) and not (C)(2)?

25               THE COURT: That would be covered by (C)(2), but not

**EXHIBIT A**

8

```
 1    (C)(1).  So it seems to me that (C)(2) should in a correct
 2    interpretation of the statute apply to some conduct that is
 3    not covered by (C)(1).  I mean we can talk about how much
 4    more, but there really shouldn't be a debate in my view about
 5    that question.  And so my question is in your view, what would
 6    (C)(2) cover that is not covered by (C)(1)?
 7              MS. ULRICH:  Okay.  So for instance, in this
 8    January 6 Commission, I think that could conceivably be an
 9    official proceeding because the commission is they are
10    subpoenaing records, they are subpoenaing individuals.  If
11    those individuals go in there and they lie, I think that the
12    government would have a good argument under (C)(2) that that
13    is in fact an official proceeding because now you've got
14    adverse parties that are being directed to appear that
15    presumably they are going to be under oath and presumably if
16    they present or give them false documents, even (C)(1) would
17    apply in that instance and that would be an official
18    proceeding.  So and our position, that's what we think would
19    cover on January 6 Commission.
20              THE COURT:  So assume the January 6 Commission is an
21    official proceeding.  If a defendant or if somebody stormed in
22    and did something, maybe called in a bomb threat to prevent
23    the day from happening, the committee hearing day or stormed
24    in with the intent of disrupting or stopping it, would that be
25    sufficient in your view?
```

```
 1              MS. ULRICH:  Well, I don't -- I can't say even that
 2     under those facts.  When I look at this statute, this statute
 3     is to protect witnesses, it's to protect informants, the
 4     integrity of proceedings.  So when I look at this, I look at
 5     it more as like somebody that was going to go in front of
 6     Congress and lie or they're going to present some false
 7     documents because (C)(2) was enacted -- that was really under
 8     the Sarbanes Oxley Act of 2002 and it was really meant to
 9     address corporate fraud and so I don't know.  I'd have to
10     think that one through.  But someone storming the Capitol, I
11     think there's other offenses that apply there.
12              THE COURT:  But that's true also of lying under
13     oath.
14              MS. ULRICH:  Well, I do think this would -- but
15     lying under oath is captured here because that would be
16     obstructing in a January 6 Commission example.  Lying under
17     oath is certainly I think something that -- you know, and then
18     you have to look at the word "corruptly."  That would
19     obstruct, influence, impede official proceeding or give them a
20     false document.  When I think of 1512, that's how I think of
21     it in that context.  That it's really not like storming into
22     some place to stop something from happening.  It's more like
23     we had the Poindexter case where he lied to Congress or, you
24     know, people that have presented false documents.  That's kind
25     of what I think 1512, witnesses, victims, informants, jurors,
```

**EXHIBIT A**

1    grand jurors.  When I look at 1512, I feel that is what --

2    that's the purpose of 1512 and I think that was the idea when

3    it was enacted in 1982.  And then in 2002, they added this

4    section which is what we're here for and that was really for

5    the corporate fraud issues.

6              THE COURT:  Right.  But what I'm struggling with

7    even with respect to your position is that there are already

8    statutes that govern perjury and lying to official bodies,

9    whether it's Congress or in a court proceeding or can't make

10   false statements to the government.

11             MS. ULRICH:  That's right.

12             THE COURT:  Why would we think that Congress added

13   1512(C)(2) to do that here?

14             MS. ULRICH:  Well, when I look at that, the thing is

15   is and I know that we have the 1505 that was certainly the

16   statute in Poindexter and after that, they amended the

17   definition of corruptly to include, you know, if you

18   personally lie or you get someone else to lie.  But when

19   they -- the thing is when they added that -- the definition of

20   official proceeding, that was there I think from the get-go in

21   1982.  So when they added 1512 (C)(2), they didn't go back and

22   re-look at what an official proceeding is a proceeding before

23   Congress.  They were looking at corporate fraud and

24   corporations that are presenting false documents.  So the

25   definition of official proceeding was already there and it

1     included a proceeding before Congress.

2            But when I look at the cases and not the ten against

3     me that have rejected it here, but there's a few other cases

4     that like kind of go around the edges.  One is United States

5     versus Guertin and that's a D.C. case by Judge McFadden here,

6     but it's not a rioter case.  It was a case in which they went

7     in under the other prong of official proceeding and it was the

8     federal regulatory agency.  And Judge McFadden noted that in

9     this case a gentleman had filled out his security clearance

10    falsely and the government prosecuted him under 1512 and they

11    said that can't be an official proceeding.  And they look at a

12    formal tribunal or adjudicative body before which persons are

13    compelled to appear.  Again it's not directly on point.  But

14    it goes back to the purpose of 1512 and that is, you know,

15    we're here to protect the integrity of the proceedings.  We

16    don't want people lying before Congress.  We don't want people

17    lying before a court or a tribunal.  We don't want them giving

18    us false documents.  That was the purpose of 1512.

19            And then we have I think it was the Ramos case that

20    we cited in our brief again.  It's a Fifth Circuit case.

21    Obviously, this court is not bound.  But they noted the

22    statute was to protect the necessary role of crime victims and

23    witnesses in the criminal justice process.

24            And then the one opinion that I was struck by the

25    ten that reject my argument was Judge Bates in the McHugh

1    opinion here in D.C. and he went one step further and said

2    that okay, but it has to involve -- we agree it has to be

3    formal and but and we agree it has to be multiple entities and

4    then Judge Bates said the multiple entity is the electors even

5    though the electors weren't there on January 6th.  So while,

6    you know, he went that one step further than the other

7    opinions, he also recognized that it has to be a little bit

8    more formal and there has to be two parties.

9            And our position, of course, is the January 6th

10   certification of the electoral college was really nothing more

11   than ceremonial or ministerial, if you will.  It is our

12   position that there was nothing Congress could do to overturn

13   that election.  The state had litigated all of the issues.  It

14   was over and all they could do was certify.  And even in the

15   indictment itself, it says the certification of the electoral

16   college and certification implies that that's all it is.  They

17   are attesting to something.  It's just a certification.  So I

18   hope I answered the Court's questions on this.  So for those

19   reasons, it is our position that the certification --

20           THE COURT:  Do you have a view of what corruptly

21   means in this context or is your view more that it is

22   sufficiently vague or overbroad or I mean I guess it's the

23   whole statute is sufficiently infirm that it's not -- you

24   don't have to define it.  You just have to know that it's

25   difficult to define.

**EXHIBIT A**

13

1          MS. ULRICH:  It is difficult to define and that's
2     what Poindexter found and I know all the other opinions have
3     said Poindexter is in and of itself it doesn't apply here,
4     it's been limited.  But when I looked -- I re-looked at
5     Poindexter again, like the whole first part of the argument
6     was the word "corrupt" is vague.  End of story.  But then they
7     went into the legislative history and then they came up with
8     this whole other aspect that, well, he didn't personally lie
9     to Congress so it's unclear to us what corrupt is.  So we're
10    going to reverse the conviction.  And then they amended the
11    definition for 1505, but not for anything else in 1512.  So it
12    is our position that even though the courts here have all
13    rejected is that, you know, corrupt is a vague word in the
14    criminal context.  It's vague.
15          THE COURT:  Okay.  Let's talk about your first --
16    well, I guess one of your arguments, the Count One argument.
17          MS. ULRICH:  Yes.  Count One, the civil disorder.
18    So I don't have a lot to say about that.  I was really more
19    just relying on my briefs.  If you have specific questions on
20    that?
21          THE COURT:  I mean why is it unclear that this was a
22    civil disorder?  It seems pretty clear to me.
23          MS. ULRICH:  Well, you know, I just think it's --
24          THE COURT:  Specifically, where is the mishmash or a
25    lack of clarity as between the statute and what happened on

1    January 6th?

2              MS. ULRICH:  I think that the language that and it's

3    not all that different than corrupt, it's any act to obstruct,

4    impede or interfere.  That I think is to me the most troubling

5    language.  Again, it kind of ranks up there with corrupt.  I

6    know it's an act.  And so I know the government's position is

7    that it's not speech.  But we do think that it is vague, any

8    act to obstruct because people and again not really going to

9    the facts because we're not, you know, making --

10             THE COURT:  But this is much more specific.  It's an

11   act to obstruct, impede or interfere with any fireman or law

12   enforcement officer.  It's very specific about the person.

13   That it's prohibiting the interference, obstruction or

14   impeding as it relates to.  And then lawfully engaged in the

15   lawful performance of his official duties.  So you have to

16   have a fireman or a law enforcement officer acting in the

17   scope of his or her official duties incident to and during the

18   commission of a civil disorder.  So you have to also have a

19   civil disorder.  Is it your view that this was not a civil

20   disorder?

21             MS. ULRICH:  Well, I think the point is what if I'm

22   there on January 6th and the sheer numbers are an obstruction?

23   I think there's like thousands of people there and that is

24   certainly obstructing the law enforcement and firemen were

25   there.  But what if -- when I look at that, am I -- it doesn't

1    say I'm acting with an intent to obstruct --

2           THE COURT:  So there may be some applications of

3    this statute in context of January 6th that might be at the

4    periphery of whether we are certain or not that it's within

5    the statute.  But why isn't what's alleged to have happened

6    here sufficient?

7           MS. ULRICH:  Because it says any act to obstruct,

8    impede or interfere and that's pretty much as far as it goes

9    in Count One.  I could be there committing, you know,

10   committing what could be perceived as an act to obstruct

11   because I'm present with a thousand people that, you know,

12   half of which are there to interfere with this vote.  And me,

13   that's not my purpose.  I don't have an intent to obstruct.

14   But my mere presence there, my being in this crowd is

15   obstruction.  It's obstructing.  And this statute does not

16   charge -- is not charging -- the statute itself doesn't say

17   with the intent to obstruct.

18          THE COURT:  Right.  So let me put it a little

19   differently.  The indictment here in your view I take it on

20   its face does not distinguish Mr. Fischer's conduct from

21   others who might have merely been milling about or something

22   like that, even though we know or at least the government has

23   put forward some information to suggest that he's more than

24   that.  But the indictment at least on its face doesn't

25   distinguish between and among people who acted differently.

1          MS. ULRICH:  It does not.  But our challenge, of
2     course, is to the vagueness of the statute itself and we're
3     not --
4          THE COURT:  But if Mr. Fischer's conduct was plainly
5     at the core of what everyone would understand the statute to
6     apply to, you can't bring a vagueness challenge then.
7          MS. ULRICH:  Well, we're not making a vagueness as
8     applied.  We're saying the statute is vague because it doesn't
9     have this intent element.  So it really it doesn't -- you
10    know, I'm not really getting into his actions.  I do think
11    that's something we would certainly argue if Your Honor goes
12    against us.  We would be arguing to the jury during trial.
13    His actions then are certainly relevant.  But for the legal
14    argument today, that's our position.
15         THE COURT:  Thank you, counsel.  Why don't I hear
16    from the government?  As I said, unless there is anything
17    you'd like to say now, I will give you time for rebuttal.
18         MS. ULRICH:  No, Your Honor.  Thank you.
19         THE COURT:  Thank you.
20         Ms. Loeb, I'm happy to hear from you in any order
21    that you'd like to take things.  Obviously, I have some
22    questions about specific things I'm thinking about.  But I
23    don't want to preempt your doing the argument in any order
24    you'd like.
25         MS. LOEB:  Thank you, Your Honor.  I thought I would

1    focus on responding to the points you discussed with defense

2    counsel.  So starting with the issue of temporarily

3    visiting --

4            THE COURT:  Yes.

5            MS. LOEB:  -- I think Your Honor was correct to zone

6    in on the issue with the vice president's family members.  And

7    one point I want to add which we did make in our brief is that

8    it would be pretty absurd for the statute to leave the public

9    official himself unprotected while protecting the family

10   members and --

11           THE COURT:  I saw that point.  It's not that he

12   would be unprotected.  It would be that this one particular

13   criminal statute might not apply because of the unique nature

14   of the vice president in our constitutional structure, he may

15   have actually not been temporarily visiting this one

16   particular location.  It could be a very sui, sui, sui generis

17   situation.  It wouldn't distinguish between the vice president

18   and his family anywhere else in the world.  It would be only

19   one place in Congress where he has this very, very unique

20   role.

21           MS. LOEB:  Yes.  But the point of the statute is to

22   deter people from entering these areas around the public

23   officials.  And so even if, yes, the Secret Service, of

24   course, could still protect him, it would be strange to -- it

25   would be strange for there to be a hole in the statute that

1 it's designed to deter people from approaching the area where

2 he is.

3    THE COURT:  Is it your view that if Vice President

4 Pence or Vice President Harris now went up to the Senate,

5 worked in his or now her office, awaiting a vote that he or

6 she might have had to break the tie of, that Vice President

7 Harris, for example, now would be temporarily visiting the

8 Senate?

9    MS. LOEB:  The Senate chamber.  Yes.

10    THE COURT:  Or her office in the Senate.

11    MS. LOEB:  Yes.  Yes.  Our position --

12    THE COURT:  And that's just because she -- the facts

13 would show don't go there -- she doesn't go there very often?

14    MS. LOEB:  It's because the definition of

15 temporarily visiting means visiting a place for a limited time

16 for a particular purpose essentially.  So our position is that

17 one can temporarily visit the office.

18    Of course, here as you noted and as Judge Bates

19 found, this isn't the vice president's regular office.  And on

20 January 6th, he was, for example, in the house chamber and in

21 many other locations that --

22    THE COURT:  Was I temporarily visiting my chambers

23 if I was coming in irregularly during COVID?

24    MS. LOEB:  Yes.

25    THE COURT:  I was temporarily visiting my own

1    chambers?

2          MS. LOEB:  Your own chambers?  Yes.  During the --

3    yes.  You were visiting --

4          THE COURT:  And when did my visits start to become

5    not temporary visits?  When I came in every week?

6          MS. LOEB:  Our view is that you're always

7    temporarily visiting your chambers because you're going

8    there -- each time you're going there, you're going there for

9    a limited time for a limited purpose --

10          THE COURT:  So the vice president is temporarily

11    visiting the White House every day?

12          MS. LOEB:  No.  Your Honor, the White House is

13    carved out --

14          THE COURT:  I know.  But that's -- I'm just trying

15    to understand what temporary visit means.  The vice president

16    lives at the vice presidential residence.  Goes to work at

17    least some days at the White House.  I understand it's carved

18    out in the sense that it's covered otherwise.  I'm trying to

19    understand what temporary visit means in your view.  Your view

20    is even if the vice president went to work in the West Wing

21    every single day or wherever the vice president's office is

22    there, I don't even know, that would be a temporary visit?

23          MS. LOEB:  Yes.  Because he's going there again for

24    a particular purpose for a limited amount of time and I think

25    that --

**EXHIBIT A**

1           THE COURT:  So you are temporarily visiting your

2 office at D.O.J. every day?

3           MS. LOEB:  As many hours as I may spend there right

4 now, yes.

5           THE COURT:  Yes.  I know it probably seems like a

6 lot.  So what that means is that I am a temporary visitor to

7 my chambers here.

8           MS. LOEB:  That you temporarily visit it.  Yes.

9           THE COURT:  Every day?

10           MS. LOEB:  Yes.  And, Your Honor, I think that if

11 you were to create -- if there were a different definition of

12 temporarily visiting, it would create very difficult line

13 drawing --

14           THE COURT:  Am I a temporary visitor to my house?

15           MS. LOEB:  No.

16           THE COURT:  Why?  I spend almost as much time in

17 chambers as my home when I'm working regular hours.

18           MS. LOEB:  Because that is your permanent residence.

19 That's the place you live.

20           THE COURT:  So other than a permanent residence, I'm

21 temporarily visiting every single other place in the world, no

22 matter how frequent and no matter for how long.  If I work 365

23 days a year in this courthouse, would I be temporarily

24 visiting every time I came?

25           MS. LOEB:  Yes.  Yes, Your Honor.  You would be.  I

**EXHIBIT A**

1    think there could be as I think Judge Bates noted, there could

2    be a -- there could be at some point an upper balance, a

3    temporal limit if you go --

4        THE COURT:  But that means just --

5        MS. LOEB:  If you go there somewhere for several

6    years, for example.  At some point you're not temporarily

7    visiting it --

8        THE COURT:  That means that just to use a different

9    example that is about January 6th or I guess about Congress

10   generally, that means that every single day of the year that

11   they go there, Nancy Pelosi and Leader McConnell, Senator

12   McConnell are temporarily visiting the Capitol --

13       MS. LOEB:  Yes.

14       THE COURT:  -- as is every other member of Congress.

15       MS. LOEB:  Yes.  They're going there for a limited

16   purpose for a limited duration.  They're not living there.

17       THE COURT:  So let's go back just to the Pence

18   family for a second.  So I think we just heard the defense

19   counsel essentially say that -- I'm not going to put any words

20   in her mouth -- but very much weaker or different argument if

21   we're talking about somebody who is not the vice president.

22   The vice president's family clearly has no constitutional role

23   as it relates to the Senate and the like.  Is there enough in

24   the government's view before me to deny the motion on the

25   ground that even if I thought the vice president wasn't

1    temporarily visiting the Capitol that day, his family members

2    clearly were?

