IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | 1:21-CR-618-ABJ |
| | : | |
| v. | : | |
| | : | |
| RILEY JUNE WILLIAMS | : | |

**MOTION FOR RELIEF UNDER 18 § U.S.C. 3582(c)(2) BASED ON AMENDMENT 821 TO THE GUIDELINES MANUAL**

Riley June Williams, by and through her counsel, respectfully moves this Honorable Court to reduce her term of imprisonment due to a retroactively applicable amendment to the U.S. Sentencing Guidelines impacting "zero-point offenders." *See* Amend. 821 (Part B), U.S.S.C. (eff. Nov. 1, 2023). Ms. Williams is eligible for relief under Amendment 821, which has the effect of reducing her applicable guideline range. Moreover, a reduction in her term of incarceration is consistent with the § 3553(a) factors and the applicable policy statement in U.S.S.G. § 1B1.10. The government has indicated that it will oppose this motion.

**I.      PROCEDURAL AND RELEVANT FACTUAL BACKGROUND**

On November 21, 2022, after a multiple day trial, a jury returned a mixed verdict as to Ms. Williams. (Doc. 128). The jury found her guilty of Civil Disorder, in violation of 18 U.S.C. §231(a)(3) (Count 1), Resisting or Impeding Certain Officers, in violation of 18 U.S.C. § 111(a)(1) (Count 3), Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1) (Count 5), Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2) (Count 6), Disorderly Conduct in a Capitol Building or Grounds, in violation of 40 U.S.C. § 5104(e)(2)(D) (Count 7), and Parading,

1

Demonstrating or Picketing in a Capitol Building or Grounds, in violation of 40 U.S.C. § 5104(e)(2)(G) (Count 8).  The jury could not reach a verdict on Count 2, Obstruction of an Official Proceeding (18 U.S.C. § 1512(c)(2)), or Count 4, Aiding and Abetting Theft of Government Property (18 U.S.C. §§ 641, 2). The government thereafter dismissed those counts. (Doc. 125 and Minute Order dated 12/5/22).

On March 23, 2023, the Court held a sentencing hearing.  (Sentencing Transcript, Doc. 150). Prior to sentencing Ms. Williams, the Court made oral rulings on extant objections to the Presentence Investigation Report ("PSR") concerning the applicable sentencing guidelines and discussed the 18 U.S.C. § 3553(a) sentencing factors as applied to Ms. Williams.  Relevant to the instant motion, some of the Court's pre-sentencing rulings[1] are cited here:

1)	The Court declined to accept or rely on Paragraphs 20 to 34 ("Offense Conduct") of the PSR as a source of information for the offense conduct.  Rather, the Court relied on the evidence introduced at trial. (Addendum, p. 1).

2)	The Court determined that U.S.S.G. § 2A2.4(a), Obstructing and Impeding Officers, was the appropriate guideline to use to set Ms. Williams' base offense level. (Addendum, p. 8).  In reaching this conclusion, the Court made several findings and observations.

3)	In deciding whether §2A2.4, Obstructing and Impeding Officers, or §2A2.2, Aggravated Assault, was the appropriate guideline, the Court observed that "I have to say that I find it odd to be calling this an aggravated assault when the government took the assault part of

---

[1] Counsel is relying on the Court's Addendum to the Statement of Reasons which was filed with the Judgment in this case as well as the Sentencing Transcript to document the Court's presentencing rulings.

the charge off the table and only asked . . . the jury to convict the defendant of resisting and impeding officers." (Sentencing Transcript, Doc. 150 at 15:1-5).[2] The Court noted that this situation was unique and that in other cases where the government was advocating for the Aggravated Assault §2A2.2 guideline "the act of the defendant at least constituted an assault. There was a punch or something much worse." (Sentencing Transcript at 15:6-9). The Court observed that Ms. William's §111 conviction "was not for assault *at all*," (Addendum p. 8) and that "the guideline range applicable under section 2A2.2, overstates the severity of the defendant's conduct given the fact that there was no actual assault . . ." (Sentencing Transcript, Doc. 150 at 79:23-80:1).