3              MS. LOEB:  Yes, Your Honor.  That's because the

4    indictment is a notice pleading.  We don't need to specify

5    every single Secret Service protectee who is there inside the

6    Capitol.  That's the type of information, although it's

7    available in the discovery, but that's the type of information

8    that could be sought through a bill of particulars, for

9    example, if the defendant wanted specificity.  But we're not

10   required as a matter of law to allege the name of every Secret

11   Service protectee in the indictment.

12             THE COURT:  You did hear mentioned one.  Does

13   that -- so in other words, my recollection is the indictment

14   says Vice President Pence.  It doesn't say just protectees.

15   Is that relevant here in the sense that it's notice pleading,

16   but the notice suggests we're talking about Vice President

17   Pence and only Vice President Pence?

18             MS. LOEB:  I don't think so because it doesn't say

19   only Vice President Pence.  I think it does give some

20   additional notice as to Vice President Pence.  But I don't

21   think it forecloses the government from relying on other

22   Secret Service protectees.

23             THE COURT:  Imagine hypothetically I thought that

24   the vice president couldn't temporarily visit at least on that

25   day the Capitol, that his family members clearly could, but

**EXHIBIT A**                                              23

1    that the indictment needed to say something different.  Well,

2    a couple of things.  One is can I rely on non-indictment facts

3    for purposes of a motion to dismiss the indictment like the

4    complaint or the facts around detention questions?

5              MS. LOEB:  Your Honor, I know that some other courts

6    in this district have.  I believe the D.C. Circuit's decision

7    in the Yakou case suggests that the Court is limited to the

8    indictment and if there's a set of undisputed facts of which I

9    don't believe we have before the Court.  So I do think the

10   better course is to be limited to that, to the indictment

11   here.

12             THE COURT:  Right.  These are true hypotheticals.

13   If I believed all those things, would the government then have

14   to go back to the grand jury and get another superseding

15   indictment?

16             MS. LOEB:  I don't believe so, Your Honor.  I think

17   at trial, we just would not rely on the vice president's

18   presence as --

19             THE COURT:  No.  I'm saying in my view if I say the

20   indictment is lacking or either because it needs to name

21   someone else or it needs to not name the person who I think

22   doesn't qualify.  It needs to either include additional names

23   or it needs to not specify the person who I think raises this

24   potential issue.  In other words, to amend the indictment in

25   any way, you have to go back to the grand jury.  Correct?

```
 1              MS. LOEB:  I believe in this case, we would need to.
 2    I know there are certain circumstances where we can file a
 3    motion to strike.  But and it would depend on what were the
 4    facts that were introduced before the grand jury.  So I mean I
 5    would need to go back and look to --
 6              THE COURT:  Fair enough.  I understand.
 7              MS. LOEB:  -- give Your Honor a better answer.
 8              I would also push back against the idea that because
 9    the vice president had an office somewhere in the Capitol,
10    that anywhere on the Capitol grounds or maybe in the House
11    office building or the Senate building, none of that can be
12    restricted just because there's an office somewhere in that
13    area even if the vice president didn't even go in that office
14    on a particular day.
15              And I also just want to emphasize again that the
16    statute is drafted broadly and is supposed to provide broad
17    coverage for the Secret Service protectees.  So again I don't
18    think it would make sense here to read this kind of office
19    carve-out which would create difficult line drawing in terms
20    of when -- at what point someone has temporarily visited and
21    also create these distinctions between the family and the
22    public official for which there is not a good reason.
23              THE COURT:  To be clear, I understand that.  I don't
24    think that this creates like a massive distinction between the
25    public official and the family or between the vice president
```

**EXHIBIT A**

25

1    and his public official and family.  It would be one and one
2    location only where the vice president it is argued by the
3    defendant has a particular office and a particular
4    constitutional role.

5         I get that your view is office is irrelevant because
6    every person in the world is essentially temporarily visiting
7    his or her office.  But again assuming that I don't agree with
8    that, then it's just a question of whether the vice
9    president's office there is enough.  And I get that for all
10   the reasons you've discussed, you don't agree with that.  But
11   it's not as if such a holding would all of a sudden say that
12   the Secret Service is sort of disabled from protecting the
13   vice president vis-a-vis his or her children.  Generally,
14   that's no.  It's only in Congress and it's not even about
15   protection.  It's just whether this criminal prohibition would
16   necessarily kick in.  And only when there's a perimeter or the
17   kind of steps that have been taken that are -- that trigger
18   the protection of the statute.

19        MS. LOEB:  I would resist the idea that it would
20   create just this one narrow exception because the vice
21   president has other offices, too.  You mentioned the vice
22   president's office in the White House which I know we have
23   another part of the statute.  There are other offices in Camp
24   David.  The vice president may have an office in California.
25   There may be many offices or work spaces set aside for public

1    officials and --

2            THE COURT:  Right.  But there, the -- I would be --

3    to the extent that I was saying that the person is maybe not

4    temporarily visiting, that's -- I guess your point is that --

5    I understand the point.  If, for example, Vice President

6    Harris' husband went with her to Camp David and I were to say

7    hypothetically, she is not temporarily visiting Camp David

8    because she has an office there, but her husband would be and

9    it would be anomalous in your view to have a distinction

10   between them when they are at a place that the vice president

11   has an office and that would be true equally of the president.

12           MS. LOEB:  And even if the Secret Service could

13   still protect them, one of the tools to protect them are

14   criminal prohibitions against trespassing such as this one.

15   And it would be removing that tool.

16           THE COURT:  Right.  I understand.  Okay.  Thank you.

17           MS. LOEB:  I think if Your Honor has no further

18   questions about 1752, we'll move on to 1512.

19           THE COURT:  Yes, please.

20           MS. LOEB:  So starting with the official proceeding

21   point, I think defense counsel is arguing that there needs to

22   be an adjudicative purpose of a proceeding for it to qualify

23   as an official proceeding.  As several of Your Honor's

24   colleagues have found, that is drawn from cases that are not

25   talking about needing of a proceeding before Congress.  And it

**EXHIBIT A**

1    really makes very little sense to impose this adjudicative

2    requirement on congressional proceedings because that is very

3    little of what Congress does.  Aside from an impeachment

4    proceeding, there may be one other example of that.  And

5    that's certainly true of the Ramos case which defense counsel

6    cited again, but it's not talking about a proceeding before

7    the Congress.

8            The plain text of official proceeding, I mean I

9    think it means what it says.  There's nothing in there about

10   an adjudicative requirement.  As Judge Mehta noted, had

11   Congress wanted to limit this proceeding to investigations or

12   inquiries, Congress had ready-made models there at least in

13   Section 1505.

14           And there's just no basis in the text to provide --

15   even though to limit it to an adjudicative proceeding even

16   if -- even the legal definition of the term proceeding refers

17   to the business conducted by an official body.  It doesn't

18   have any kind of adjudicative limitation.  And I think even

19   defense counsel's hypothetical about the January 6th

20   Commission wouldn't necessarily even qualify as adjudicative

21   because the people who are subpoenaed to appear are not

22   parties to a dispute the way that a party -- you would have

23   parties to an agency proceeding.  So I think it would be kind

24   of a bizarre narrow carve-out that's without basis in the

25   text.

**EXHIBIT A**

28

1       Defense counsel also mentioned Judge McFadden's

2   opinion in Guertin which Judge Kollar-Kotelly distinguished in

3   the Grider case and is another example of what a proceeding

4   might be in a different context that is not a proceeding

5   before the Congress.

6       Defense counsel also dismissed the certification as

7   ministerial or ceremonial.  That's another argument that has

8   been rejected because there are objections made and Congress

9   needs to -- when there are objections, Congress breaks into

10  their separate houses to deliberate and they are not adjourned

11  until then.  They make a decision about those objections and

12  certify the proceedings.  So it's not purely ministerial or

13  ceremonial.  Although our view is not that objections are

14  required to make something an official proceeding, of course.

15      THE COURT:  So let's assume it's an official

16  proceeding.  Do you agree with Judge Friedrich that corruptly

17  requires an otherwise unlawful act, which is how I read her

18  opinion?

19      MS. LOEB:  Yes.  I think corruptly -- and this is

20  from I believe Judge Silverman in North that it can be an

21  unlawful --

22      THE COURT:  It could be unlawful --

23      MS. LOEB:  It could be unlawful --

24      THE COURT:  It could be corrupt purpose or corrupt

25  means or both, something like that.

**EXHIBIT A**

1          MS. LOEB:  Yes.  Although in the Reffitt case, I

2    believe we have also defined it to include improper means.

3    Let me just confirm that.

4          THE COURT:  I read Judge Friedrich to have said --

5    now, you know, I realize that this also can come up at jury

6    instruction time -- but that to make sure there aren't

7    constitutional concerns about the statute that corruptly

8    should be defined to require an otherwise unlawful act, an act

9    that is independently unlawful.  Does the government agree

10   with that view?

11         MS. LOEB:  Well, I think -- I just don't want to

12   foreclose the improper -- I think we believe you need unlawful

13   means or an improper purpose or both.  Although for this case,

14   the indictment alone alleges independently unlawful acts.

15         THE COURT:  Yeah.  The reason I ask is because as

16   I've parsed this, I don't understand how a requirement of

17   unlawful means would work with (C)(1).  You know, it seemed to

18   me that (C)(1) is designed to create illegality by its terms

19   and it would be weird to me to say whoever acting through

20   otherwise unlawful acts or means alters, destroys, mutilates

21   or conceals a record.  It's designed to create an illegality

22   for the conduct covered by (C)(1).

23         MS. LOEB:  Well, I think corruptly does do some

24   additional work there in that, for example, you could conceal

25   a document because it's covered by attorney/client privilege

1    and I don't think that should qualify as corrupt.

2            THE COURT:  But that's a bad purpose.  Right?  That

3    would say that's not an improper purpose --

4            MS. LOEB:  Right.  Right.

5            THE COURT:  -- if you withhold a document because

6    it's covered by privilege.  I'm talking about an

7    interpretation of corruptly that requires, not permits, but

8    requires you to act corruptly through otherwise unlawful

9    act --

10           MS. LOEB:  Right.

11           THE COURT:  -- which is how I read her opinion.

12           MS. LOEB:  Right.  So although -- I mean she is also

13   the judge in the Reffitt case and so has approved -- well, I'm

14   not sure if those instructions -- the jury hasn't been

15   instructed, but the --

16           THE COURT:  It's going on right now.

17           MS. LOEB:  Right.  Right.  The jury selection.  So

18   but I think that's a reason why we need not just unlawful

19   means but the improper purpose because there may not always be

20   kind of an independently unlawful act that is part of the

21   obstruction.  But as the Supreme Court defined corruptly in

22   Arthur Andersen to require this consciousness of wrong doing,

23   it didn't limit the definition there to illegality.  So I

24   think wrongfulness is slightly broader than purely as an

25   independently unlawful means.  Although that's certainly the

**EXHIBIT A**

1    core conduct and that is -- I think that that clearly

2    establishes that 1512 is not vague as applied to this

3    defendant.  And if it's not vague as applied to him, then he

4    can't bring -- he can't challenge the statute as vague.

5            THE COURT:  Right.  So I think my -- and I've --

6    this came up in the Miller case.  Why isn't at least a reading

7    of (C)(1) and (2) -- that (C)(2) is essentially a residual

8    clause for (1)?  Why isn't that a -- as good a reading as

9    suggesting that it basically creates this untethered to (C)(1)

10   criminal prohibition?

11           MS. LOEB:  I think (C)(2) is -- I think that is a

12   good reading of (C)(2).  That it is a residual or a catch-all

13   clause that covers acts that obstruct an official proceeding

14   that are not covered by (C)(1).

15           THE COURT:  Well, but that's not really residual

16   unless it has some -- unless you find its residual nature in

17   (1).  I mean I know Judge Moss said the link is -- Judge Moss

18   says there has to be a link because otherwise serves to

19   link -- the word "otherwise" serves to link (1) and (2).  The

20   link is it has to be about an official proceeding.

21           But in a residual clause, at least my sort of basic

22   thinking about it is that it's designed to say we're talking

23   about conduct that is like the first clause.  We're just

24   making sure that by talking about just, for example, here,

25   altering, destroying, mutilating or concealing a record, that

1    we haven't missed something that's like that.  And so we're

2    going to have a residual clause that ensures we haven't missed

3    something through our use of specific terms.  Why isn't that a

4    reasonable way of thinking about (2)?

5          MS. LOEB:  I don't see why a residual clause or a

6    catch-all clause isn't broader than (C)(1) which is a form

7    of -- which you might also think about as sort of an example

8    of conduct that might violate the prohibition in (C)(2) and

9    Congress is just making it exceptionally clear that the act

10   described in (C)(1) is illegal is the crime of obstruction.

11         THE COURT:  In the government's view, what work, if

12   any, does the word "otherwise" do?

13         MS. LOEB:  Otherwise is --

14         THE COURT:  Is it necessary at all to your view of

15   the statute?

16         MS. LOEB:  I mean I think it means in another manner

17   or differently from (C)(1).  So I think it makes clear that

18   the conduct that violates (C)(2) may be broader and different

19   than that violates (C)(1).  But if the statute simply said

20   "or," I'm just thinking about whether --

21         THE COURT:  It seems to me that the argument about

22   what the statute means or covers isn't really dependent on

23   "otherwise."  In other words, the government's view about

24   what's covered by (C)(2) would be the same if we deleted the

25   word "otherwise."

```
 1            MS. LOEB:  Your Honor, I think that --

 2            THE COURT:  That's not to say that the government's

 3    interpretation is not consistent with the included of

 4    "otherwise."

 5            MS. LOEB:  Yeah.

 6            THE COURT:  It's not clear to me that it is doing

 7    any work there.

 8            MS. LOEB:  I agree.  I mean I'm hesitant to say

 9    there may be something I'm just not thinking of.  But I don't

10    think that otherwise is a very significant term.  I mean it

11    means as I said in another manner or differently.  But I do --

12            THE COURT:  Well, why couldn't that be in another

13    manner or differently?  Just figure out a way that someone

14    else could, for example, do something with respect to records,

15    documents or objects that just happens to not be alteration,

16    destruction, mutilation or concealment.  Falsification or -- I

17    don't know.  Pick another verb that isn't covered by those

18    four terms and then you say, okay, whoever otherwise in

19    another manner basically is trying to obstruct, influence or

20    impede an official proceeding, but is doing it in a way that's

21    different than in (C)(1), but it relates to a document, a

22    record or other object.

23            MS. LOEB:  Um-hum.

24            THE COURT:  Why isn't that at least consistent with

25    the way the government views "otherwise"?
```

**EXHIBIT A**                                                    34

1          MS. LOEB:  I'm sorry.  Could you run --

2          THE COURT:  So it seems to me that (C)(1) is pretty

3     clear.  If you have a record, document or other object --

4          MS. LOEB:  Um-hum.

5          THE COURT:  -- and you alter it, you destroy it, you

6     mutilate it or you conceal it and obviously, of course, you

7     have to act with a particular intent and corruptly and all

8     that stuff, that you're guilty of (C)(1).  And (C)(2) says

9     whoever in another manner, right, that's otherwise, obstructs,

10    influences or impedes any official proceeding.

11         What if in another manner is just whoever -- I'll

12    put it this way.  By doing something that is not captured by

13    those four verbs, but it still has something to do with a

14    record, a document or another object or other record.  So

15    falsifying or -- I don't know.  I could imagine a number of

16    ways in which, one, a person could act with respect to

17    tangible information and evidence that wouldn't fit within the

18    four verbs used in (C)(1) and so (C)(2) is saying, hey, we're

19    going to make sure that we're covering people who do similar

20    stuff with documents, falsifying them or whatever.  But that's

21    what we're talking about here.  (C) is about whether you are

22    acting on documents.

23         MS. LOEB:  Well, I think the verbs in (C)(2) don't

24    really make sense regarding documents except perhaps

25    influences.  Obstruct a document, impede a document.

1          THE COURT:  No, no.  No.  It would say, look,

2   (C)(1), we are worried about people obstructing, influencing

3   or impeding a proceeding through alteration, destruction,

4   mutilation or concealment of a record.  Then (C)(2) says

5   whoever otherwise obstructs because those things in (C)(1) are

6   obstructing, influencing or impeding an official proceeding

7   and (C)(2) says whoever otherwise does that is also guilty.

8   But the otherwise is saying as it relates to operation on a

9   record, document or other object.

10         MS. LOEB:  Well, that would be inconsistent with the

11  many Courts of Appeals that have upheld convictions under

12  1512(C)(2) for conduct that doesn't have anything to do with

13  documents.

14         THE COURT:  Agreed.

15         MS. LOEB:  And then I think also at that point we

16  may also run into an issue with overlap with 1519.  And it

17  just would create and have a gaping loophole especially

18  relating to things like false statements which again has been

19  the basis for many 1512(C)(2) prosecutions.

20         THE COURT:  Why would there be a overlap at all with

21  1519?  I mean 1519 doesn't require an official proceeding.

22         MS. LOEB:  That is correct, Your Honor.  But it does

23  relate to evidence spoliation.

24         THE COURT:  Yes.

25         MS. LOEB:  Right.  So and I think it's just another

**EXHIBIT A**

36

1    indication that when Congress --

2         THE COURT:  Well, wait.  I mean this is actually a

3    pretty good example for one view of maybe of 1512(C).  So 1519

4    says whoever alters, destroys, mutilates or conceals.  Right?