    4)    The Court calculated Ms. Williams' guideline range using §2A2.4 to be 18 to 24 months imprisonment (Total Offense Level of 15 and a Criminal History Category of I). The Court applied a 3-level enhancement to the offense level under §2A2.4(b)(1) because the offense involved physical contact. The Court noted that Ms. Williams "personally pushed back against the officers and when she realized that was ineffective, exhorted others to do it." (Addendum p. 8). Notably, the 2-level increase for bodily injury to a victim was not applied. *See* U.S.S.G. § 2A2.4(b)(2).

    5)    The Court also considered what the guideline range would be if it had used §2A2.2 as the guideline and determined that the resulting range would be 41 to 51 months imprisonment (Total Offense Level 22 and a Criminal History Category of I). (Addendum, p. 9). In making this calculation, the Court declined to add a 6-point enhancement under U.S.S.G. §

---

[2] The Government removed the term "assault," from the jury's consideration on the §111(a)(1) charge at the charge conference.

3

3A1.2(c) for "creating a substantial risk of bodily injury" during the assault of an official victim because that was "not this case." (Addendum, p. 5).

After a fulsome discussion of the §3553(a) factors and an allocution by Ms. Williams, the Court sentenced her to thirty-six 36 months imprisonment on Counts 1 and 3 to run concurrently to each other; twelve (12) months imprisonment each on Counts 5 and 6 and six (6) months on each of Counts 7 and 8 to run concurrently to each other. On the day of the verdict, November 21, 2022, the Court ordered Ms. Williams detained, and she has been incarcerated continuously since that time. Ms. Williams is presently incarcerated at the Secure Female Facility (SFF) - Hazelton in Bruceton Mills, West Virginia. As of this writing, her projected release date is March 29, 2025, per the Bureau of Prisons' Inmate Locator feature at www.bop.gov.

## II.     APPLICABLE LEGAL STANDARDS

Effective November 1, 2023, the United States Sentencing Commission created a new guideline provision relating to criminal history at U.S.S.G. § 4C1.1 (Adjustment for Certain Zero-Point Offenders). Section 4C1.1 provides for a two-level decrease from the offense level for defendants who "did not receive any criminal history points from Chapter Four, Part A" and who meet other listed criteria. United States Sentencing Commission, *Amendments to the Sentencing Guidelines* (Apr. 27, 2023), at 87-88 (Part B, Subpart 1).[3] On August 31, 2023, implementing the directive of 28 U.S.C. § 994(u), the Sentencing Commission determined that the new § 4C1.1 would apply retroactively to defendants serving terms of imprisonment. *See*

---

[3] Available at https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/202305_RF.pdf.

United States Sentencing Commission, *Amendments to the Sentencing Guidelines* (August 31, 2023).[4]

Title 18 U.S.C. § 3582(c)(2) provides that defendants serving terms of imprisonment may receive sentence reductions pursuant to retroactive amendments to the Sentencing Guidelines:

> [I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. § 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(2)

For its part, U.S.S.G. § 1B1.10, the applicable policy statement provides that:

> In a case in which a defendant is serving a term of imprisonment, and the guideline range applicable to that defendant has subsequently been lowered as a result of an amendment to the Guidelines Manual listed in subsection (d) below, the court may reduce the defendant's term of imprisonment as provided by 18 U.S.C. § 3582(c)(2).

U.S.S.G. § 1B1.10. Section 1B1.10 further provides that, except under certain circumstances, a court may not reduce a person's sentence "to a term that is less than the minimum of the amended guideline range," and "[i]n no event may the reduced term of imprisonment be less than the term of imprisonment the defendant has already served." U.S.S.G. § 1B1.10(b)(2).

18 U.S.C. § 3582(c)(2) "establishes a two-step inquiry. A court must first determine that a reduction is consistent with [U.S.S.G.] § 1B1.10 before it may consider whether the authorized

---

[4] Available at https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/202308_RF-retro.pdf.

reduction is warranted, either in whole or in part, according to the factors set forth in § 3553(a)." *Dillon v. United States*, 560 U.S. 817, 827 (2010).