5    That's the same verbs as in (C)(1) of 1512.  Then it says

6    covers up, falsifies or makes a false entry in.  Those verbs

7    are not in 1512(C)(1).  Why isn't it at least a reasonable

8    interpretation of (C)(2) to say that's what Congress was

9    worried about, was making sure that when it picked four verbs

10   in (C)(1), it wasn't sort of failing to cover the waterfront

11   of ways in which people can act on documents.  We have some

12   examples in 1519.

13        MS. LOEB:  Those examples show that Congress knows

14   exactly how to draft a statute that relates to those kinds of

15   impairments.  And it chose not to do that here.  And it's

16   especially true when you consider that I believe 1519 was one

17   of the original core provisions of Sarbanes Oxley.  1512(C)(2)

18   was added shortly thereafter.  So I mean if Congress just

19   wanted to copy over those list of terms for 1519, Congress

20   could have done that and it didn't.

21        And there is -- I don't think the Court needs to or

22   should resort to legislative history here and the legislative

23   history of 1512(C)(2) is very limited.  But the little bit we

24   do have doesn't indicate that what Your Honor suggested is the

25   purpose of 1512(C)(2) --

1          THE COURT:  But is there any suggestion in the

2     legislative history that Congress was intending to create a

3     20-year criminal statute for just general obstruction,

4     influence or impeding the official proceedings without any

5     worry about the core of Sarbanes Oxley issues which was

6     document destruction?

7          MS. LOEB:  I mean I don't think the legislative

8     history goes to that level of detail.  But I believe

9     1512(C)(2) was originally proposed with -- at the time that

10    the penalty was ten years.  I know that one of Your Honor's

11    colleague's opinions has gone through the penalties.  I can't

12    recall if it was Judge Mehta or perhaps Judge Moss.

13         THE COURT:  Or maybe both.

14         MS. LOEB:  But I know they have addressed that --

15         THE COURT:  But is there anything -- so everyone

16    agrees that the core of this provision was to deal with one or

17    two related problems.  One is document destruction and the

18    other is as I understand it was the concern that the earlier

19    versions of the statute prohibited the influencing of someone

20    else as it related to document destruction, but not sort of

21    primary liability on the document destructor, him or herself.

22         Is there anything in the legislative history to

23    suggest that while those were the core concerns, we need to

24    worry about document destruction and we need to have a

25    prohibition that applies to the document destructor, not the

1　influencing of a third party, that there is also a concern

2　that, hey, we don't have nearly enough criminal prohibitions

3　on just a general instruction like somebody who wants to

4　prevent a court proceeding from going on altogether or someone

5　who wants to stop a proceeding in Congress from happening

6　rather than document destruction?

7　　　　　MS. LOEB:  Your Honor, I'm not aware of a statement

8　that is that in the legislative history --

9　　　　　THE COURT:  Is there anything directionally that

10　way?

11　　　　　MS. LOEB:  I mean Senator Hatch explained that the

12　amendment strengthens the existing federal offense that is

13　often used to prosecute document shredding and other forms of

14　obstruction of justice.  So he's saying forms of obstruction

15　of justice.  But again we have --

16　　　　　THE COURT:  It seems like he's thinking of these

17　other forms as things like document shredding.

18　　　　　MS. LOEB:  We just don't have a lot of legislative

19　history here and we have the plain text that is not limited in

20　that way and there's really no reason to resort to the

21　legislative history.

22　　　　　THE COURT:  I agree.

23　　　　　MS. LOEB:  The legislative history are floor

24　statements which are of exceptionally little value and then we

25　also have the court statement from Oncale that statutes can go

**EXHIBIT A**

1    beyond the principal evil that animated them.

2           If Your Honor has no further questions about 1512, I

3    would like to move on to Section 231.

4           THE COURT:  I just want to -- my apologies.  I had

5    one last question I wanted to ask, but I've now forgotten it.

6    But I think principally because we covered it which is just --

7    and I think it's already been briefed.  It goes to the extent

8    to which all of the various interpretations of (C)(1) that

9    have been either advocated for, adopted or mused about in this

10   argument do create a surplusage issue I think no matter where

11   one comes out.

12          I obviously asked you some questions about whether

13   it would be reasonable to so interpret.  Do you have a view of

14   how ambiguous a statute needs to be for lenity to kick in?

15          MS. LOEB:  Grievously and beyond the terms on their

16   face to determine whether or not there's vagueness, the Court

17   can also look at whether courts have construed them and here

18   we have case law construing the term "corruptly."  So it is

19   the combination of both the terms that do have an ordinary

20   meaning, but is readily comprehensible combined with courts

21   from around the country constructing the term that gives

22   sufficient notice and does not trigger the rule of lenity

23   here.

24          THE COURT:  Thank you.  So let's do the Count One.

25          MS. LOEB:  I wanted to point out that counsel

EXHIBIT A

1    asserted that she's making a facial challenge I believe here

2    to Section 231 and she mentioned the scenario of someone who

3    is just standing there.  To the extent that she is making a

4    facial vagueness challenge, I don't think that is an issue

5    because the statute requires any act.  So just standing around

6    wouldn't qualify as any act.  And certainly, this defendant is

7    accused of committing an assault.  So he's not been charged

8    simply for standing around.

9          In addition, of course, the mens rea which Judge

10    Bates noted --

11          THE COURT:  Can we just pause there for a second?

12          MS. LOEB:  Yes.

13          THE COURT:  Going back to our earlier conversation

14    about facts in or not in the indictment, does the

15    indictment -- and this may be clear that it does -- I'm sorry.

16    I'm just not seeing it.  Does the indictment allege that he

17    assaulted someone?

18          MS. LOEB:  That's Count Two of the indictment is

19    assault.

20          THE COURT:  Oh, I'm sorry.  Yes.  Of course.  Thank

21    you.

22          MS. LOEB:  But --

23          THE COURT:  I'm sorry.  I was looking at the rest of

24    it.  Right.  So it's assault, resist, oppose, impede,

25    intimidate and interfere with.  So any of those in your view

EXHIBIT A

1     is sufficient for --

2             MS. LOEB:  Yes.  But I also think the terms of the

3     statute are sufficiently clear and we don't have a vagueness

4     problem here.

5             To just respond, I also believe the mens rea point

6     came up.  And as Judge Bates found, there is a mens rea in the

7     statute to specific intent is required and even if there

8     weren't, under the Elonis case, the Court would read the

9     statute to include a mens rea requirement.

10            I believe those were all the points on Section 231

11    that I wanted to respond to.  If Your Honor has questions

12    about it, otherwise I would rely on our briefs.

13            THE COURT:  No.  Thank you.

14            MS. LOEB:  Thank you, Your Honor.

15            THE COURT:  Thank you, counsel.  Ms. Ulrich?

16            MS. ULRICH:  Your Honor, I don't have any specific

17    rebuttal unless you have some followup questions.  I did want

18    to talk to you about the issue of venue.  But first --

19            THE COURT:  So let me just tell you where I am on

20    the motion which is that I am going to take it under

21    advisement.  As the government knows, I've been -- I've had in

22    front of me a motion in another case that presents just the

23    1512 question which I'm still working through as you can

24    imagine from the argument today.  So that is clearly important

25    to me and relevant here.  But there are two issues that I have

EXHIBIT A

1  not confronted.  So I am going to take that motion under

2  advisement.  I will definitely be writing an opinion.  It may

3  be that that follows the Miller case.  But no promises about

4  when that's going to be.  So in terms of the ark of this case,

5  I'm not going to decide the motion orally today or know for

6  sure when I will.  So that then gets us to the case more

7  generally.

8              The venue motion which has been sort of suspended

9  for the present time.  So why don't we talk about that?

10             MS. ULRICH:  Thank you.  So the federal public

11  defenders here in D.C. had done a survey I think of potential

12  jurors in this area and so that I think that would be data

13  that the Court might be interested in in looking at the change

14  of venue.  And so what I propose, I proposed this in my other

15  case, that we supplement our argument and that we file a brief

16  on March 23rd with that data and then I talked to Ms. Loeb

17  about their response being April 25th and I believe she's in

18  agreement and able to do that.  And so that's what I would

19  propose if the Court would be okay with that.

20             THE COURT:  That seems preliminarily just fine to

21  me.  Obviously, the pendency of the motion is very relevant

22  here.  Assuming we do that, then I would be taking up the

23  venue question sometime in early May, depending on whether you

24  want to file a reply brief.

25             What are your thoughts more generally about where

1     the case stands?  Obviously, if for whatever reason, venue

2     were to be transferred, then it would no longer be here and

3     we'd be worrying about someone else's trial schedule

4     altogether.  But assume not for present purposes or just more

5     generally, all the things that have to happen wherever this

6     thing gets tried, where are we?

7            MS. ULRICH:  In terms of?

8            THE COURT:  Discovery, discussions, thoughts about

9     trial prep.

10           MS. ULRICH:  Right now, our plea negotiations have

11    kind of stalled.  So I don't know if we're going to resurrect

12    them or not.  I guess right now, we're on track for trial.

13    But Mr. Fischer is out.  So we're -- you know, I'm not looking

14    to have a trial anytime soon.  So I don't know what the

15    Court's schedule is.  If we can't resolve this with a plea, I

16    have no idea.  I know that this court is inundated with these

17    cases.

18           THE COURT:  Yeah.

19           MS. ULRICH:  So we're --

20           THE COURT:  There are obviously these motions that

21    are pending to be supplemented and the like.  Other than that,

22    are there significant amounts of discovery or other facts

23    development that needs to happen or is that where it needs to

24    be or getting close to where it needs to be?

25           MS. ULRICH:  And that's a good question.  From our

1   standpoint, I mean I know the government intends.  We keep

2   getting these big briefs saying that there's even more

3   voluminous discovery coming and I know they are working very

4   well -- I mean I know they are working very hard to get that

5   for us.

6          From our standpoint, we are kind of at like -- like

7   we -- given the facts that we know, he was, you know, there in

8   a very small area for less than five minutes, I don't know

9   what else the government could give us to change, you know,

10  what the facts are that we already know.  But I know they are

11  claiming that there's more and more and more coming.  So I

12  guess I'm not sure about that, what their timetable is on the

13  rest of this discovery.  But again from our standpoint, you

14  know, we're not talking hours in the Capitol.  We're talking

15  less than five minutes in one small area.  That's what we are

16  dealing with.

17         THE COURT:  Let me just hear from the government and

18  then we can talk about that motion's practice.  Thank you.

19         Ms. Loeb?  Can you start with that question, just

20  where are things generally in this case discovery-wise?

21         MS. LOEB:  We've completed most of the case specific

22  discovery.  There will always be additional items.  I mean

23  there will not always be.  We have some small number likely of

24  additional reports we would turn over.  But it's pretty much

25  completed.

1          The global discovery is ongoing as Ms. Ulrich said.
2    It seems like there could be things in there that could end up
3    being relevant to the defendant.  For example, if there was
4    some other defendant in the area who videotapes the encounter
5    on his device, that's not available yet.  And I know the
6    defendant has made -- has suggested that there may be officers
7    who were not resisting or allowing him to enter.  So they
8    would want -- they may want the relativity database populated
9    so that they can search for that officer and find all the
10   information related to him.  So I do think there are some
11   things in the global discovery that could be relevant.  And
12   the status report really is the best information I have there.
13          Aside from the venue motion, I would think we would
14   want a date for motions in limine and 404(b) disclosure.  So
15   we need some time for that.  And we can talk about our various
16   trial schedules, too, if that makes sense.
17          THE COURT:  It seems a little premature to do that
18   because there is at least the hypothetical possibility, I
19   don't know how likely it is, that I would grant the venue
20   motion.  And if what I was hearing was we are done, a hundred
21   percent and we're ready to go to trial, then I might want to
22   just set a trial date and then deal with it if the trial is
23   not going to be here.
24          But it seems to me what I'm hearing is we agree
25   there is a venue motion that should get litigated and we are

**EXHIBIT A**

1    suggesting essentially a two-month briefing schedule.  I

2    obviously have the pending motion to dismiss that I need to

3    work through.  There is additional fact development production

4    and review that needs to happen.  And so if we don't set a

5    trial date today and I think I heard the pretty clear

6    implication from Ms. Ulrich that she wasn't pushing for one.

7    You may be pushing for one.  But it seems to me that we can

8    wait a little while to set a trial date.

9              MS. LOEB:  I think that's fine, Your Honor,

10   particularly in light of the ongoing discovery.

11             THE COURT:  And really that's where I wanted to

12   land -- that general view is where I wanted to be before we --

13   before I just agree that the venue briefing schedule was

14   appropriate.  But it seems appropriate to me in light of this

15   conversation which is there is still some more stuff to do.

16   Obviously, I have the motions still in front of me.  And so if

17   we allow two more months to pass before I take up the venue

18   motion because that's what we're really talking about.  It's

19   not going to be briefed until the end of April.  That's not

20   going to substantially delay where the case would otherwise

21   be.

22             MS. LOEB:  Yes.  And I may be jumping the gun here,

23   but in terms of speedy trial, I think we have another 30 days

24   from the hearing where the clock would be tolled based on the

25   motion to dismiss, but the venue motion would be filed within

```
 1    30 days.  So then we would -- that would toll the clock.  That
 2    would stop the clock.
 3              THE COURT:  In other words, we are currently
 4    tolling.
 5              MS. LOEB:  Yes.
 6              THE COURT:  And we will do so through almost the end
 7    of March and then we'll have another motion?
 8              MS. LOEB:  Yes.
 9              THE COURT:  Although I guess that motion is -- it's
10    stayed.  So maybe it's not tolling.  But why don't we do this
11    then?  Okay.  I agree with the parties' proposal on the venue
12    motion, which means March 23rd, it will be supplemented to
13    include the survey that FPD is doing.  Government's opposition
14    due April 25th.
15              MS. LOEB:  Yes.
16              THE COURT:  I'm not going to toll the Speedy Trial
17    Act today because I think it is being tolled as you said by
18    operation of the pending motion.  Do you believe, Ms. Loeb,
19    that when the venue motion is supplemented, it would then have
20    the -- if I've already decided the motion to dismiss, that it
21    would then have the effect of re-tolling the statute?
22              MS. LOEB:  If it's treated as a renewed motion, the
23    filing of a pretrial motion --
24              THE COURT:  Yes.  It should.
25              MS. LOEB:  -- but given that we've talked about the
```

**EXHIBIT A**

48

1    ongoing voluminous discovery and the preparation of pretrial

2    motions, I would also suggest that we can make a finding that

3    time should be excluded --

4              THE COURT:  I would agree.  Ms. Ulrich, do you

5    object to that?

6              MS. ULRICH:  No, Your Honor.

7              THE COURT:  So let me ask one more question.  Let me

8    just wrap all this up together.  Do the parties believe it

9    would be helpful or appropriate to set a status in this matter

10   for sometime within the next 60 days to take up any other

11   issues that may arise between now and then recognizing that

12   that venue motion will only just have been fully briefed

13   within that 60-day period?

14             MS. LOEB:  Your Honor, I would suggest we set the

15   status that might also serve as a hearing on the venue motion.

16             THE COURT:  Let me just look at my calendar now.  So

17   what I am thinking is then so renewed venue motion,

18   March 23rd, response April 25 and then because I have a trial

19   starting May 9th, then I would want to do the status/argument

20   in this case the week before.  So May 3rd or May 4.  Are the

21   parties available?  Do you have windows within those periods?

22   And I would just propose a 2 p.m. May 3rd status

23   conference/argument on the venue motion as appropriate.

24             MS. LOEB:  Your Honor, I have a 4 p.m. sentencing

25   before Judge Sullivan that day.  But by 2 p.m., we should be

1    able to get it done by then.

2              THE COURT:  How about 1:30 to be safe?

3              MS. LOEB:  Sure.

4              THE COURT:  It shouldn't go two and a half hours.

5    Ms. Ulrich, does that work for you?

6              MS. ULRICH:  Yes, Your Honor.

7              MS. LOEB:  Would that be --

8              THE COURT:  I thought it was important to have this

9    hearing in person because I had obviously substantive

10   questions.  That's not to say I won't on the venue question.

11   My preference would be in person.  But, Ms. Ulrich, I know

12   that might be a little burdensome.

13             MS. ULRICH:  Actually, no.  I like in person.  It's

14   probably more burdensome for Ms. Loeb.  She's from California.

15             THE COURT:  Ms. Loeb.

16             MS. ULRICH:  Yes.  I'm from Pennsylvania.

17             THE COURT:  I knew that.  I had forgotten that you

18   were in California.  So would you give me another argument?

19             MS. LOEB:  Yes.  Yes.  Your Honor, I can come back

20   in person.  And if Your Honor does not see the need for a

21   hearing on the motion, I would appreciate if the Court would

22   let me know.