### A. Ms. Williams is Eligible for the Zero-Point Offender Adjustment

Ms. Williams is eligible for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2) and § 1B1.10(b)(2) because her sentence was based on a guideline range that was subsequently lowered by the Sentencing Commission under a retroactive provision of Amendment 821. *See* U.S.S.G. § 1B1.10(d) (listing Amendment 821, part B, subpart 1). Applying the new §4C1.1, Ms. Williams' offense level is decreased by two levels because she did not receive any criminal history points and otherwise meets the criteria listed in the guideline. *See* U.S.S.G. § 4C1.1. Thus, her new guideline range using U.S.S.G. § 2A2.4 to set the base offense level would be 12 to 18 months imprisonment.[5]

One of the criteria for the two-level reduction under §4C1.1 is that "the defendant did not use violence or credible threats of violence in connection with the offense." U.S.S.G. § 4C1.1(a)(3).[6] Since Ms. Williams did not use violence or credible threats of violence in connection with her offenses, she is eligible for two-level the reduction afforded by Amendment 821 for zero-point offenders.

The Sentencing Guidelines Manual itself does not define the term "use violence or credible threats of violence" within §4C1.1 or its commentary. And when no definitions are provided for, courts can look to dictionary definitions to determine meaning. *See Kaufman v. Nielsen,* 896 F.3d 475, 485-87 (D.C. Cir. 2018). Recently Judge McFadden issued an opinion

---

[5] The revised guideline range using §2A2.2 as a starting point would be 33 to 41 months imprisonment (Total Offense Level 20 and Criminal History Category I).
[6] Per the undersigned's communications with counsel for the Government, it will be the Government's position that Ms. Williams is not eligible for relief under this prong of §4C1.1.

6

discussing dictionary definitions of violence when considering the application of §4C1.1, and found that that violence is: "'[t]he use of physical force, typically 'accompanied by fury, vehemence, or outrage,' and 'unlawfully exercised with the intent to harm'" or the "exertion of any physical force so as to injure or abuse." *United States v. Bauer*, 1:21-386-2-TNM, Mem. Op., ECF No. 195, at 4-5 (internal citations omitted).

Other courts interpreting the term "violence" where it appears in other parts of the Sentencing Guidelines have found that to qualify as "using violence," one must "use[] physical force with the intent to injure[.]" *United States v. Pineda-Duarte*, 933 F.3d 519, 523 (6th Cir. 2019) (interpreting U.S.S.G. § 2D1.1(b)(2)'s identically-worded "used violence" provision in the absence of a Guidelines definition and relying on Black's Law Dictionary and Webster's Dictionary). And "credible threats of violence" require one to credibly "express an intention to inflict pain, harm, or punishment" through violence. *See United States v. Hernandez-Barajas*, 71 F.4th 1104, 1107 (8th Cir. 2023) (cleaned up) (interpreting U.S.S.G. § 2D1.1(b)(2) and quoting definition of "threats" from *American Heritage Dictionary of the English Language* 1813 (5th ed. 2016)).

The evidence at trial clearly demonstrated that Ms. Williams did not use violence or credible threats of violence on January 6. She did not punch, kick, hit, or throw any objects at law enforcement officers, nor did she intend to injury anyone. While she was shouting and part of the group pushing against the police line in the Rotunda, her conduct does not rise to the level of violence or credible threats of violence The level of her force was not intended to cause injury. *See, e.g. United States v. Jaimes-Molina*, No. 17-cr-69, 2019 WL 4254459, at *5 (N.D. Ind. Sept. 9, 2019) ("The Court cannot say that the shove [of the officer], while a use of physical force, was the use of violence as intended for the §2D1.1(b)(2) enhancement.").

7

Further demonstrating that Ms. Williams' conduct was not violent or assaultive is the government's trial decision to withdraw the term "assault" from the jury's consideration of the 18 U.S.C. § 111(a) charge. The government also withdrew the physical contact portion of §111(a), leaving the jury only to consider whether Ms. Williams "forcibly" "resisted, opposed, impeded, intimidated, or interfered" with an officer. (Doc. 122, p. 32). Nowhere in the instructions was the jury tasked to find that Ms. Williams used violence. Moreover, and as this Honorable Court observed herself at Ms. Williams' sentencing hearing, Ms. Williams' conduct was not assaultive – she did not punch officers, like many others did on January 6.