23             THE COURT:  Absolutely.  Why don't we do this?

24   Let's do 1:30 p.m. May 3rd in person, status and argument on

25   the venue motion.  If I decide I don't need argument on the

**EXHIBIT A**

50

```
 1    venue motion, then my goal would be to decide that very
 2    quickly after the 25th and to inform the parties and to
 3    convert it to a virtual status.
 4              MS. LOEB:  Should we set a deadline for a reply
 5    brief on the venue motion?
 6              THE COURT:  Do you want a reply brief, Ms. Ulrich?
 7              MS. ULRICH:  No.  I doubt it.  I don't think I need
 8    a reply brief deadline.
 9              MS. LOEB:  Okay.
10              THE COURT:  Okay.  So that's the schedule for the
11    next two and a half months or so.  Not quite two and a half
12    months.  And I conclude that for the various reasons discussed
13    today to include the current resolution of current motions,
14    the receipt to the report from FPD and the renewed venue
15    motion, the continued production of discovery and review
16    thereof by defendant that is appropriate to toll time under
17    the Speedy Trial Act between today's date and May 3rd.  Are
18    there any other things we should discuss today?
19              MS. LOEB:  Nothing from the government, Your Honor.
20    Thank you.
21              THE COURT:  Thank you, Ms. Loeb.
22              MS. ULRICH:  Nothing from the defense.  Thank you.
23              THE COURT:  Thank you, counsel.
24              (Proceedings concluded.)
25
```

1         <u>CERTIFICATE OF REPORTER</u>

2

3         I, Lisa K. Bankins, an Official Court Reporter for

4    the United States District and Bankruptcy Courts for the

5    District of Columbia, do hereby certify that I reported, by

6    machine shorthand, in my official capacity, the proceedings

7    had and testimony adduced upon the oral argument in the case

8    of the United States of America versus Joseph Fischer,

9    Criminal Number 21-cr-00234, in said court on the 28th day of

10   February, 2022.

11

12        I further certify that the foregoing 51 pages

13   constitute the official transcript of said proceedings, as

14   taken from my machine shorthand notes, together with the

15   backup tape of said proceedings to the best of my ability.

16

17        In witness whereof, I have hereto subscribed my

18   name, this 20th day of March, 2022.

19

20

21                              Lisa K. Bankins

22                              Lisa K. Bankins
                                Official Court Reporter
23

24

25

**EXHIBIT A**

MS. LOEB: [85]
MS. ULRICH: [44] 2/17 3/5 3/8 4/12 5/6 5/21 6/6 6/19 7/1 7/11 7/16 7/22 8/1 8/3 8/6 8/9 8/12 8/21 9/7 10/1 10/14 11/11 11/14 14/1 14/17 14/23 15/2 15/21 16/7 17/1 17/7 17/18 42/16 43/10 44/7 44/10 44/19 44/25 49/6 50/6 50/13 50/16 51/7 51/22
THE COURT: [127]
THE COURTROOM DEPUTY: [3] 2/2 2/25 3/6

**0**
00234 [2] 1/3 52/9

**1**
100 [1] 1/15
1505 [3] 11/15 14/11 28/13
1512 [25] 4/1 8/19 10/20 10/25 11/1 11/2 11/13 11/21 12/10 12/14 12/18 14/11 27/18 32/2 36/12 36/19 37/3 37/5 37/7 37/17 37/23 37/25 38/9 40/2 42/23
1519 [7] 36/16 36/21 36/21 37/3 37/12 37/16 37/19
17101 [1] 1/16
1752 [2] 27/18
1982 [2] 11/3 11/21
1:00 [1] 1/6
1:30 [2] 50/2 50/24

**2**
20-year [1] 38/3
20001 [1] 1/22
20004 [1] 1/19
2002 [2] 10/8 11/3
2021-234 [1] 2/3
2022 [3] 1/5 52/10 52/18
20th [1] 52/18
21-CR-00234 [2] 1/3 52/9
231 [3] 40/3 41/2 42/10
234 [1] 2/3
23rd [3] 43/16 48/12 49/18
25 [1] 49/18
25th [3] 43/17 48/14 51/2
28 [1] 1/5
28th [1] 52/9

**3**
30 [2] 47/23 48/1
306 [1] 1/16
333 [1] 1/22
365 [1] 21/22
3rd [4] 49/20 49/22 50/24 51/17

**4**
404 [1] 46/14
450 [1] 1/12

**5**
51 [1] 52/12
550 [1] 1/19

**6**
60 [1] 49/10
60-day [1] 49/13
625 [1] 1/18
6th [9] 6/2 13/5 13/9 15/1 15/22 16/3 19/20 22/9 28/15

**9**
94102 [1] 1/13
9th [1] 49/19

**A**
ability [1] 52/15

able [2] 43/18 50/1
about [19]
Absolutely [1] 50/23
absurd [1] 18/8
accused [1] 41/7
act [21] 10/8 15/3 15/6 15/8 15/11 16/7 16/10 29/17 30/8 30/8 31/8 31/9 31/20 33/9 35/7 35/16 37/11 41/5 41/6 48/17 51/17
acted [1] 16/25
acting [4] 15/16 16/1 30/19 35/22
actions [2] 17/10 17/13
acts [3] 30/14 30/20 32/13
actually [4] 7/16 18/15 37/2 50/13
add [1] 18/7
added [5] 11/3 11/12 11/19 11/21 37/18
addition [1] 41/9
additional [6] 23/20 24/22 30/24 45/22 45/24 47/3
address [3] 4/5 7/13 10/9
addressed [1] 38/14
adduced [1] 52/7
adjourned [1] 29/10
adjudicative [7] 12/12 27/22 28/1 28/10 28/15 28/18 28/20
adopted [1] 40/9
adverse [1] 9/14
advisement [2] 42/21 43/2
advocated [1] 40/9
after [2] 11/16 51/2
afternoon [3] 2/2 2/14 2/17
again [14] 4/9 12/13 12/20 14/5 15/5 15/8 20/23 25/15 25/17 26/7 26/8 36/18 39/15 45/13
against [4] 12/2 17/12 25/8 27/14
agencies [1] 5/12
agency [2] 12/8 28/23
agree [13] 7/10 13/2 13/3 26/7 26/10 29/16 30/9 34/8 39/22 46/24 47/13 48/11 49/4
Agreed [1] 38/14
agreement [1] 43/18
agrees [1] 38/16
ALEXIS [2] 1/11 2/14
all [25] 3/6 3/15 4/4 4/10 7/12 8/4 13/13 13/14 13/16 14/2 14/12 15/3 24/13 26/9 26/11 32/12 33/6 33/14 35/7 36/20 40/8 42/10 44/5 46/9 49/8
allege [3] 6/23 23/10 41/16
alleged [2] 6/8 16/5
alleges [1] 30/14
allow [1] 47/17
allowing [1] 46/7
almost [2] 21/16 48/6
alone [1] 30/14
along [1] 2/18
already [5] 11/7 11/25 40/7 45/10 48/20
also [22] 10/12 13/7 15/18 25/8 25/15 25/21 29/1 29/6 30/2 30/5 31/12 33/7 36/16 39/1 39/25 40/7 42/2 42/5 49/2 49/15
alter [1] 35/5
alteration [2] 34/15 36/3
altering [1] 32/25
alters [2] 30/20 37/4
although [7] 23/6 29/13 30/1 30/13 31/12 31/25 48/9
altogether [2] 39/4 44/4
always [4] 20/6 31/19 45/22 45/23
am [8] 5/13 15/25 21/6 21/14 42/19 42/20 43/1 49/17
ambiguous [1] 40/14
amend [1] 24/24
amended [2] 11/16 14/10
amendment [1] 39/12
AMERICA [1] 1/3 2/3 52/8
among [1] 16/25
amount [1] 20/24
amounts [1] 44/22
Andersen [1] 31/22

animated [1] 40/1
anomalous [1] 39/6
another [18] 8/15 24/14 26/23 29/3 29/7 33/16 34/11 34/12 34/17 34/19 35/9 35/11 35/14 36/25 42/22 47/23 48/7 50/18
answer [2] 6/19 25/7
answered [1] 13/18
any [21] 5/3 15/3 15/7 15/11 16/7 17/20 17/23 22/19 24/25 28/18 33/12 34/7 35/10 38/1 38/4 41/5 41/6 41/25 42/16 49/10 51/18
anything [9] 4/8 6/10 8/19 14/11 17/16 36/12 38/15 38/22 39/9
anytime [1] 44/14
anywhere [2] 18/18 25/10
apologies [1] 40/4
Appeals [1] 36/11
appear [3] 9/14 12/13 28/21
APPEARANCES [1] 1/10
applications [1] 16/2
applied [3] 17/8 32/2 32/3
applies [1] 38/25
apply [7] 7/10 9/2 9/17 10/11 14/3 17/6 18/13
appreciate [1] 50/21
approaching [1] 19/1
appropriate [5] 47/14 47/14 49/9 49/23 51/16
approved [1] 31/13
April [4] 43/17 47/19 48/14 49/18
April 25 [1] 49/18
April 25th [2] 43/17 48/14
are [64]
area [6] 19/1 25/13 43/12 45/8 45/15 46/4
areas [1] 18/22
aren't [1] 30/6
argue [1] 17/11
argued [1] 26/2
arguing [2] 17/12 27/21
argument [28] 1/8 3/11 4/14 5/21 6/23 6/24 6/25 7/2 7/18 7/20 9/12 12/25 14/5 14/16 17/4 17/23 22/20 29/7 33/21 40/10 42/24 43/15 49/19 49/23 50/18 50/24 50/25 52/7
arguments [8] 7/3 7/9 7/13 8/5 8/14 8/16 8/17 14/16
arise [1] 49/11
ark [1] 43/4
around [6] 12/4 18/22 24/4 40/21 41/5 41/8
arraign [1] 2/22
Arthur [1] 31/22
as [63]
aside [3] 26/25 28/3 46/13
ask [4] 2/10 30/15 40/5 49/7
asked [2] 40/12
aspect [1] 14/8
assault [3] 41/7 41/19 41/24
assaulted [1] 41/17
asserted [1] 41/1
assume [3] 9/20 29/15 44/4
assuming [2] 6/15 26/7 43/22
attesting [1] 13/17
attorney [1] 30/25
Attorney's [1] 1/11
attorney/client [1] 30/25
available [3] 23/7 46/5 49/21
Avenue [3] 1/12 1/18 1/22
awaiting [1] 19/5
aware [1] 39/7
awesome [1] 8/13

**B**
back [9] 11/21 12/14 22/17 24/14 24/25 25/5 25/8 41/13 50/19
backup [1] 52/15
bad [1] 31/2
balance [1] 22/2
Bankins [4] 1/20 52/3 52/21 52/22
BANKRUPTCY [2] 1/1 52/4
based [2] 6/11 47/24

**B**

basic [1] 32/21
basically [3] 7/10 32/9 34/19
basis [3] 28/14 28/24 36/19
Bates [6] 12/25 13/4 19/18 22/1 41/10 42/6
be [119]
because [42] 3/20 6/6 6/20 9/9 9/13 10/7 10/15
15/8 15/9 16/7 16/11 17/8 18/13 19/12 19/14
20/7 20/23 21/18 23/3 23/18 24/20 25/8 25/12
26/5 26/20 27/8 28/2 28/21 29/8 30/15 30/25
31/5 31/19 32/18 36/5 40/6 41/5 46/18 47/18
48/17 49/18 50/9
become [1] 30/4
been [13] 14/4 16/21 18/15 26/17 29/8 31/14
36/18 40/7 40/9 41/7 42/21 43/8 49/12
before [19] 1/8 6/4 8/15 11/22 12/1 12/12
12/16 12/17 22/24 24/9 25/4 27/25 28/6 29/5
47/12 47/13 47/17 49/20 49/25
beginning [1] 2/5
being [5] 9/14 16/14 43/17 46/3 48/17
believe [17] 5/10 8/21 24/6 24/9 24/16 25/1
29/20 30/2 30/12 37/16 38/8 41/1 42/5 42/10
43/17 48/18 49/8
believed [1] 24/13
best [2] 46/12 52/15
better [2] 24/10 25/7
between [9] 14/25 16/25 18/17 25/21 25/24
25/25 27/10 49/11 51/17
beyond [2] 40/1 40/15
big [1] 45/2
bill [1] 23/8
bit [2] 13/7 37/23
bizarre [1] 28/24
bodies [1] 11/8
body [2] 12/12 28/17
bomb [1] 9/22
both [4] 29/25 30/13 38/13 40/19
bound [1] 12/21
break [2] 5/7 19/6
breaks [1] 29/9
brief [8] 3/13 12/20 18/7 43/15 43/24 51/5 51/6
51/8
briefed [3] 40/7 47/19 49/12
briefing [2] 47/1 47/13
briefs [4] 5/24 14/19 42/12 45/2
bring [3] 8/7 17/6 32/4
broad [1] 25/16
broader [3] 31/24 33/6 33/18
broadly [1] 25/16
brought [1] 7/17
building [5] 5/9 5/10 5/16 25/11 25/11
burdensome [2] 50/12 50/14
business [1] 28/17

**C**

calendar [1] 49/16
California [4] 1/13 26/24 50/14 50/18
called [1] 9/22
came [5] 14/7 20/5 21/24 32/6 42/6
Camp [3] 26/23 27/6 27/7
can [21] 3/18 4/7 9/3 19/17 24/2 25/2 25/11
29/20 30/5 37/11 39/25 40/17 41/11 42/23
45/18 45/19 46/9 46/15 47/7 49/2 50/19
can't [9] 8/7 10/1 11/9 12/11 17/6 32/4 32/4
38/11 44/15
capacity [1] 52/6
Capitol [15] 3/19 4/17 4/21 5/7 5/16 5/17 6/1
10/10 22/12 23/1 23/6 23/25 25/9 25/10 45/14
captured [2] 10/15 35/12
CARL [1] 1/8
carve [2] 25/19 28/24
carve-out [2] 25/19 28/24
carved [2] 20/13 20/17
case [29] 2/3 10/23 12/5 12/6 12/6 12/9 12/19
12/20 24/7 25/1 28/5 29/3 30/1 30/13 31/13

32/6 40/18 42/8 42/22 42/3 43/4 43/6 43/15
cases [5] 5/23 12/2 12/3 27/24 44/17
catch [2] 32/12 33/6
catch-all [2] 32/12 33/6
ceremonial [3] 13/11 29/7 29/13
certain [3] 6/9 16/4 25/2
certainly [11] 6/6 6/7 6/10 10/17 11/15 15/24
17/11 17/13 28/5 31/25 41/6
CERTIFICATE [1] 51/25
certification [8] 5/4 5/6 13/10 13/15 13/16
13/17 13/19 29/6
certify [4] 13/14 29/12 52/5 52/12
challenge [5] 17/1 17/6 32/4 41/1 41/4
chamber [2] 19/9 19/20
chambers [6] 19/22 20/1 20/2 20/7 21/7 21/17
change [2] 43/13 45/9
charge [2] 16/16
charged [1] 16/16
charging [1] 16/16
Chestnut [1] 1/15
child [1] 7/9
children [1] 26/13
chose [1] 37/15
Circuit [1] 12/20
Circuit's [1] 12/20
circumstances [1] 25/2
cited [2] 12/20 28/6
civil [5] 14/17 14/22 15/18 15/19 15/19
claiming [1] 45/11
clarity [1] 14/25
clause [7] 32/8 32/13 32/21 32/23 33/2 33/5
33/6
clear [10] 5/14 14/22 25/23 33/9 33/17 34/6
35/3 41/15 42/3 47/5
clearance [1] 12/9
clearly [5] 22/22 23/2 23/25 32/1 42/24
client [1] 30/25
clock [3] 47/24 48/1 48/2
close [1] 44/24
co [1] 2/18
co-counsel [1] 2/18
colleague [1] 2/15
colleague's [1] 38/11
colleagues [2] 4/7 27/24
college [2] 13/10 13/16
COLUMBIA [3] 1/1 1/21 52/5
combination [1] 40/19
combined [1] 40/20
come [5] 2/4 2/25 5/9 30/5 50/19
comes [1] 40/11
coming [5] 5/10 19/23 45/3 45/11
commission [8] 8/22 9/8 9/9 9/19 9/20 10/16
15/18 28/20
committee [1] 9/23
committing [3] 16/9 16/10 41/7
compelled [1] 12/13
complaint [1] 25/14
completed [2] 45/21 45/25
comprehensible [1] 40/20
conceal [2] 34/24 35/6
concealing [1] 32/25
concealment [2] 34/16 36/4
conceals [2] 30/21 37/4
conceivably [1] 9/8
concern [2] 38/18 39/1
concerns [2] 30/7 38/23
conclude [1] 51/12
concluded [1] 51/12
conduct [9] 9/2 16/20 17/4 30/22 32/1 32/23
33/8 33/18 36/12
conducted [1] 28/17
conference [1] 49/23
conference/argument [1] 49/23
confirm [1] 30/3
confronted [1] 43/1