Next, the government will likely argue that Ms. Williams is ineligible because she participated in a "civil disorder," which is defined as "any public disturbance involving acts of violence by groups of three or more people, which causes an immediate danger of, or results in, damage or injury to the property or person of any other individual." (Doc. 122, p. 26). But as to the charge of civil disorder, the jury only had to find that Ms. Williams "committed an act or attempted to commit an act with the intended purpose of obstructing, impeding, or interfering with one or more law enforcement officers" who was engaged in his lawful duties "incident to and during a civil disorder." (Doc. 122, p. 25). The jury's verdict was that Ms. Williams' obstructed or impeded an officer during a civil disorder – not that Ms. Williams' participated in the violent conduct causing the civil disorder.

Most importantly, the language of §4C1.1 requires an inquiry into the *defendant's* conduct, not the conduct of those surrounding her. And while many of the participants on January 6 engaged in violence, many more, like Ms. Williams, did not. As of this writing, several judges in this District have considered the §4C1.1 adjustment to defendants in other January 6

cases and have rejected the government's contention that the violence of the mob disqualifies individuals who did not personally engage in violence themselves.

In *United States v. Parks*, 1:21-cr-411-APM, Judge Mehta applied §4C21.1's 2-level decrease at sentencing. Mr. Parks was convicted after a bench trial to the misdemeanor disorderly conduct charges, and a theft of government property charge. Like Ms. Williams, Mr. Parks watched others break the windows at the Senate Wing Door and was one of the first people to enter the building there at approximately 2:13 p.m. (Parks Transcript, p. 66:12-19). Judge Mehta noted that during Mr. Parks' 45-minutes inside the Capitol, he did not physically harm anyone. (Tr. P. 69:8, 17).

In September of 2023, Judge Boasberg prospectively applied the §4C1.1 zero-point offender adjustment at sentencing in the matter of *United States v. Weyer*, 1:22-cr-40-JEB. There, the Government argued that because the event of January 6 was a "violent attack," that "[e]very rioter, whether or not they personally engaged in violence or personally threatened violence, contributed to this harm." *See* Docket Entry 61, *United States v. Weyer*, 1:22-cr-40-JEB, at p. 14. Ms. Weyer was found guilty of obstruction of an official proceeding and the misdemeanor disorderly conduct charges. On January 6 she was at the East Front of the Capitol and was directly behind individuals who broke down the barricades securing the perimeter. Judge Boasberg characterized Ms. Weyer as "actively encouraging" others to break through the barriers and go through the doors of the Capitol and "rallying the troops to commit illegal acts." (Sentencing Transcript, pp. 21-22). Despite this conduct, which is similar to Ms. Williams' conduct of encouraging others to "push" the police line, Judge Boasberg found that Ms. Weyer was eligible for the 2-level downward adjustment under §4C1.1.

In *United States v. Sheppard*, 1:21-cr-203-JDB, Judge Bates found that "one of the first rioters to enter the Capitol" who joined others in overrunning police lines" and who "looked on as other rioters violently punched out windows of doors mere inches from officers' heads" would likely qualify for the two-level reduction if resentenced. *United States v. Sheppard*, 2024 WL 127016, *4 (D.D.C. Jan 11, 2024) (granting motion for release pending appeal noting that if Sheppard's §1512(c)(2) conviction is overturned by the Supreme Court's anticipated decision in *Fischer v. United States*, then his revised guidelines would be significantly lower, in part because of the application of §4C1.1).

In *United States v. Bauer*, 1:21-cr-386-2-TNM, Judge McFadden rejected the government's argument that the mob violence on January 6 disqualified the defendant under the "violence" prong of §4C1.1. "The text of § 4C1.1 specifies that the 'defendant did not use violence or credible threats of violence.' The Court must therefore evaluate a defendant's conduct in determining eligibility for a § 4C1.1 adjustment. It cannot simply impute the 'use of violence' to a defendant based on the actions of others." *Bauer*, 1:21-cr-386-2-TNM, Docket Entry 195 (rejecting government claim that "Bauer is ineligible for an adjustment under § 4C1.1 based on her mere participation in the Capitol riot.").[7]

And most recently, Judge Kollar-Kotelly granted a retroactive §4C1.1 reduction in the matter of *United States v. Hernandez,* 1:21-cr-445-CKK, observing that "it is clear that the

---

[7] Judge McFadden did not apply § 4C1.1 because Ms. Bauer did, in fact, use credible threats of violence by repeatedly calling to "hang" Nancy Pelosi, but he noted that he was "unpersuaded" by the government's argument regarding the imputation of other's violence on January 6 to the defendant. *Id.* ("The Court concludes that Bauer made credible threats of violence when she screamed 'We want Nancy Pelosi, that's who we want' and "Bring them out! You bring them out or we're coming in!" and "Bring Nancy Pelosi out here now! We want to hang that fucking bitch! Bring her out!")

insurrection as a whole was certainly violent, but it is not the violence of others or general crowd violence that is the focus of this Court's inquiry." *Hernandez,* 1:21-cr-445-CKK, Memorandum Opinion, Docket Entry 65 at p. 6.