Congress [30] 1/3 10/6 10/23 11/9 11/12 11/23
12/15 12/20 22/5 22/6 22/8 22/9 22/14 26/14
27/25 28/3 28/7 28/11 28/12 29/5 29/8 29/9
33/9 37/1 37/8 37/13 37/18 37/19 38/2 39/5
congressional [1] 28/2
consciousness [1] 31/22
consider [1] 37/16
consistent [2] 34/3 34/24
constitute [1] 52/13
Constitution [1] 1/22
constitutional [5] 7/7 18/14 22/22 26/4 30/7
constructing [1] 40/21
construed [1] 40/17
construing [1] 40/18
context [6] 6/2 10/21 13/21 14/14 16/3 29/4
continued [1] 51/15
conversation [2] 41/13 47/15
convert [1] 51/3
conviction [1] 14/10
convictions [1] 36/11
copy [2] 3/2 37/19
cordoning [1] 7/19
core [6] 17/5 32/1 37/17 38/5 38/16 38/23
corporate [3] 10/9 11/5 11/23
corporations [1] 11/24
correct [6] 2/23 5/5 9/1 18/5 24/25 36/22
correctly [1] 4/7
corrupt [8] 14/6 14/9 14/13 15/3 15/5 29/24
29/24 31/1
corruptly [12] 10/18 11/17 13/20 29/16 29/19
30/7 30/23 31/7 31/8 31/21 35/7 40/18
could [33] 3/22 4/16 4/23 5/1 6/1 6/3 6/21 9/8
13/12 13/14 16/9 16/10 18/16 18/24 22/1 22/1
22/2 23/8 23/25 27/12 29/22 29/23 29/24 30/24
34/14 35/1 35/15 35/16 37/20 45/9 46/2 46/2
46/11
couldn't [2] 23/24 34/12
counsel [18] 2/4 2/12 2/16 2/18 2/19 3/2 3/9
3/12 17/15 18/2 22/19 27/21 28/5 29/1 29/6
40/25 42/15 51/23
counsel's [1] 28/19
count [8] 3/4 4/22 6/4 14/16 14/17 16/9 40/24
41/18
country [1] 40/21
counts [4] 2/21 4/15 6/5 7/21
couple [1] 24/2
course [9] 13/9 17/2 18/24 19/18 24/10 29/14
35/6 41/9 41/20
court [21] 1/20 1/21 2/12 11/9 12/17 12/21
24/7 24/9 31/21 37/21 39/4 39/25 40/16 42/8
43/13 43/19 44/16 50/21 52/3 52/9 52/22
Court's [4] 4/17 13/18 44/15
courthouse [2] 5/8 21/23
courtroom [2] 2/8 2/10
courts [7] 1/1 14/12 24/5 36/11 40/17 40/20
52/4
cover [4] 8/20 9/6 9/19 37/10
coverage [1] 25/4
covered [15] 4/8 8/20 8/22 8/23 8/25 9/3 9/6
20/18 30/22 30/25 31/6 32/14 33/24 34/17 40/6
covering [1] 35/19
covers [5] 4/8 7/4 32/13 33/22 37/6
COVID [1] 19/23
cr [2] 1/3 52/9
create [11] 7/15 21/11 21/12 25/19 25/21 26/20
30/18 30/21 36/17 38/2 40/10
creates [2] 25/24 32/9
crime [1] 12/22 33/10
criminal [11] 1/3 2/3 12/23 14/14 18/13 26/15
27/14 32/10 38/3 39/2 52/9
crowd [1] 16/14
current [2] 51/13 51/13
currently [1] 48/3

**D**

D.C [7] 1/4 1/19 1/22 12/5 13/1 24/6 43/11

**D**

D.O.J [1]  21/2
data [2]  43/12 43/16
database [1]  46/8
date [5]  46/14 46/22 47/5 47/8 51/17
David [3]  26/24 27/6 27/7
day [16]  4/22 7/21 9/23 9/23 20/11 20/21 21/2
 21/9 22/10 23/1 23/25 25/14 49/13 49/25 52/9
 52/18
days [5]  20/17 21/23 47/23 48/1 49/10
deadline [2]  51/4 51/8
deal [2]  38/16 46/22
dealing [1]  45/16
debate [1]  9/4
decide [3]  43/5 50/25 51/1
decided [1]  48/20
decision [2]  24/6 29/11
defendant [12]  1/6 1/14 3/1 9/21 23/9 26/3
 32/3 41/6 46/3 46/4 46/6 51/16
Defender [2]  1/14 1/17
defenders [1]  43/11
defending [1]  6/20
defense [10]  3/12 3/13 18/1 22/18 27/21 28/5
 28/19 29/1 29/6 51/22
define [4]  3/21 13/24 13/25 14/1
defined [3]  30/2 30/8 31/21
definitely [1]  43/2
definition [8]  11/17 11/19 11/25 14/11 19/14
 21/11 28/16 31/23
delay [1]  47/20
deleted [1]  33/24
deliberate [1]  29/10
deny [2]  6/4 22/24
depend [1]  25/3
dependent [1]  33/22
depending [1]  43/23
described [1]  33/10
describing [1]  3/20
designed [4]  19/1 30/18 30/21 32/22
destroy [1]  35/5
destroying [1]  32/25
destroys [2]  30/20 37/4
destruction [7]  34/16 36/3 38/6 38/17 38/20
 38/24 39/6
destructor [3]  38/21 38/25
detail [1]  38/8
detention [1]  24/4
deter [2]  18/22 19/11
determine [1]  40/16
development [2]  44/23 47/3
device [1]  46/5
did [7]  5/1 8/23 9/22 18/7 20/4 23/12 42/17
didn't [6]  8/7 11/21 14/8 25/13 31/23 37/20
different [9]  5/11 15/3 21/11 22/8 22/20 24/1
 29/4 33/18 34/21
differently [6]  8/17 16/19 16/25 33/17 34/11
 34/13
difficult [5]  3/18 13/25 14/1 21/12 25/19
directed [1]  9/14
directionally [1]  39/9
directly [1]  12/13
disabled [1]  26/12
disagree [1]  6/22
disclosure [1]  46/14
discovery [12]  23/7 44/8 44/22 45/3 45/13
 45/20 45/22 46/1 46/11 47/10 49/1 51/15
discovery-wise [1]  45/20
discuss [1]  51/18
discussed [3]  18/1 26/10 51/12
discussions [1]  44/8
dismiss [6]  2/21 6/16 24/3 47/2 47/25 48/20
dismissed [1]  29/6
disorder [5]  14/17 14/22 15/18 15/19 15/20
dispute [1]  28/22
disputed [1]  5/1

**E**

disrupting [1]  9/24
distinction [1]  25/24
distinctions [1]  25/21
distinguish [3]  16/20 16/25 18/17
distinguished [1]  29/2
district [8]  1/1 1/1 1/9 1/21 1/21 24/6 52/4 52/5
do [45]  2/23 3/3 3/6 6/16 7/11 7/12 8/21 10/14
 11/13 13/12 13/14 13/20 15/7 17/10 24/9 29/16
 30/23 33/12 34/11 34/14 35/13 35/19 36/12
 37/15 37/24 40/10 40/13 40/19 40/24 43/18
 43/22 46/10 46/17 47/15 48/6 48/10 48/18 49/4
 49/8 49/19 49/21 50/23 50/24 51/6 52/5
document [18]  10/20 30/25 31/5 34/21 35/3
 35/14 35/25 35/25 36/9 38/6 38/17 38/20 38/21
 38/24 38/25 39/6 39/13 39/17
documents [11]  9/16 10/7 10/24 11/24 12/18
 34/15 35/20 35/23 36/13 37/11
does [18]  5/15 16/15 16/20 17/1 23/12 23/19
 28/3 30/9 30/23 33/12 36/7 36/22 40/22 41/14
 41/15 41/16 50/5 50/20
doesn't [16]  4/25 7/7 14/3 15/25 16/16 16/24
 17/8 17/9 19/13 23/14 23/18 24/22 28/17 36/12
 36/21 37/24
doing [8]  4/6 7/19 17/23 31/22 34/6 34/20
 35/12 48/13
don't [51]  2/23 4/25 5/10 6/22 7/2 10/1 10/9
 12/16 12/16 12/17 13/24 14/18 16/13 17/15
 17/23 19/13 20/22 23/4 23/20 24/9 24/16 24/16
 25/17 25/23 26/7 26/10 30/11 30/16 31/1 33/5
 34/9 34/17 35/15 35/23 37/21 38/7 39/2 39/18
 41/4 42/3 42/16 43/9 44/11 44/14 45/8 46/19
 47/4 48/10 50/23 50/25 51/7
done [4]  37/20 43/11 46/20 50/1
doubt [1]  51/7
down [1]  5/7
draft [1]  37/14
drafted [1]  25/16
drawing [2]  21/13 25/19
drawn [1]  27/24
due [1]  48/14
duration [1]  22/16
during [4]  15/17 17/12 19/23 20/2
duties [2]  15/15 15/17

**E**

each [3]  6/17 6/17 20/8
earlier [2]  38/18 41/13
early [1]  43/23
edges [1]  12/4
effect [1]  48/23
either [3]  24/20 24/22 40/9
election [1]  13/13
electoral [2]  13/10 13/15
electors [2]  13/4 13/5
element [1]  17/9
Eleventh [1]  1/12
Elonis [1]  42/8
else [8]  2/10 11/18 14/11 18/18 24/21 34/14
 38/20 45/9
else's [1]  44/3
emphasize [1]  25/15
enacted [2]  10/7 11/3
encounter [1]  46/4
end [5]  3/14 14/6 46/2 47/19 48/6
enforcement [3]  15/12 15/16 15/24
engaged [1]  15/14
enough [5]  6/3 22/23 25/6 26/9 39/2
ensures [1]  33/2
enter [2]  3/4 46/7
entering [1]  18/22
entities [1]  13/3
entity [2]  7/14 13/4
entry [1]  37/6
equally [1]  27/11
especially [2]  36/17 37/16
ESQUIRE [3]  1/11 1/15 1/18

**F**

essentially [5]  19/16 22/19 26/6 32/7 47/1
established [2]  6/8 6/10
establishes [1]  32/2
EUGENE [2]  1/18 2/18
even [25]  4/13 5/11 5/12 9/16 10/1 11/7 13/4
 13/14 14/12 16/22 18/23 20/20 20/22 22/25
 25/13 25/13 26/14 27/12 28/15 28/15 28/16
 28/18 28/20 42/7 45/2
event [1]  5/3
every [12]  20/5 20/11 20/21 21/2 21/9 21/21
 21/24 22/10 22/14 23/5 23/10 22/6
everyone [3]  2/10 17/5 38/15
evidence [2]  35/17 36/23
evil [1]  40/1
exactly [1]  37/14
example [17]  7/8 7/14 10/16 19/7 19/20 22/9
 22/9 23/9 27/5 28/4 29/3 30/24 32/24 33/7
 34/14 37/3 46/3
examples [2]  37/12 37/13
except [1]  35/24
exception [1]  26/20
exceptionally [2]  33/9 39/24
excluded [1]  49/3
existing [1]  39/12
explained [1]  39/11
extent [3]  27/3 40/7 41/3

**F**

face [3]  16/20 16/24 40/16
facial [2]  41/1 41/4
fact [4]  3/24 6/7 9/13 47/3
facts [12]  5/1 10/2 15/9 19/12 24/2 24/4 24/8
 25/4 41/14 44/22 45/7 45/10
factually [2]  6/8 6/10 6/13
failing [1]  37/10
Fair [1]  25/6
fairly [1]  6/9
false [9]  9/16 10/6 10/20 10/24 11/10 11/24
 12/18 36/18 37/6
falsely [1]  12/10
Falsification [1]  34/16
falsifies [1]  37/6
falsifying [2]  35/15 35/20
family [13]  5/19 6/3 6/23 18/6 18/9 18/18
 22/18 22/22 23/1 23/25 25/21 25/25 26/1
far [1]  16/8
FCRR [1]  1/20
February [2]  1/5 52/10
federal [6]  1/14 1/17 5/9 12/8 39/12 43/10
feel [2]  2/9 11/1
few [2]  3/16 12/3
Fifth [1]  12/20
figure [2]  4/6 34/13
file [3]  25/2 43/15 43/24
filed [7]  7/25 47/25
filing [1]  48/23
filled [1]  12/9
find [2]  32/16 46/9
finding [1]  49/2
fine [2]  43/20 47/9
fireman [2]  15/11 15/16
firemen [1]  15/24
first [6]  2/22 2/24 14/5 14/15 32/23 42/18
FISCHER [7]  1/5 2/4 2/18 2/22 3/2 44/13 52/8
Fischer's [3]  2/20 16/20 17/4
fit [1]  35/17
five [4]  2/21 4/16 45/8 45/15
floor [2]  1/12 39/23
floors [1]  5/8
focus [2]  4/11 18/1
focusing [1]  4/12
follows [1]  43/3
followup [1]  42/17
foreclose [1]  30/12
forecloses [1]  23/21

**F**

foregoing [1]  52/12
forgotten [2]  40/5 50/17
form [1]  33/6
formal [4]  3/3 12/12 13/3 13/8
forms [3]  39/13 39/14 39/17
forward [3]  2/4 3/1 16/23
found [6]  2/11 4/5 14/2 19/19 27/24 42/6
four [6]  2/21 4/16 34/18 35/13 35/18 37/9
FPD [2]  48/13 51/14
Francisco [1]  1/13
fraud [3]  10/9 11/5 11/23
free [1]  2/9
frequent [1]  21/22
Friedrich [2]  29/16 30/4
friend [2]  8/7 8/11
front [3]  10/5 42/22 47/16
fully [1]  49/12
further [5]  13/1 13/6 27/17 40/2 52/12

**G**

gaping [1]  36/17
Gate [1]  1/12
general [3]  38/3 39/3 47/12
generally [6]  22/10 26/13 43/7 43/25 44/5 45/20
generis [1]  18/16
gentleman [1]  12/9
get [8]  11/18 11/20 24/14 26/5 26/9 45/4 46/25 50/1
get-go [1]  11/20
gets [2]  43/6 44/6
getting [3]  17/10 44/24 45/2
give [8]  3/13 9/16 10/19 17/17 23/19 25/7 45/9 50/18
given [2]  45/7 48/25
gives [1]  40/21
giving [1]  12/17
glad [1]  7/16
global [2]  46/1 46/11
go [21]  5/11 5/12 5/18 8/4 9/11 10/5 11/20 11/21 12/4 19/13 19/13 22/3 22/5 22/11 22/17 24/14 24/25 25/5 25/13 39/25 46/21 50/4
goal [1]  51/1
goes [6]  12/14 16/8 17/11 20/16 38/8 40/7
going [27]  7/8 8/4 9/15 10/5 10/6 14/10 15/8 20/7 20/8 20/8 20/23 22/15 22/19 31/6 33/2 35/19 39/4 41/13 42/20 43/1 43/4 43/5 44/11 46/23 47/19 47/20 48/16
Golden [1]  1/12
gone [1]  38/11
good [10]  2/2 2/14 2/17 7/1 9/12 25/22 32/8 32/12 37/3 44/25
got [2]  7/23 9/13
govern [1]  11/18
government [21]  1/11 2/6 3/12 5/23 5/24 6/7 6/8 9/12 11/10 12/10 16/22 17/16 23/21 24/13 30/9 34/25 42/21 45/1 45/9 45/17 51/19
government's [6]  15/6 22/24 33/11 33/23 34/2 48/13
grand [4]  11/1 24/14 24/25 25/4
grant [1]  46/19
Grider [1]  29/3
Grievously [1]  40/15
ground [1]  22/25
grounds [1]  25/10
Guertin [2]  12/5 29/2
guess [7]  13/22 14/16 22/9 27/4 44/12 45/12 48/9
guilty [1]  3/8 35/8 36/7
gun [1]  47/22

**H**

had [15]  5/17 6/22 10/23 12/9 13/13 19/6 25/9 28/10 28/12 40/4 42/21 43/11 50/9 50/17 52/7

half [4]  16/12 50/4 51/11 51/11
happened [2]  14/25 16/5
happening [3]  9/23 10/22 39/5
happens [1]  34/15
happy [3]  3/15 4/9 17/20
hard [1]  45/4
harder [5]  6/2 6/22 6/24
Harris [2]  19/4 19/7
Harris' [1]  27/6
Harrisburg [1]  1/16
has [31]  4/20 4/21 7/14 7/18 13/2 13/2 13/3 13/7 13/8 16/22 18/19 22/22 25/20 26/3 26/21 27/8 27/11 27/17 29/7 31/13 32/16 32/18 32/20 35/13 36/18 38/11 40/2 42/11 43/8 46/6 46/6
hasn't [1]  31/14
Hatch [1]  39/11
have [93]
haven't [2]  33/1 33/2
he [25]  3/22 4/21 4/21 4/23 4/25 5/1 5/4 5/17 5/17 6/21 10/23 13/1 13/6 13/7 14/8 18/11 18/14 18/19 19/2 19/5 19/20 32/3 32/4 41/16 45/7
he's [6]  3/21 16/23 20/23 39/14 39/16 41/7
hear [12]  2/11 2/12 2/12 3/11 3/12 3/15 4/2 4/9 17/15 17/20 23/12 45/17
heard [2]  22/18 47/5
hearing [7]  9/23 46/20 46/24 47/24 49/15 50/9 50/21
helps [3]  2/11 2/12 2/12
her [29]  2/9 15/17 19/5 19/10 22/20 26/7 26/13 27/6 27/8 29/17 31/11
here [37]  2/20 3/20 5/25 6/20 8/9 8/14 10/15 11/4 11/13 12/3 12/5 12/15 13/1 14/3 14/12 16/6 16/19 19/18 21/7 23/15 24/11 25/18 32/24 35/21 37/15 37/22 39/19 40/17 40/23 41/1 42/4 42/25 43/11 43/22 44/2 46/23 47/22
hereby [1]  52/5
hereto [1]  52/17
herself [1]  38/21
hesitant [1]  34/8
hey [2]  35/18 39/2
him [7]  5/20 12/10 18/24 32/3 38/21 46/7 46/10
himself [1]  18/9
his [20]  2/9 3/23 3/24 4/24 6/3 6/23 7/8 12/9 15/15 15/17 17/10 17/13 18/18 19/5 23/1 23/25 26/1 26/7 26/13 46/6
history [10]  14/7 37/22 37/23 38/2 38/8 38/22 39/8 39/19 39/21 39/23
holding [2]  26/11
hole [1]  18/25
home [1]  21/17
Honor [31]  2/2 2/14 2/17 17/11 17/18 17/25 18/5 20/12 21/10 21/25 23/3 24/5 24/16 25/7 27/17 34/1 36/22 37/24 39/7 40/2 42/11 42/14 42/16 47/9 49/6 49/14 49/24 50/6 50/19 50/20 51/19
Honor's [2]  27/23 38/10
HONORABLE [1]  1/8
hope [1]  13/18
hours [4]  21/3 21/17 45/14 50/4
house [11]  4/21 4/22 5/5 5/7 19/20 20/11 20/12 20/17 21/14 25/10 26/22
houses [1]  29/10
how [13]  3/6 4/7 9/3 10/20 21/22 21/22 29/17 30/16 31/11 37/10 44/14 46/19 50/2
hum [1]  34/23 35/4
hundred [1]  46/20
husband [2]  27/6 27/8
hypothetical [2]  28/19 46/18
hypothetically [3]  5/25 23/23 27/7
hypotheticals [1]  24/12