Because Ms. Williams' herself did not use violence or credible threats of violence on January 6, she is eligible for a reduction in her sentence under retroactive Amendment 821.

### B.  A reduction in sentence is consistent with U.S.S.G. § 1B1.0 and the relevant 18 U.S.C. § 3553(a) factors

Ms. Williams respectfully requests that this Court exercise its discretion to reduce her sentence by 6 months to 30 months imprisonment. This reduction would be in keeping with how this Court sentenced Ms. Williams originally – one year above the top of the lower guideline range (using §2A2.4), and approximately 12% below the bottom of the higher guideline range (using §2A2.2). The reduction sought is consistent with U.S.S.G. § 1B1.0 and the relevant 18 U.S.C. § 3553(a) factors. The 6-month reduction is modest and yields a sentence that is sufficient to meet the goals of sentencing in this case.

The proposed reduction is also consistent with the need to protect the public from future crimes. In promulgating Amendment 821's provisions applicable to zero-point offenders like Ms. Williams, the Commission relied on studies of recidivism among federal offenders which found that "offenders with zero criminal history points have considerably lower recidivism rates than other offenders, including offenders with one criminal history point." United States Sentencing Commission, *Amendments to the Sentencing Guidelines* (Apr. 27, 2023), at 79.[8]

---

[8] Available at https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/202305_RF.pdf.

In considering whether and to what degree a sentence reduction is warranted under Amendment 821, "[t]he court may consider post-sentencing conduct of the defendant that occurred after imposition of the term of imprisonment." U.S.S.G. § 1B1.10 app. n. 1(B)(iii). Ms. Williams' post-sentencing conduct weighs in favor of reducing her sentence in this case.

1.      **Ms. Williams' Conduct at the Bureau of Prisons**

Ms. Williams is currently assigned to the "W Lands AM detail," at SFF-Hazelton. She received this job assignment in September of 2023. In this role, Ms. Williams performs all sorts of landscaping tasks around the prison, including lawn mowing, weedwhacking and snow removal in the wintertime. Another job duty includes taking out the trash from the housing units, as well as "hot" trash, which she characterizes as trash that other inmates are not cleared to remove. Hot trash includes items that individuals have brought with them from the street when they report for prison, and would therefore be contraband once inside. Ms. Williams reports for her job every day, from 8am until 11am, and then again from 12pm until 3:15pm (unless she has to report for a class, as discussed below).

Ms. Williams' most recent work performance report reflects that she does "superior work," and her high caliber reflects that she "would do well at a more demanding job." *See* Exhibit A, 1/01/2024 Work Performance Rating and 12/01/2023 Work Performance Rating. Ms. Williams' work performance has been categorized as "Outstanding. Drives self exceptionally hard all the time;" "Good. Can plan own work well. Acts on own in most things. Doesn't wait to be told what to do;" "Outstanding. Eager to master job. Wants to know everything there is to know about it. May read up on own time or volunteer to do things that will improve knowledge." (1/01/2024 Work Performance Rating). Her ability to learn was scored as "Outstanding. Very quick to learn.