**I**

I'd [2]  3/10 10/9

**I'll [59]**  7/8 8/24 8/5 12/17 4/8 7/16 8/4 8/18 11/6 15/21 16/1 16/11 17/10 17/20 17/22 20/14 20/18 21/17 21/20 22/19 24/19 31/6 31/13 33/20 34/8 34/9 35/1 39/7 41/15 41/16 41/20 41/23 42/23 43/5 44/13 45/12 46/24 48/16 50/16
I've [6]  30/16 32/5 40/5 42/21 42/21 48/20
idea [4]  11/2 25/8 26/19 44/16
illegal [1]  33/10
illegality [3]  30/18 30/21 31/23
imagine [3]  23/23 35/15 42/24
impairments [1]  37/15
impeachment [1]  28/3
impede [7]  10/19 15/4 15/11 16/8 34/20 35/25 41/24
impedes [1]  35/10
impeding [4]  15/14 36/3 36/6 38/4
implication [1]  47/6
implies [1]  13/16
important [2]  42/24 50/8
impose [1]  28/1
improper [5]  30/2 30/12 30/13 31/3 31/19
incident [1]  15/17
include [6]  11/17 24/22 30/2 42/9 48/13 51/13
included [2]  12/1 34/3
inconsistent [1]  36/10
independently [4]  30/9 30/14 31/20 31/25
Indiana [1]  1/18
indicate [1]  37/24
indication [1]  37/1
indictment [27]  2/22 2/23 3/3 3/4 5/22 6/9 6/16 6/17 13/15 16/19 16/24 23/4 23/11 23/13 24/1 24/2 24/3 24/8 24/10 24/15 24/20 24/24 30/14 41/14 41/15 41/16 41/18
individuals [2]  9/10 9/11
infirm [1]  13/23
influence [3]  10/19 34/19 38/4
influences [2]  35/10 35/25
influencing [4]  36/2 36/6 38/19 39/1
inform [1]  51/2
informants [2]  10/3 10/25
information [6]  16/23 23/6 23/7 35/17 46/10 46/12
inquiries [1]  28/12
inside [1]  23/5
instance [2]  9/7 9/17
instructed [1]  31/15
instruction [2]  30/6 39/3
instructions [1]  31/14
integrity [2]  10/4 12/15
intending [1]  38/2
intends [1]  45/1
intent [7]  9/24 16/1 16/13 16/17 17/9 35/7 42/7
interested [1]  43/13
interesting [1]  3/17
interfere [5]  15/4 15/11 16/8 16/12 41/25
interference [1]  15/13
interpret [2]  8/19 40/13
interpretation [4]  9/2 31/7 34/3 37/8
interpretations [1]  40/8
intimidate [1]  41/25
introduce [2]  2/5
introduced [1]  25/4
inundated [1]  44/16
investigations [1]  28/11
involve [1]  13/2
irregularly [1]  19/23
irrelevant [1]  26/5
is [201]
isn't [13]  4/1 7/6 8/20 16/5 19/19 32/6 32/8 33/3 33/6 33/22 34/17 34/24 37/7
issue [11]  3/25 4/1 4/5 6/14 18/2 18/6 24/24 36/16 40/10 41/4 42/18
issues [8]  3/15 3/17 4/10 11/5 13/13 38/5 42/25 49/11

**I**

it [168]
it's [6]
items [1] 45/22
its [4] 16/20 16/24 30/18 32/16
itself [4] 13/15 14/3 16/16 17/2

**J**

James [1] 2/15
January [14] 6/2 8/21 9/8 9/19 9/20 10/16 13/5
 13/9 15/1 15/22 16/3 19/20 22/9 28/19
January 6 [5] 8/21 9/8 9/19 9/20 10/16
January 6th [8] 6/2 13/5 13/9 15/1 15/22 16/3
 19/20 28/19
Joe [1] 2/18
JOSEPH [4] 1/5 2/4 3/1 52/8
judge [21] 1/9 12/5 12/8 12/25 13/4 19/18 22/1
 28/10 29/1 29/2 29/16 29/20 30/4 31/13 32/17
 32/17 38/12 38/12 41/9 42/6 49/25
jumping [1] 47/22
jurors [3] 10/25 11/1 43/12
jury [7] 17/12 24/14 24/25 25/4 30/5 31/14
 31/17
just [58]
justice [3] 12/23 39/14 39/15

**K**

keep [1] 45/1
kick [2] 26/16 40/14
kind [11] 4/12 10/24 12/4 15/5 25/18 26/17
 28/18 28/23 31/20 44/11 45/6
kinds [1] 37/14
knew [1] 50/17
know [55]
knows [2] 37/13 42/21
Kollar [1] 29/2
Kollar-Kotelly [1] 29/2
Kotelly [1] 29/2

**L**

lack [1] 14/25
lacking [1] 24/20
land [1] 47/12
language [2] 15/2 15/5
last [1] 40/5
law [5] 15/11 15/16 15/24 23/10 40/18
lawful [1] 15/15
lawfully [1] 15/14
Leader [1] 22/11
least [13] 3/24 5/1 5/4 16/22 16/24 20/17 23/24
 28/12 32/6 32/21 34/24 37/7 46/18
leave [1] 18/8
legal [1] 17/13 28/16
legislative [10] 14/7 37/22 37/22 38/2 38/7
 38/22 39/8 39/18 39/21 39/23
lenity [2] 40/14 40/22
less [2] 45/8 45/15
let [10] 2/7 3/16 16/18 30/3 42/19 45/17 49/7
 49/7 49/16 50/22
let's [5] 14/15 22/17 29/15 40/24 50/24
level [1] 38/8
liability [1] 38/21
lie [5] 9/11 10/6 11/18 11/18 14/8
lied [1] 10/23
light [3] 3/23 47/10 47/14
like [32] 3/10 5/7 7/15 8/11 8/21 10/5 10/21
 10/22 12/4 14/5 15/23 16/22 17/17 17/21 17/24
 21/5 22/23 24/3 25/24 29/25 32/23 33/1 36/18
 39/3 39/16 39/17 40/3 44/21 45/6 45/6 46/2
 50/13
likely [3] 7/25 45/23 46/19
limine [1] 46/14
limit [4] 22/3 28/11 28/15 31/23
limitation [1] 28/18
limited [11] 14/4 19/15 20/9 20/9 20/24 22/15

---

22/16 24/7 24/10 37/23 39/19
line [7] 29/10 31/11 31/25 32/15 32/16 40/18
link [5] 32/17 32/18 32/19 32/19 32/20
Lisa [4] 1/20 52/3 52/21 52/22
list [1] 37/19
litigated [2] 13/13 46/25
little [9] 13/7 16/18 28/1 28/3 37/23 39/24
 46/17 47/8 50/12
live [1] 21/19
lives [1] 20/16
living [1] 22/16
location [4] 3/20 3/21 18/16 26/2
locations [1] 19/21
LOEB [9] 1/11 2/14 17/20 43/16 45/19 48/18
 50/14 50/15 51/21
long [1] 21/22
longer [1] 44/2
look [14] 10/2 10/4 10/4 10/18 11/1 11/14
 11/22 12/2 12/11 15/25 25/5 36/1 40/17 49/16
looked [1] 14/14
looking [5] 5/16 11/23 41/23 43/13 44/13
looks [1] 8/11
loophole [1] 36/17
LORI [2] 1/15 2/17
lot [4] 5/11 14/18 21/6 39/18
lying [6] 10/12 10/15 10/16 11/8 12/16 12/17

**M**

machine [2] 52/6 52/14
made [3] 28/12 29/8 46/6
make [12] 6/25 7/1 7/2 11/9 18/7 25/18 29/11
 29/14 30/6 35/19 35/24 49/2
makes [2] 28/1 33/17 37/6 46/16
making [7] 15/9 17/7 32/24 33/9 37/9 41/1
 41/3
manner [4] 33/16 34/11 34/13 34/19 35/9
 35/11
many [5] 19/21 21/3 26/25 36/11 36/19
March [5] 43/16 48/7 48/12 49/18 52/18
March 23rd [3] 43/16 48/12 49/18
mask [2] 2/9 2/13
masked [1] 2/10
masks [1] 2/8
massive [1] 25/24
matter [6] 8/15 21/22 21/22 23/10 40/10 49/9
may [26] 3/1 8/11 16/2 18/14 21/3 26/24 26/25
 28/4 31/19 33/18 34/9 36/16 41/15 43/2 43/23
 46/6 46/8 47/7 47/22 49/11 49/19 49/20 49/20
 49/22 50/24 51/17
May 3rd [3] 49/22 50/24 51/17
May 4 [1] 49/20
May 9th [1] 49/19
maybe [6] 9/22 25/10 27/3 37/3 38/13 48/10
McConnell [2] 22/11 22/12
McFadden [2] 12/5 12/8
McFadden's [1] 29/1
McHugh [1] 12/25
me [35] 2/7 2/11 2/15 3/16 3/18 6/4 7/9 8/15
 9/1 12/3 14/22 15/4 16/12 16/18 22/24 30/3
 30/18 30/19 33/21 34/6 35/2 42/19 42/22 42/25
 43/21 45/17 46/24 47/7 47/14 47/16 49/7 49/7
 49/16 50/18 50/22
mean [23] 4/2 5/8 6/20 6/22 8/9 9/3 13/22
 14/21 25/4 28/8 31/12 32/17 33/16 34/8 34/10
 36/21 37/2 37/18 38/7 39/11 45/1 45/4 45/22
meaning [1] 40/20
means [20] 13/21 19/15 20/15 20/19 21/3 22/24
 22/8 22/10 28/9 29/25 30/2 30/13 30/17 30/20
 31/19 31/25 33/16 33/22 34/11 48/12
meant [1] 10/8
mechanical [1] 1/25
Mehta [2] 28/10 38/12
member [1] 22/14
members [6] 5/20 6/3 18/6 18/10 23/1 23/25
mens [4] 41/9 42/5 42/6 42/9
mentioned [4] 23/12 26/21 29/1 41/2

---

mere [1] 16/14
mercy [1] 39/24
might [12] 3/9 16/3 16/21 18/13 19/6 29/4 33/7
 33/8 43/13 46/21 49/15 50/12
Miller [3] 8/16 32/6 43/3
milling [1] 16/21
ministerial [3] 13/11 29/7 29/12
minutes [2] 45/8 45/15
mishmash [1] 14/24
missed [2] 33/1 33/2
models [1] 28/12
month [1] 47/1
months [3] 47/17 51/11 51/12
more [21] 4/13 9/4 10/5 10/22 13/8 13/10
 13/21 14/18 15/10 16/23 43/6 43/25 44/4 45/2
 45/11 45/11 45/11 47/15 47/17 49/7 50/14
Moss [3] 32/17 32/17 38/12
most [3] 3/17 15/4 45/21
motion [40] 2/20 2/24 3/10 3/12 6/4 6/16 7/25
 22/24 24/3 25/3 42/20 42/22 43/1 43/5 43/8
 43/21 46/13 46/20 46/25 47/2 47/18 47/25
 47/25 48/7 48/9 48/12 48/18 48/19 48/20 48/22
 48/23 49/12 49/15 49/17 49/23 50/21 50/25
 51/1 51/5 51/15
motion's [1] 45/18
motions [5] 44/20 46/14 47/16 49/2 51/13
mouth [1] 22/20
move [2] 27/18 40/3
Mr [1] 16/20
Mr. [4] 2/20 2/22 17/4 44/13
Mr. Fischer [2] 2/22 44/13
Mr. Fischer's [2] 2/20 17/4
Ms [9] 42/15 46/1 47/6 49/4 50/5 50/11 50/15
 51/6 51/21
Ms. [2] 2/25 17/20 43/16 45/19 48/18 50/14
Ms. Loeb [5] 17/20 43/16 45/19 48/18 50/14
Ms. Ulrich [1] 2/25
much [6] 9/3 15/10 16/8 21/16 22/20 45/24
multiple [2] 13/3 13/4
mused [1] 40/9
mutilate [1] 35/6
mutilates [2] 30/20 37/4
mutilating [1] 32/25
mutilation [2] 34/16 36/4
my [34] 2/8 2/15 2/18 4/4 4/14 5/11 5/13 5/22
 9/4 9/5 12/25 14/19 16/13 16/14 16/14 19/22
 19/25 20/4 21/7 21/14 21/17 23/13 24/19 32/5
 32/21 40/4 43/14 49/16 50/11 51/1 52/6 52/14
 52/15 52/17
myself [1] 4/13

**N**

name [5] 6/17 23/10 24/20 24/21 52/18
names [1] 24/22
Nancy [1] 22/11
narrow [2] 26/20 28/24
nature [2] 18/13 32/16
nearly [1] 39/2
necessarily [2] 26/16 28/20
necessary [2] 12/22 33/14
need [14] 2/22 3/21 23/4 25/1 25/5 30/12 31/18
 38/23 38/24 46/15 47/4 50/20 50/25 51/7
needed [2] 24/1
needing [1] 27/25
needs [12] 24/20 24/21 24/22 24/23 27/21 29/9
 37/21 40/14 44/23 44/23 44/24 47/4
negotiations [1] 44/10
next [2] 49/10 51/11
NICHOLS [1] 1/8
no [26] 1/3 6/6 7/16 17/18 20/12 21/15 21/21
 21/22 22/22 24/19 26/14 27/17 28/14 36/1 36/1
 36/1 39/20 40/2 40/10 42/13 43/3 44/2 44/16
 49/6 50/13 51/7
non [1] 24/2
non-indictment [1] 24/2
none [1] 25/11

**N**

North [1] 29/20
not [111]
note [1] 2/7
noted [6] 12/8 12/21 19/18 22/1 28/10 41/10
notereading [1] 1/25
notes [2] 5/24 52/14
nothing [6] 6/7 13/10 13/12 28/9 51/19 51/22
notice [5] 23/4 23/15 23/16 23/20 40/22
now [16] 4/14 6/13 8/22 9/13 17/17 19/4 19/5
19/7 21/4 30/5 31/16 40/5 44/10 44/12 49/11
49/16
number [3] 35/15 45/23 52/9
numbers [1] 15/22
NW [2] 1/18 1/22