12

Excellent memory. Is learning more rapidly than most inmates assigned here. Never makes the same mistake twice." (1/01/2024 Work Performance Rating).[9]

Ms. Williams is also participating in various educational opportunities available at SFF-Hazelton and has earned the following certificates: National Parenting Program Phase I (8/3/23); National Parenting Program Completion (10/5/23); Partners in Parenting (10/5/23); ACE Class: U.S. Geography (11/2023); Basic Crochet (11/29/23); Thresholds[10] (12/5/23); Access: Survivors of Domestic Violence Program (12/15/23); Women's Sexual Safety (12/29/23). *See* Exhibit B, Certificates of Completion. She is currently enrolled in three classes: Finance, Religion, and American History. These classes generally meet in the afternoon, from 2:30pm to 5:30pm and she has them once per week. All of the courses require homework, which keeps Ms. Williams busy in the evenings. In addition, Ms. Williams assists in tutoring her fellow inmates in ESL and GED prep. She also volunteers in the hobby craft department, assisting in cross-stitch, painting and seasonal decoration classes. Importantly, Ms. Williams also attends a weekly chapel service on Sundays and continues to deepen her faith.

Demonstrative of Ms. Williams' desire to make amends, she has fully paid off her restitution while incarcerated. *See* Exhibit C, Inmate Inquiry Sheet, showing FRP status (Financial Responsibility Program) as "Completed." Ms. Williams had her own personal savings transferred to her prison account so that she could pay down the $2,000 as soon as possible.

---

[9] It is worth noting that a comparison of Ms. Williams December 2023 work performance report with her January 2024 work performance report reflects that Ms. Williams has improved her job performance from generally "good," to nearly all "outstanding" rankings. Compare 12/01/2023 Work Performance Rating with 01/01/2024 Work Performance Rating.

[10] Ms. Williams described "Thresholds" to the undersigned as a chapel class led by a female Mennonite. She reflected on Thresholds as a "safe-space" and as a "mental health class."

Lastly, it is important to address that Ms. Williams did receive two disciplinary write-ups during her incarceration. The first was August 14, 2023 for possession of an unauthorized object. Ms. Williams received this infraction for wearing sweatpants that had been altered/sewn. *See* Exhibit D, Individualized Needs Plan – Program Review, dated November 2023. The sweatpants were confiscated. On September 5, 2023, Ms. Williams went for "rec," but she was unaware that she had received a "rec ban" for the sweatpants incident. As a result, she received an infraction for being in an unauthorized area. Both of these infractions were 300 series infractions, which is the lowest level of infraction in the Bureau of Prisons. She did not lose any good time, nor was she put into any form of segregated housing. In fact, to "work off" the second infraction, the lieutenant enlisted Ms. Williams to help with a project of moving several tons of volleyball pit sand. And it was Ms. Williams' good effort during that project which led to her assignment on the landscaping crew. So while it is unfortunate that Ms. Williams has received any write-ups, it appears that she has learned from the experiences and has moved forward in a positive direction.

Finally, it is notable that Ms. Williams custody classification worksheet, *See* Exhibit E, which is the rubric used by the Bureau of Prisons to determine an inmate's level of security, reflects that she was considered a non-violent offender. And her Individualized Needs Plan sheet shows that she is considered eligible for the First Step Act, which categorically excludes violent offenders from the receiving good time credits.

**2.      Consideration of Sentencing Disparities**

At the time of Ms. Williams' sentencing in March of 2023, far fewer January 6 defendants had been sentenced as there have been by today's date. Thus, there are more cases and sentences to consider under 18 U.S.C. § 3553(a)6), the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct. While no

14

two January 6 cases are the same, counsel has endeavored to find defendants with little or no criminal history and who had 18 U.S.C. §§ 111(a)(1) and 231(a)(3) convictions as comparators, although the conduct in the cases below involve assaultive and violent behavior. And Ms. Williams' recognizes that her case is different in that she went to trial,[11] and the defendants listed below pled guilty. Considering all of these nuances, the sentences in the cases below reflect that Ms. Williams' request of 6-month reduction to a 30-month sentence is not inappropriate.

*United States v. Phipps*, 1:21-cr-44-CJN: Mr. Phipps, a 47-year old Navy veteran, pled guilty without a plea agreement to 18 U.S.C. §§ 111(a)(1) and 231(a)(3). He also pled guilty to the typical 18 U.S.C. § 1752 and 41 U.S.C. § 5104 charges. Mr. Phipps assaulted three differed Metropolitan police officers on the West Terrace after exiting the Capitol and bragged about his participation in January 6 on social media afterwards, calling himself a patriot. Judge Nichols sentenced Mr. Phipps to 27 months imprisonment.