**O**

oath [4] 9/15 10/13 10/15 10/17
object [5] 34/22 35/3 35/14 36/9 49/5
objections [4] 29/8 29/9 29/11 29/13
objects [1] 34/15
obstruct [12] 10/19 15/3 15/8 15/11 16/1 16/7
16/10 16/13 16/17 32/13 34/19 35/25
obstructing [5] 10/16 15/24 16/15 36/2 36/6
obstruction [8] 15/13 15/22 16/15 31/21 33/10
38/3 39/14 39/14
obstructs [2] 35/9 36/5
obviously [12] 4/4 8/9 12/21 17/21 35/6 40/12
43/21 44/1 44/20 47/2 47/16 50/9
off [3] 2/9 2/13 7/19
offense [1] 39/12
offenses [1] 10/11
office [31] 1/11 4/20 4/21 4/24 5/2 5/2 5/3 5/10
5/11 5/13 5/17 6/22 19/5 19/10 19/17 19/19
20/21 21/2 25/9 25/11 25/12 25/13 25/18 26/3
26/5 26/7 26/9 26/22 26/24 27/8 27/11
officer [3] 15/12 15/16 46/9
officers [1] 46/6
offices [4] 5/8 26/21 26/23 26/25
official [37] 4/4 4/13 8/6 9/9 9/13 9/17 9/21
10/19 11/8 11/20 11/22 11/25 12/7 12/11 15/15
15/17 18/9 25/22 25/25 26/1 27/20 27/23 28/8
28/17 29/14 29/15 32/13 32/20 34/20 35/10
36/6 36/21 38/4 52/3 52/6 52/13 52/22
officials [2] 18/23 27/1
often [2] 19/13 39/13
Oh [2] 8/12 41/20
OHM [2] 1/18 2/18
okay [14] 4/12 4/17 7/23 8/2 8/3 9/7 13/2 14/15
27/16 34/18 43/19 48/11 51/9 51/10
Oncale [1] 39/25
one [41] 2/21 3/18 3/25 5/9 5/16 7/19 10/10
12/4 12/24 13/1 13/6 14/16 14/16 14/17 16/9
18/7 18/12 18/15 18/19 19/17 23/12 24/2 26/1
26/1 26/20 27/13 27/14 28/4 35/16 37/3 37/16
38/10 38/16 38/17 40/5 40/11 40/24 45/15 47/6
47/7 49/7
ongoing [3] 46/1 47/10 49/1
only [8] 7/20 18/18 23/17 23/19 26/2 26/14
26/16 49/12
operation [2] 36/8 48/18
opinion [6] 12/24 13/1 29/2 29/18 31/11 43/2
opinions [4] 4/14 13/7 14/2 38/11
oppose [1] 41/24
opposing [1] 2/12
opposition [1] 48/13
oral [3] 1/8 3/11 52/7
orally [1] 43/5
order [2] 17/20 17/23
ordinary [1] 40/19
original [1] 37/17
originally [1] 38/9
other [37] 5/22 7/3 7/13 7/24 8/5 10/11 12/3
12/7 13/6 14/2 14/8 19/21 21/20 21/21 22/14
23/13 23/21 24/5 24/24 26/21 26/23 28/4 33/23

others [1] 16/21
otherwise [22] 2/10 20/18 29/17 30/8 30/20
31/8 32/18 32/19 33/12 33/13 33/23 33/25 34/4
34/10 34/18 34/25 35/9 36/5 36/7 36/8 42/12
47/20
our [29] 4/15 4/20 4/23 5/15 6/10 6/19 9/18
12/20 13/9 13/11 13/19 14/12 17/1 17/14 18/7
18/14 19/11 19/16 20/6 29/13 33/3 41/13 42/12
43/15 44/10 44/25 45/6 45/13 46/15
out [11] 4/6 5/2 12/9 20/13 20/18 25/19 28/24
34/13 40/11 40/25 44/15
over [4] 4/22 5/17 13/14 37/19 45/24
overbroad [1] 13/22
overlap [2] 36/16 36/20
overturn [1] 13/12
own [2] 19/25 20/2
Oxley [3] 10/8 37/17 38/5

**P**

p.m [5] 1/6 49/22 49/24 49/25 50/24
pages [1] 52/12
parsed [1] 30/16
part [5] 3/25 5/4 14/5 26/23 31/20
particular [9] 4/10 18/12 18/16 19/16 20/24
25/14 26/3 26/3 35/7
particularly [1] 47/10
particulars [1] 23/8
parties [7] 9/14 13/8 28/22 28/23 49/8 49/21
51/2
parties' [1] 48/11
party [2] 28/22 39/1
pass [1] 47/17
pause [1] 41/11
Pearce [1] 2/15
Pelosi [1] 22/11
penalties [1] 38/11
penalty [1] 38/10
Pence [9] 3/19 7/24 19/4 22/17 23/14 23/17
23/17 23/19 37/23
Pence's [3] 5/19 6/14 7/21
pendency [1] 43/21
pending [3] 44/21 47/2 48/18
Pennsylvania [1] 1/16 50/16
people [13] 10/24 12/16 12/16 15/8 15/23
16/11 16/25 18/22 19/1 28/21 35/19 36/2 37/11
perceived [1] 16/10
percent [1] 46/21
perfectionary [1] 15/15
perhaps [2] 35/24 38/12
perimeter [2] 7/15 26/16
period [1] 49/13
periods [1] 49/21
periphery [1] 16/4
perjury [1] 11/8
permanent [2] 21/18 21/20
permits [1] 31/7
person [12] 6/17 15/12 24/21 24/23 26/6 27/3
35/16 50/9 50/11 50/13 50/20 50/24
personally [2] 11/18 14/8
persons [1] 12/12
pertains [1] 2/7
phone [1] 8/7
Pick [1] 34/17
picked [1] 37/9
place [6] 10/22 18/19 19/15 21/19 21/21 27/10
plain [4] 4/19 5/14 28/8 39/19
plainly [1] 7/17
plea [3] 3/4 44/10 44/15
plead [1] 3/7
pleading [2] 23/4 23/15
please [3] 2/4 2/25 27/19
podium [3] 2/9 2/11 3/10
Poindexter [5] 10/23 11/16 14/2 14/3 14/5
point [16] 4/11 8/8 12/13 15/21 18/7 18/11

points [2] 18/1 42/10
populated [1] 46/8
position [15] 4/15 4/23 5/15 6/11 6/19 9/18
11/7 13/9 13/12 13/19 14/12 15/6 17/14 19/11
19/16
possibility [1] 46/18
potential [2] 24/24 43/11
practice [1] 45/18
preempt [1] 17/23
preference [1] 50/11
preliminarily [1] 43/20
premature [1] 46/17
prep [1] 44/9
preparation [1] 49/1
presence [5] 6/14 16/14 24/18
present [5] 9/16 10/6 16/11 43/9 44/4
presented [2] 8/16 10/24
presenting [1] 11/24
presents [1] 42/22
president [40] 3/19 3/23 3/25 4/16 4/20 5/15
5/19 6/1 6/13 6/21 7/6 7/10 7/21 7/24 18/14
18/17 19/3 19/4 19/6 20/10 20/15 20/20 22/21
22/25 23/14 23/16 23/17 23/19 23/20 23/24
25/9 25/13 25/25 26/2 26/13 26/21 26/24 27/5
27/10 27/11
president's [8] 7/5 18/6 19/19 20/21 22/22
24/17 26/9 26/22
presidential [1] 20/16
presides [1] 5/17
presiding [1] 4/22
presumably [2] 9/15 9/15
pretrial [2] 48/23 49/1
pretty [9] 8/8 8/17 14/22 16/8 18/8 35/2 37/3
45/24 47/5
prevent [2] 9/22 39/4
primary [1] 38/21
principal [1] 40/1
principally [2] 2/20 40/6
privilege [2] 30/25 31/6
probably [2] 21/5 50/14
problem [1] 42/4
problems [1] 38/17
proceed [1] 2/24
proceeding [40] 4/4 4/13 8/6 9/9 9/13 9/18
9/21 10/19 11/9 11/20 11/22 11/22 11/25 12/1
12/7 12/11 27/20 27/22 27/23 27/25 28/4 28/6
28/8 28/11 28/15 28/16 28/23 29/3 29/4 29/14
29/16 32/13 32/20 34/20 35/10 36/3 36/6 36/21
39/4 39/5
proceedings [12] 1/25 4/3 7/8 10/4 12/15 28/2
29/12 38/4 51/24 52/6 52/13 52/15
process [1] 12/23
produced [1] 1/25
production [2] 47/3 51/15
prohibited [1] 38/19
prohibiting [1] 15/13
prohibition [4] 26/15 32/10 33/8 38/25
prohibitions [2] 27/14 39/2
promises [1] 43/3
prong [1] 12/7
proposal [1] 48/11
propose [3] 43/14 43/19 49/22
proposed [2] 38/9 43/14
prosecute [1] 39/13
prosecuted [1] 12/10
prosecutions [1] 36/19
protect [7] 10/3 10/3 12/15 12/22 18/24 27/13
27/13
protectee [2] 23/5 23/11
protectees [3] 23/14 23/22 25/17
protecting [1] 18/9 26/12
protection [2] 26/15 26/18
prove [1] 6/15
provide [2] 25/16 28/14

**P**

provision [1] 38/16
provisions [1] 37/17
public [9] 1/14 1/17 18/8 18/22 25/22 25/25 26/1 26/25 43/10
purely [2] 29/12 31/24
purpose [15] 1/12 12/14 12/18 16/13 19/16 20/9 20/24 22/16 27/22 29/24 30/13 31/2 31/3 31/19 37/25
purposes [3] 6/15 24/3 44/4
pursuing [1] 7/18
push [1] 25/8
pushing [2] 47/6 47/7
put [4] 16/18 16/23 22/19 35/12

**Q**

qualify [5] 24/22 27/22 28/20 31/1 41/6
question [14] 4/2 6/20 7/1 7/5 9/5 9/5 26/8 40/5 42/23 43/23 44/25 45/19 49/7 50/10
questions [11] 3/16 13/18 14/19 17/22 24/4 27/18 40/2 40/12 42/11 42/17 50/10
quickly [1] 51/2
quite [2] 8/14 51/11

**R**

raises [1] 24/23
Ramos [2] 12/19 28/5
ranks [1] 15/5
rather [1] 37/6
RDR [1] 1/20
re [3] 11/22 14/4 48/21
re-look [1] 11/22
re-looked [1] 14/4
re-tolling [1] 48/21
rea [4] 41/9 42/5 42/6 42/9
read [6] 4/7 25/18 29/17 30/4 31/11 42/8
readily [1] 40/20
reading [6] 3/3 4/9 4/19 32/6 32/8 32/12
ready [1] 28/12 46/21
ready-made [1] 28/12
realize [1] 30/5
really [23] 4/2 4/3 4/5 4/25 6/11 9/4 10/7 10/8 10/21 11/4 13/10 14/18 15/8 17/9 17/10 28/1 32/15 33/22 35/24 39/20 46/12 47/15 48/15
reason [5] 25/22 30/15 31/18 39/20 44/1
reasonable [3] 33/4 37/7 40/13
reasons [3] 13/19 26/10 51/12
rebuttal [3] 3/13 17/17 42/17
recall [1] 38/12
receipt [1] 51/14
received [1] 3/2
recognized [1] 13/7
recognizing [1] 49/11
recollection [1] 23/13
record [23] 2/5 3/1 6/4 30/21 32/25 34/22 35/3 35/14 35/14 36/4 36/9
recorded [1] 1/25
records [2] 9/10 34/14
refers [1] 28/16
Reffitt [2] 30/1 31/13
reflect [1] 3/1
regarding [1] 35/24
regular [2] 19/19 21/17
regularly [1] 5/2
regulatory [1] 12/8
reject [1] 12/25
rejected [3] 12/3 14/13 29/8
rejecting [1] 4/14
relate [1] 36/2
related [3] 38/17 38/20 46/10
relates [5] 15/14 22/23 34/21 36/8 37/14
relating [1] 36/18
relativity [1] 46/8
relevant [6] 17/13 23/15 42/25 43/21 46/3 46/11

rely [3] 24/2 24/17 42/12
relying [1] 24/17
removing [1] 27/15
renewed [3] 48/22 49/17 51/14
reply [4] 43/24 51/4 51/6 51/8
report [2] 46/12 51/14
reported [1] 52/5
reporter [5] 1/20 2/12 52/1 52/3 52/22
reports [1] 45/24
require [3] 30/8 31/22 36/21
required [3] 23/10 29/14 42/17
requirement [4] 28/2 28/10 30/16 42/9
requires [4] 29/17 31/7 31/8 41/5
residence [3] 20/16 21/18 21/20
residual [7] 32/7 32/12 32/15 32/16 32/21 33/2 33/5
resist [2] 26/19 41/24
resisting [1] 46/7
resolution [1] 51/13
resolve [1] 44/15
resort [2] 37/22 39/20
respect [3] 11/7 34/14 35/16
respond [2] 42/5 42/11
responding [1] 18/1
response [2] 43/17 49/18
rest [2] 41/23 45/13
restricted [1] 25/12
resurrect [1] 44/11
reverse [1] 14/10
review [2] 47/4 51/15
right [25] 7/12 8/4 8/22 11/6 11/11 16/18 21/3 24/12 27/2 27/16 31/2 31/4 31/4 31/10 31/12 31/16 31/17 31/17 32/5 35/9 36/25 37/4 41/24 44/10 44/12
rioter [1] 12/6
RMR [1] 1/20
role [6] 3/24 7/7 12/22 18/20 22/22 26/4
rule [1] 40/22
run [1] 35/1 36/16

**S**

safe [1] 50/2
said [17] 3/18 3/22 8/23 12/11 13/11 13/4 14/3 17/16 30/4 32/17 33/19 34/11 46/1 48/17 52/9 52/13 52/15
same [2] 33/24 37/5
San [1] 1/13
Sarbanes [3] 10/8 37/17 38/5
Saturday [1] 5/13
saw [1] 51/14
say [23] 3/16 8/23 10/1 14/18 16/1 16/16 17/17 22/19 23/14 23/18 24/1 24/19 26/11 27/6 30/19 31/3 32/22 34/2 34/8 34/18 36/1 37/8 50/10
saying [7] 17/8 24/19 27/3 35/18 36/8 39/14 45/2
says [10] 13/15 16/7 23/14 28/9 32/18 35/8 36/4 36/7 37/4 37/5
scenario [1] 41/2
schedule [5] 44/3 44/15 47/1 47/13 51/10
schedules [1] 46/16
scope [1] 35/17
search [1] 46/9
second [3] 4/1 22/18 41/11
Secret [9] 7/14 7/18 18/23 23/5 23/10 23/22 25/17 26/12 27/12
section [5] 11/4 28/13 40/3 41/2 42/10
security [1] 15/7
see [2] 33/5 50/20
seeing [1] 41/16
seemed [1] 30/17
seems [13] 7/9 9/11 14/22 21/5 33/21 35/2 39/16 43/20 46/2 46/17 46/24 47/7 47/14
selection [1] 31/17
Senate [12] 3/24 3/25 4/22 5/3 5/18 7/6 19/4 19/8 19/9 19/10 22/23 25/11
Senator [2] 22/11 39/11

sense [7] 6/18 20/18 23/15 25/18 28/1 35/24 37/24
sentencing [1] 49/24
separate [3] 5/8 5/8 29/10
serve [1] 49/15
serves [2] 32/18 32/19
Service [9] 7/14 7/18 18/23 23/5 23/11 23/22 25/17 26/12 27/12
set [8] 24/8 26/25 46/22 47/4 47/8 49/9 49/14 51/4
seven [1] 3/4
seven-count [1] 3/4
several [2] 27/5 27/23
she [9] 19/6 19/12 19/13 27/7 27/8 31/12 41/2 41/3 47/6
she's [3] 41/1 43/17 50/14
sheer [1] 15/22
shorthand [2] 52/6 52/14
shortly [1] 37/18
should [11] 2/9 9/1 30/8 31/1 37/22 46/25 48/24 49/3 49/25 51/4 51/18
shouldn't [2] 9/4 50/4
show [3] 5/1 19/13 37/13
shredding [2] 39/13 39/17
side [2] 5/4 5/5
significant [2] 34/10 44/22
Silverman [1] 29/20
similar [2] 8/16 35/19
simply [2] 33/19 41/8
single [4] 20/21 21/21 22/10 23/5
situation [2] 18/17
slightly [2] 8/16 31/24
small [3] 45/8 45/15 45/23
so [108]
some [23] 4/11 5/22 9/2 10/6 10/22 16/2 16/23 17/21 20/17 22/2 22/6 23/19 24/5 30/23 32/16 37/11 40/12 42/17 45/23 46/4 46/10 46/15 47/15
somebody [5] 7/24 9/21 10/5 22/21 39/3
someone [11] 7/6 10/10 11/18 24/21 25/20 34/13 38/19 39/4 41/2 41/17 44/3
something [15] 9/22 10/17 10/22 13/17 16/21 17/11 24/1 29/14 29/25 33/1 33/3 34/9 34/14 35/12 35/13
sometime [2] 43/23 49/10
somewhere [3] 22/5 25/9 25/12
soon [1] 44/14
sorry [4] 35/1 41/15 41/20 41/23
sort [6] 26/12 32/21 33/7 37/10 38/20 43/8
sought [1] 23/8
spaces [1] 26/25
speaking [1] 5/25
specific [9] 7/4 14/19 15/10 15/12 17/22 33/3 42/7 42/16 45/21
Specifically [1] 14/24
specificity [1] 23/9
specify [2] 23/4 24/23
speech [1] 15/7
speedy [3] 47/23 48/16 51/17
spend [2] 21/3 21/16
spoliation [1] 36/23
stalled [1] 44/11
standing [3] 41/3 41/5 41/8
standpoint [3] 45/1 45/6 45/13
stands [1] 44/1
start [5] 4/15 4/15 4/18 20/4 45/19
starting [1] 18/2 27/20 49/19
state [1] 13/13
statement [2] 39/7 39/25
statements [3] 11/10 36/18 39/24
STATES [11] 1/1 1/3 1/9 1/11 1/21 2/3 2/15 8/15 12/4 52/4 52/8
status [9] 3/23 7/21 46/12 49/9 49/15 49/19 49/22 50/24 51/3
status/argument [1] 49/19
statute [42] 4/19 6/18 6/24 7/4 7/13 8/7 8/19