*United States v. Eckerman*, 1:21-cr-623-CRC: Mr. Eckerman, pled guilty to one count of 18 U.S.C. § 111(a)(1). On January 6, at a stairway between the Memorial Doors and the Crypt, Mr. Eckerman pushed a Capitol Police officer, causing him to fall and create a gap in the police line that Mr. Eckerman and others rushed through, allowing access to the second floor of the Capitol. In his communications after January 6, Mr. Eckerman was prideful of his behavior on that day. Judge Contreras sentenced Mr. Eckerman to 20 months imprisonment.

*United States v. Creek*, 1:21-cr-645-DLF: Mr. Creek, a former Marine, assaulted two officers in separate exchanges on January 6. In the first assault, he grabbed an officer and drove

---

[11] While Ms. Williams went to trial, the jury hung on the most serious count, obstruction of justice and the theft of the computer. Moreover, Ms. Williams did not testify at her trial and at sentencing, was extremely remorseful and apologetic for her conduct on January 6. (Sentencing Transcript at 53-54).

him back forcefully by several feet and then hit him in the face shield of his helmet. In the second assault, Mr. Creek shoved and kicked an officer, causing him to fall to the ground. He pled guilty to 18 U.S.C. § 111(a)(1) and was sentenced to 27 months imprisonment by Judge Friedrich.

*United States v. Wilden*, 1:21-cr-423-RC: Mr. Wilden, a member of the Proud Boys, pled guilty to 18 U.S.C. § 111(a)(1). On January 6 he pepper sprayed multiple Capitol Police officers guarding the East Columbus doors. After spraying them, he threw the empty canister at the officers. Judge Contreras sentenced Mr. Wilden to 24 months imprisonment.[12]

### III.    CONCLUSION

This Honorable Court reflected at Ms. Williams' sentencing, "I strongly agree that the events of January 6 are not all there is to you." Sentencing Transcript, Doc. 150, p. 73:24 – p. 75:1. And for her part, Ms. Williams has been putting the events of January 6 behind her while using her time incarcerated wisely, by learning, reflecting, working, and paying off her restitution debt. Ms. Williams respectfully requests that this Court consider a modest reduction in her sentence pursuant to retroactive Amendment 821 for being a "zero-point" offender.

---

[12] And, while their conduct was different, it is worthwhile to note that Maryanne Mooney-Rondon and Rafael Rondon, the mother and son duo in the Speaker's Office that assisted with the theft of the laptop, both pled guilty to obstruction of an official proceeding, 18 U.S.C.§ 1512(c), and Maryanne Rondon also pled guilty to theft of government property, 18 U.S.C. §§ 641, 2. Judge Cobb sentenced both Rondons to 5 year terms of probation with periods of home detention. *See United States v. Rondon*, 1:21-cr-772-JMC.

Date:   February 6, 2024                    Respectfully submitted:


                                              */s/ Amanda R. Gaynor*
                                              AMANDA R. GAYNOR, ESQUIRE
                                              Staff Attorney

                                              */s/ Lori J. Ulrich*
                                              LORI J. ULRICH, ESQUIRE
                                              Assistant Federal Public Defender

                                              100 Chestnut Street, Suite 306
                                              Harrisburg, PA 17101
                                              Tel. No. (717) 782-2237
                                              Fax No. (717) 782-3881
                                              *amanda_gaynor@fd.org*
                                              *lori_ulrich@fd.org*

                                              *Attorneys for Riley June Williams*

# CERTIFICATE OF SERVICE

I, Lori J. Ulrich, Esquire, of the Federal Public Defender's Office, do hereby certify that I served a copy of the foregoing pleading via Electronic Case Filing, and/or by placing a copy in the United States mail, first class in Harrisburg, Pennsylvania, and/or by hand delivery, addressed to the following:

Michael Gordon, Esquire
Assistant United States Attorney
*michael.gordon3@usdoj.gov*

RILEY JUNE WILLIAMS

Date:  February 6, 2024                       */s/ Lori J. Ulrich*
                                              LORI J. ULRICH, ESQUIRE
                                              Assistant Federal Public Defender
                                              100 Chestnut Street, Suite 306
                                              Harrisburg, PA 17101
                                              Tel. No. (717) 782-2237
                                              Fax No. (717) 782-3881
                                              lori_ulrich@fd.org
                                              *Attorney for Riley June Williams*