**S**

statute... [35]  9/2 10/2 10/2 11/16 12/22 13/23 14/25 16/3 16/5 16/15 16/16 17/2 17/5 17/8 18/8 18/13 18/21 18/25 25/16 26/18 26/23 30/7 32/4 33/15 33/19 33/22 37/14 38/3 38/19 40/14 41/5 42/3 42/7 42/9 48/21
statutes [2]  11/8 39/25
statutory [1]  7/7
stay [2]  2/10 3/10
stayed [1]  48/10
stenography [1]  1/25
step [2]  13/1 13/6
steps [1]  26/17
still [6]  18/24 27/13 35/13 42/23 47/15 47/16
stipulated [1]  6/15
stop [3]  10/22 39/5 48/2
stopping [1]  9/24
stormed [2]  9/21 9/23
storming [2]  10/10 10/21
story [1]  14/6
strange [2]  18/24 18/25
Street [1]  1/15
strengthens [1]  39/12
strike [1]  25/3
struck [1]  12/24
structure [1]  18/14
struggling [1]  11/6
stuff [3]  35/8 35/20 47/15
subpoenaed [1]  28/21
subpoenaing [2]  9/10 9/10
subscribed [1]  52/17
substantially [1]  47/20
substantive [1]  50/9
such [2]  26/11 27/14
sudden [1]  26/11
sufficient [4]  9/25 16/6 40/22 42/1
sufficiently [3]  13/22 13/23 42/3
suggest [4]  16/23 38/23 49/2 49/14
suggested [2]  37/24 46/6
suggesting [2]  32/9 47/1
suggestion [1]  38/1
suggests [2]  23/16 24/7
sui [3]  18/16 18/16 18/16
Suite [2]  1/16 1/19
Sullivan [1]  49/25
superseding [5]  2/21 2/23 3/2 3/4 24/14
supplement [1]  43/15
supplemented [3]  44/21 48/12 48/19
supposed [2]  5/5 25/16
Supreme [1]  31/21
sure [8]  30/4 31/14 32/24 35/19 37/9 43/6 45/12 50/3
surplusage [1]  40/10
survey [2]  43/11 48/13
suspended [1]  43/8

**T**

take [8]  2/9 2/13 16/19 17/21 42/20 43/1 47/17 49/10
taken [2]  26/17 52/14
taking [1]  43/22
talk [6]  9/3 14/15 42/18 43/9 45/18 46/15
talked [2]  43/16 48/25
talking [15]  6/2 7/4 7/6 7/24 22/21 23/16 27/25 28/6 31/6 32/22 32/24 35/21 45/14 45/14 47/18
tangible [1]  35/17
tape [1]  52/15
tell [1]  42/19
temporal [1]  22/3
temporarily [34]  3/19 3/22 3/23 4/17 4/23 5/12 5/13 5/14 5/15 6/1 6/17 6/21 18/2 18/15 19/7 19/15 19/17 19/22 19/25 20/7 20/10 21/1 21/8 21/12 21/21 21/23 22/6 22/12 23/1 23/24 25/20 26/6 27/4 27/7
temporary [7]  7/5 20/5 20/15 20/19 20/22 21/6

21/14
21/15 21/24 30/25 38/10
term [4]  28/16 34/10 40/18 40/21
terms [11]  25/19 30/18 33/3 34/18 37/19 40/15 40/19 42/2 43/4 44/7 47/23
testimony [1]  52/7
text [4]  28/8 28/14 28/25 39/19
than [14]  7/24 13/6 13/11 15/3 16/23 21/20 31/24 33/6 33/19 34/21 39/6 44/21 45/8 45/15
Thank [17]  3/9 17/15 17/18 17/19 17/25 27/16 40/24 41/20 42/13 42/14 42/15 43/10 45/18 51/20 51/21 51/22 51/23
that [384]
that's [53]
their [29]  9/10 40/15 43/17 45/12
them [11]  4/12 9/16 10/19 12/17 27/10 27/13 27/13 35/20 40/1 40/17 44/12
then [43]  2/24 3/13 7/21 7/23 8/5 10/17 11/3 12/19 12/24 13/4 14/6 14/7 14/10 15/14 17/6 17/13 24/13 26/8 29/11 32/3 34/18 36/4 36/15 37/5 39/24 43/6 43/16 43/22 44/2 45/18 46/21 46/22 48/1 48/7 48/11 48/19 48/21 49/11 49/17 49/18 49/19 50/1 51/1
there [91]
there's [13]  5/11 10/11 12/3 15/23 24/8 25/12 26/16 28/9 28/14 29/10 40/16 45/2 45/11
thereafter [1]  37/18
therefore [1]  4/23
thereof [1]  51/16
these [7]  18/22 24/12 25/21 39/16 44/16 44/20 45/2
they [38]  4/5 4/7 6/12 6/14 6/16 6/23 9/9 9/10 9/11 9/15 9/16 11/3 11/16 11/19 11/19 11/21 11/21 11/23 12/6 12/10 12/11 12/21 13/14 13/16 14/6 14/7 14/10 22/11 27/10 29/10 29/11 38/14 45/3 45/4 45/10 46/7 46/8 46/9
they're [3]  10/6 22/15 22/16
they've [1]  6/10
thing [3]  11/14 11/19 44/6
things [3]  3/17 4/10 17/21 17/22 24/2 24/13 36/5 36/18 39/17 44/5 45/20 46/2 46/11 51/18
think [84]
thinking [7]  17/22 32/22 33/4 33/20 34/9 39/16 49/17
third [1]  39/1
this [69]
those [21]  4/10 6/4 7/9 7/20 9/11 10/2 13/18 24/13 29/11 31/14 34/17 35/13 36/5 37/6 37/13 37/14 37/19 38/23 41/25 42/10 49/21
though [6]  4/13 5/11 13/5 14/12 16/22 28/15
thought [6]  5/25 6/3 17/25 22/25 23/23 50/8
thoughts [2]  43/25 44/8
thousand [1]  16/11
thousands [1]  15/23
threat [1]  9/22
Three [1]  2/21
threw [1]  5/23
through [10]  10/23/8 30/19 31/8 33/3 36/3 38/11 42/23 47/3 48/6
tie [1]  19/6
time [15]  3/13 3/24 17/17 19/15 20/8 20/9 20/24 21/16 21/24 30/6 38/9 43/9 46/15 49/3 51/16
timetable [1]  45/12
today [17]  17/14 42/24 43/5 47/5 48/17 51/13 51/18
today's [1]  51/17
together [4]  4/7 4/7 49/8 52/14
toll [3]  48/1 48/16 51/16
tolled [2]  47/24 48/17
tolling [3]  48/4 48/10 48/21
too [2]  26/21 46/16
tool [1]  27/15
tools [1]  27/13
track [1]  44/12
transcript [3]  1/8 1/25 52/13

transferred [1]  44/2
treat [1]  47/6
treated [1]  48/22
trespassing [1]  27/14
trial [17]  6/13 17/12 24/7 44/3 44/9 44/12 44/14 44/16 46/21 46/22 46/22 47/5 47/8 47/23 48/16 49/18 51/17
tribunal [2]  12/12 12/17
tried [1]  44/6
trigger [2]  26/17 40/22
troubling [1]  15/4
true [5]  10/12 24/12 27/11 28/5 37/16
trying [5]  6/9 8/18 20/14 20/18 34/19
turn [1]  45/24
two [12]  3/17 4/10 7/20 13/8 38/17 41/18 42/25 47/1 47/17 50/4 51/11 51/11
two-month [1]  47/1
type [2]  23/6 23/7
typical [1]  3/11

**U**

ULRICH [10]  1/15 2/18 2/25 42/15 46/1 47/6 49/4 50/5 50/11 51/6
Um [2]  34/23 35/4
Um-hum [2]  34/23 35/4
unclear [2]  14/9 14/21
under [16]  6/24 8/9 9/12 9/15 10/2 10/7 10/12 10/15 10/16 12/7 12/10 36/11 42/8 42/20 43/1 51/16
understand [14]  5/3 8/14 8/17 8/18 17/5 20/15 20/17 20/19 25/6 25/23 27/5 27/16 30/16 38/18
understanding [1]  4/20
undisputed [1]  24/8
unique [2]  18/13 18/19
UNITED [11]  1/1 1/3 1/9 1/11 1/21 2/3 2/15 8/15 12/4 52/4 52/8
unlawful [14]  29/17 29/21 29/22 29/23 30/8 30/9 30/12 30/14 30/17 30/20 31/8 31/18 31/20 31/25
unless [4]  17/16 32/16 32/16 42/17
unprotected [2]  18/9 18/12
untethered [1]  32/9
until [2]  29/11 47/19
up [13]  7/17 14/7 15/5 19/4 30/5 32/6 37/6 42/6 43/22 46/2 47/17 49/8 49/10
upheld [1]  36/11
upon [1]  52/7
upper [1]  22/2
us [7]  6/23 12/18 14/9 17/12 43/6 45/5 45/9
use [2]  32/8 33/3
used [3]  6/18 35/18 39/13

**V**

vague [9]  13/22 14/6 14/13 14/14 15/7 17/8 32/2 32/3 32/4
vagueness [6]  17/2 17/6 17/7 40/16 41/4 42/3
value [1]  39/24
various [3]  40/8 46/15 51/12
venue [22]  42/18 43/8 43/14 43/23 44/1 46/13 46/19 46/25 47/13 47/17 47/25 48/11 48/19 49/12 49/15 49/17 49/23 50/10 50/25 51/1 51/5 51/14
verb [1]  34/17
verbs [6]  35/13 35/18 35/23 37/5 37/6 37/9
versions [1]  38/19
versus [4]  2/4 8/16 12/5 52/8
very [17]  7/25 15/12 18/16 18/19 18/19 19/13 21/12 22/20 28/1 28/2 34/10 37/23 43/21 45/3 45/4 45/8 51/1
vice [45]  3/18 4/16 4/20 5/15 5/19 5/25 6/13 6/21 7/5 7/9 7/21 7/24 18/6 18/14 18/17 19/3 19/4 19/6 19/19 20/10 20/15 20/16 20/20 20/21 22/21 22/22 22/25 23/14 23/16 23/17 23/19 23/20 23/24 24/17 25/9 25/13 25/25 26/2 26/8 26/13 26/20 26/21 26/24 27/5 27/10
victims [2]  10/25 12/22

## V

videotapes [1] 46/4
view [26] 2/8 4/8 9/4 9/5 9/25 13/20 13/21
15/19 16/19 19/3 20/6 20/19 20/19 22/24 24/19
26/5 27/9 29/13 30/10 33/11 33/14 33/23 37/3
40/13 41/25 47/12
views [1] 34/25
violate [1] 33/8
violates [2] 33/18 33/19
virtual [1] 51/3
vis [2] 26/13 26/13
visit [10] 5/2 5/16 6/1 7/5 19/17 20/15 20/19
20/22 21/8 23/24
visited [1] 25/20
visiting [30] 3/19 3/22 3/23 4/17 4/24 5/12 5/13
5/14 6/18 6/21 18/3 18/15 19/7 19/15 19/15
19/22 19/25 20/3 20/7 20/11 21/1 21/12 21/21
21/24 22/7 22/12 23/1 26/6 27/4 27/7
visitor [2] 21/6 21/14
visits [2] 20/4 20/5
voluminous [2] 45/3 49/1
vote [2] 16/12 19/5

## W

wait [3] 8/23 37/2 47/8
waive [1] 3/3
want [18] 4/11 7/12 12/16 12/16 12/17 17/23
18/7 25/15 30/11 40/4 42/17 43/24 46/8 46/8
46/14 46/21 49/19 51/6
wanted [8] 23/9 28/11 37/19 40/5 40/25 42/11
47/11 47/12
wants [2] 39/3 39/5
was [58]
Washington [3] 1/4 1/19 1/22
wasn't [4] 6/15 22/25 37/10 47/6
waterfront [1] 37/10
way [10] 8/18 24/25 28/22 33/4 34/13 34/20
34/25 35/12 39/10 39/20
ways [2] 35/16 37/11
we [88]
we'd [1] 44/3
we'll [3] 2/24 27/18 48/7
we're [33] 2/20 5/16 6/2 6/20 7/5 7/16 7/17
7/17 8/9 11/4 12/15 14/9 15/9 17/2 17/7 17/8
22/21 23/9 23/16 32/22 32/23 33/1 35/18 35/19
35/21 44/11 44/12 44/13 44/19 45/14 45/14
46/21 47/18
we've [2] 45/21 48/25
weaker [1] 22/20
week [2] 20/5 49/20
weird [1] 30/19
well [24] 3/9 5/21 6/12 8/8 8/15 8/17 10/1
10/14 11/14 14/8 14/16 14/23 15/21 17/7 24/1
30/11 30/23 31/13 32/15 34/12 35/23 36/10
37/2 45/4
went [7] 12/6 13/1 13/6 14/7 19/4 20/20 27/6
were [16] 4/3 4/5 11/23 15/24 20/3 21/11 21/11
23/2 25/3 25/4 27/6 38/23 42/10 44/2 46/7
50/18
weren't [2] 13/5 42/8
West [1] 20/20
what [49] 3/11 3/21 4/6 4/8 5/19 7/4 8/18 8/19
9/5 9/18 10/25 11/1 11/4 11/6 11/22 13/20 14/2
14/9 14/25 15/21 15/25 16/10 17/5 20/15 20/19
21/6 25/3 25/20 28/3 28/9 29/3 33/11 33/22
35/11 35/21 37/8 37/24 43/14 43/18 43/25
44/14 45/9 45/10 45/12 45/15 46/20 46/24
47/18 49/17
what's [3] 8/12 16/5 33/24
whatever [3] 3/20 35/20 44/1
when [27] 5/9 5/11 10/2 10/4 10/20 11/1 11/2
11/14 11/18 11/19 11/21 12/2 14/4 15/25 20/4
20/5 21/17 25/20 26/16 27/10 29/9 37/1 37/9
37/16 43/4 43/6 48/19
where [18] 5/17 10/23 14/24 18/19 19/1 25/2

26/2 40/10 42/19 43/25 44/6 44/23 44/24 45/20
whereof [1] 52/17
view [26] 20/21 44/5
whether [17] 3/18 3/22 4/2 4/3 4/16 6/21 7/13
11/9 16/4 26/8 26/15 33/20 35/21 40/12 40/16
40/17 43/23
which [28] 11/4 12/6 12/12 16/12 18/7 24/8
25/19 25/22 26/22 28/5 29/2 29/17 31/11 33/6
33/7 35/16 36/18 37/11 38/5 39/24 40/6 40/8
40/9 42/20 42/23 43/8 47/15 48/12
while [4] 13/5 18/9 38/23 47/8
White [5] 4/21 20/11 20/12 20/17 26/22
who [17] 5/20 6/17 7/6 7/7 16/21 16/25 22/21
23/5 24/21 24/23 28/21 35/19 39/3 39/5 41/2
46/4 46/7
whoever [8] 2/8 30/19 34/18 35/9 35/11 36/5
36/7 37/4
whole [3] 13/23 14/5 14/8
why [18] 2/23 11/2 14/21 16/5 17/15 21/16
31/18 32/6 32/8 33/3 33/5 34/12 34/24 36/20
37/7 43/9 48/10 50/23
wife [1] 7/8
will [11] 4/11 4/14 13/11 17/17 43/2 43/6 45/22
45/23 48/6 48/12 49/12
windows [1] 49/21
Wing [1] 20/20
wise [1] 45/20
wish [2] 3/3 3/6
withdrawing [1] 7/17
withdrawn [1] 7/25
withhold [1] 31/5
within [6] 16/4 35/17 47/25 49/10 49/13 49/21
without [2] 28/24 38/4
witness [1] 52/17
witnesses [3] 10/3 10/25 12/23
won't [1] 50/10
word [6] 10/18 14/6 14/13 32/19 33/12 33/25
words [5] 22/19 23/13 24/24 33/23 48/3
work [12] 4/6 5/2 20/16 20/20 21/22 26/25
30/17 30/24 33/11 34/7 47/3 50/5
worked [1] 19/5
working [4] 21/17 42/23 45/3 45/4
world [3] 18/18 21/21 26/6
worried [2] 36/2 37/9
worry [2] 38/5 38/24
worrying [1] 44/3
would [105]
wouldn't [6] 5/7 6/12 18/17 28/20 35/17 41/6
wrap [1] 49/8
writing [1] 43/2
wrong [1] 31/22
wrongfulness [1] 31/24

## Y

Yakou [1] 24/7
Yeah [4] 7/12 30/15 34/5 44/18
year [4] 2/3 21/23 22/10 38/3
years [2] 22/6 38/10
yes [43] 3/5 5/6 6/20 7/11 7/22 8/1 8/1 14/17
18/4 18/21 18/23 19/9 19/11 19/11 19/24 20/2
20/3 20/23 21/4 21/5 21/8 21/10 21/25 21/25
22/13 22/15 23/3 27/19 29/19 30/1 36/24 41/12
41/20 42/2 47/22 48/5 48/8 48/15 48/24 50/6
50/16 50/19 50/19
yet [1] 46/5
you [112]
you'd [4] 7/10 17/17 17/21 17/24
you're [8] 2/11 5/10 20/6 20/7 20/8 20/8 22/6
35/8
you've [2] 9/13 26/10
your [63]
yourselves [1] 2/5

## Z

zone [1] 18/5

**EXHIBIT A**